

ANGELA RYAN on her own behalf;       )   Case No. 25cv502
ANGELA RYAN, as parent and next      )
friend                               )
of J.R. and A.R.,                    )
                                     )
       Plaintiffs,            )   **COMPLAINT**
                                     )   (Jury Trial Demanded)
      v.                     )
                                     )
NORTH CAROLINA DEPARTMENT             )
OF HEALTH AND HUMAN SERVICES;        )
GUILFORD COUNTY;                     )
GUILFORD COUNTY DEPARTMENT            )
OF SOCIAL SERVICES;                  )
WENDY SIVORI, in both her individual  )
capacity and her official capacity as )
attorney for Guilford County Department )
of Social Services; SHARON BARLOW,   )
in both her individual capacity and her )
official capacity as Director of Guilford )
County Department of Social Services; )
STACY GREENE, DSS Supervisor, both.  )
in her individual capacity and official )
capacity as a Supervisor of Guilford )
County Department of Social Services; )
CHEYENNE PAYLOR, both in her          )
individual capacity and official capacity )
as Supervisor of Guilford County     )
Department of Social Services;        )
RACHEL COOLEY, both in her           )
individual capacity and official capacity )
as Supervisor of Guilford County     )
Department of Social Services; SYRITA )
MILLER, both in her individual       )
capacity and official capacity as Social )
Worker of Guilford County            )
Department of Social Services;        )
YOLANDA MCDOWELL, both in            )
her individual capacity and her official )

capacity as Social Worker of Guilford )
County Department of Social Services; )
JORDAN REEVES, both in her )
individual capacity and her official )
capacity as Social Worker of Guilford )
County Department of Social Services; )
ANNE LITTLEJOHN, Attorney for )
Guilford County Guardian ad Litem )
Program, in her individual capacity; )
MEGAN SPIDELL, Independent )
Family Law Attorney, in her individual )
capacity; ADAM ARTHUR, Independent )
Family Law Attorney, in his individual )
capacity; LEE CORUM, court appointed )
attorney, in his individual capacity; )
JOHN DOE #1-#10, for unknown )
defendants. )

Defendants,

---

NOW COMES the Plaintiff, Angela Ryan, Pro Se, and makes this Complaint

against the Defendants as follows:

## **INTRODUCTION**

1. Plaintiff Angela Ryan (hereinafter "Plaintiff" or "Angela Ryan"), proceeding pro

   se, brings this civil action on her individual behalf and on behalf of her minor

   child, A.R. (born: \*\*/\*\*/2008), and her adult child, J.R. (born: \*\*/\*\*/2007). This

   Complaint seeks comprehensive monetary, declaratory, and injunctive relief for

   severe and systemic violations of Plaintiffs' civil rights under 42 U.S.C. § 1983,

   specifically the Fourth and Fourteenth Amendments to the United States

   Constitution (including familial association, substantive and procedural due

1

process, and equal protection). Additionally, this action asserts violations of the North Carolina Constitution and various state common law torts. A jury trial is hereby demanded.

2. Plaintiff brings this action for damages and a redress of harm suffered by herself and as the result of conduct by Defendant Guilford County Department of Social Services (hereinafter "GCDSS"), their agents and employees, who are state actors by law, and conspired with private actors to deprive the Plaintiff of her constitutional and civil rights, while acting under color of state law.

3. Ryan also brings this action as a parent, and next friend of AR, her biological child, who is a minor, for damages and redress of harms suffered by AR, as the results of conduct by the defendant, GCDSS, their agents and employees, and other private actors, who we're acting under color of state law at all relevant times.

4. The core of this egregious scheme began with the unlawful separation of Angela Ryan and her children, initiated and perpetuated by a fabricated text message on June 1, 2021.

5. This false evidence, introduced by the children's father through his attorney, Megan Spidell, falsely accused Ms. Ryan of coaching and manipulating her children to make false abuse allegations against their father. Despite prompt discovery and authentication by subpoenaed Verizon Wireless records on July 1, 2021, confirming the text message was fake and nonexistent, Defendants knowingly withheld this critical information from the state court. This deliberate

2

concealment led to the wrongful temporary removal of J.R. and A.R. from Ms. Ryan's custody, an action that had no legitimate basis other than the fabricated evidence.

6. Further compounding the fraud, Defendants engaged in the fraudulent execution of an In-Home Services Agreement (DSS 5239), a federally and state-mandated form designed for parents with substantiated abuse findings. Despite Ms. Ryan never being investigated for abuse nor having any findings against her, GCDSS created fictional abuse investigation records and a corresponding letter of completion for her, mirroring those legitimately applied to J.R. and A.R.'s father. These fabricated documents, coupled with an altered version of the DSS 5239 agreement that unlawfully specified a date for GCDSS to gain full custody of the children, were systematically employed to collect federal funding under false pretenses.

7. The true and sole motive behind these actions was the illicit acquisition of federal Title IV-E program funds, disguised as legitimate child welfare services, while simultaneously concealing the pervasive misconduct and fraud.

8. Driven by actions for monetary gain, the defendants engaged in a conspiracy involving state actors and private individuals acting under color of law, violating Ms. Ryan's due process and constitutional rights.

9. A 2018 rule change allowing independent family law attorneys representing a parent in a child welfare matter to collect 50% of their rate of pay incentivized this

3

misconduct, with funds being collected from GCDSS and illicitly dispersed. The consequences of these actions have been devastating.

10. Ms. Ryan has faced relentless retaliation for seeking justice, including life-threatening incidents and the complete loss of custody, with her children placed in abusive foster conditions for 1.5 years and ultimately returned to the care of their abusive father where the abuse continued including A.R.'s desperate pleas for help and suicide attempts in August 2024 yet ignored by GCDSS and NCDHHS to conceal the fraudulent history.

11. The state courts have consistently failed to provide redress, with judges tolerating and participating in the conspiracy by allowing false evidence, denying proper evidence, and issuing unlawful orders and continues to date with heightened and escalated disregard to Angela Ryans constitutional rights and a malicious drive of causing her intentional damage.

12. This complaint seeks redress for the violation of constitutional rights, damages resulting from the conspiracy, and the removal of this case from the implicated state courts. Immediate action is crucial to protect Angela Ryan and her children from further harm and pending unlawful proceedings and ensure accountability for these egregious injustice.

## JURISDICTION AND PARTIES

13. This action is brought by Angela Ryan, individually and on behalf of her minor children J.R. and A.R., who at all times relevant were residents of Guilford

4

County, North Carolina, for redress of harms suffered as a result of conduct by state and private actors.

14. The Plaintiff J.R. was born on **/**/2007, and reached the age of majority on May 14, 2025. All actions and proceedings described herein occurred while J.R. was a minor.

15. The Plaintiff A.R. was born on **/**/2008, and is currently 17 years old. AR is a minor and will remain so throughout the duration of this legal action.

16. The matters arise from a series of transactions and a pattern of practice by the Guilford County Department of Social Services, its agents, and employees, including the use of an unlawful in-home services agreement and falsified case records, all stemming from a fabricated text message.

17. These actions involve the ongoing violation of the Plaintiffs' constitutional rights through the knowing use of false evidence, specifically a fabricated text message that was instrumental in the separation of Angela Ryan from her children.

18. The matters in this case originated not from abuse, neglect, or dependency proceedings, but from a motion to modify custody filed by Angela Ryan. The actions of the defendants, however, have since escalated into egregious violations of civil and constitutional rights.

19. This Court has subject matter jurisdiction over all federal claims in this action pursuant to 28 U.S.C. § 1331, as the Complaint raises federal questions under the

5

Constitution and laws of the United States, including 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments, and related civil rights statutes.

20. This Court also has jurisdiction under 28 U.S.C. § 1343(a)(3)-(4), as this case seeks to redress deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution and federal law. Plaintiff asserts claims seeking immediate and prospective relief, including compensatory and punitive damages, against both state and private parties alleged to have acted under color of state law in conspiracy.

21. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over all claims arising under the Constitution, statutes, and common law of the State of North Carolina. These state laws claims, including but not limited to violations of the North Carolina Constitution, negligence, fraud, and intentional infliction of emotional distress, arise from the same nucleus of operative facts as Plaintiff's federal claims and form part of the same case or controversy.

22. Venue is proper in the United States District Court for the Middle District of North Carolina pursuant to 28 U.S.C. § 1391(b)(1)-(2), as all defendants reside or conducted substantial acts in this judicial district and a substantial part of the events, omissions, and injuries giving rise to these claims occurred in Guilford County, North Carolina.

6

DEFENDANTS:

23. The Plaintiffs bring this action against the following individuals and entities who, at all relevant times, acted under color of state law and/or conspired with those acting under color of state law to violate the Plaintiffs' constitutional rights under 42 U.S.C. § 1983, as well as other state laws.

24. Defendant North Carolina Department of Health and Human Services (hereinafter "NCDHHS") is an agency of the State of North Carolina, headquartered in Raleigh, North Carolina. NCDHHS is responsible for the administration and oversight of social services programs throughout the state, including those related to child protective services and the administration of state and federal funding such as Title IV-E under the Social Security Act and funds under the Family First Prevention Services Act (FFRPSA).

25. NCDHHS promulgates rules, regulations, policies, and procedures that guide the actions of county departments of social services like GCDSS and its employees. NCDHHS is sued here for its acts and omissions as an entity, and potentially through the official capacities of its employees/officials, for monetary, declaratory, and injunctive relief under 42 U.S.C. § 1983 and state law. NCDHHS acted under color of state law by virtue of its statutory authority and responsibility for overseeing and funding local DSS agencies.

26. Plaintiff alleges NCDHHS is liable as a Monell defendant for constitutional violations caused by its official policies, customs, or widespread practices,

7

including a lack of adequate training, supervision, and auditing of GCDSS, particularly concerning record-keeping, handling of fabricated evidence, procedures for out-of-home placements outside of formal A/N/D proceedings, and compliance with federal funding regulations.

27. NCDHHS's alleged deliberate indifference to known issues within GCDSS (including issues highlighted by prior investigations, such as the corrective action plan following the death of children in Guilford County, referenced in the Factual Background) contributed to and enabled the pattern of misconduct, fraud, and constitutional deprivations alleged herein

28. NCDHHS was directly involved in the events alleged, particularly in the supervision of GCDSS operations and the administration and distribution of state and federal funding utilized in the fraudulent scheme.

29. Despite being notified of misconduct, NCDHHS failed to take appropriate action to investigate or protect Plaintiff and her children, effectively condoning and ratifying the unconstitutional acts complained of.

30. NCDHHS has been involved with the Plaintiff previously in 2021 and 2023 and investigated matters of GCDSS relating directly to this complaint.

31. Plaintiff asserts she provided substantial evidence to support the claims, yet no action was taken to protect her children. During both of the interactions, Valerie Johnson handled the claims with the initial contact made by state representative Jon Hardester. Plaintiff maintains email, and phone recorded conversations with Valerie Johnson. An email was sent in August 2024, and Valerie Johnson denied

8

support suggesting plaintiff would be contacted in regards to the ongoing abuse and failed investigative measures by GCDSS. However, she has never received this.

32. Plaintiff asserts that NCDHHS is not entitled to Eleventh Amendment immunity for prospective injunctive relief, and argues that its policies, customs, and failures to supervise constitute a basis for liability under Monell principles, which may apply to state agencies acting as local government actors or implementing state policies causing constitutional harm at the local level. ii. Defendant Guilford County.

33. <u>Defendant Guilford County</u> is a political subdivision of the State of North Carolina, organized and governed by its laws, with the capacity to sue and be sued. Guilford County is legally responsible for the establishment, governance, supervision, and funding of the Guilford County Department of Social Services. It is responsible for the actions of its agencies, departments, officers, directors, employees, and agents when such actions are taken pursuant to County policy or custom.

34. Guilford County is sued under 42 U.S.C. § 1983 and state law for monetary, declaratory, and injunctive relief.

35. The County acted under color of state law by virtue of its governmental authority and its direct responsibility for operating GCDSS.

36. Plaintiff alleges Guilford County is liable as a Monell defendant for constitutional violations caused by its official policies, customs, or widespread practices that led

9

to the injuries alleged, including inadequate policies or customs regarding employee training, supervision, ethical conduct, recordkeeping, handling of court-involved cases outside of A/N/D proceedings, and compliance with federal funding requirements.

37. The County's failure to establish and enforce policies sufficient to prevent the widespread misconduct and fraud alleged herein constitutes deliberate indifference to the constitutional rights of its citizens, including Plaintiff and her children.

38. Guilford County was directly involved in the events at issue through its role in funding GCDSS and its employees' salaries and benefits, and through its legal responsibility for the actions of its employees and agents acting within the scope of their employment or pursuant to County policies or customs.

39. The County's policies and customs, or lack thereof, enabled the fraudulent scheme and resulting constitutional deprivations to occur and persist over several years, benefiting the County indirectly through the alleged fraudulent procurement of federal funds administered via GCDSS.

40. Defendant Guilford County Department of Social Services ("GCDSS") is an agency of Guilford County, organized under the laws of North Carolina and operating pursuant to administrative regulations promulgated by NCDHHS.

41. GCDSS is the primary local entity responsible for child welfare and related social services within Guilford County. Its activities and operations are carried out by agents and employees of Guilford County.

10

42. GCDSS is sued in its own name as a county agency and instrumentality under 42 U.S.C. § 1983 (as an alter ego of Guilford County for Monell purposes) and state law for monetary, declaratory, and injunctive relief.

43. GCDSS acted under color of state law by virtue of its statutory authority and responsibility for providing child welfare services. Plaintiff alleges GCDSS is liable as a Monell defendant for constitutional violations caused by its official policies, customs, or widespread practices, which fostered and enabled the pattern of misconduct, fabrication of records, fraudulent activity, and deprivation of rights alleged. These policies or customs included but were not limited to:

- A custom of fabricating or manipulating agency records to justify interventions or support funding claims outside of legitimate procedures.

- A widespread practice of failing to adequately train or supervise employees on ethical conduct, handling of exculpatory evidence, or compliance with court orders and funding regulations.

- A custom of using coercion and threats to induce compliance from parents, including forcing "voluntary" agreements under duress.

- A practice of inadequate vetting and supervision of out-of-home placements, leading to children being placed in unsafe environments.

- A custom of disregarding or failing to adequately investigate reports of abuse and neglect occurring in placements selected or overseen by the agency.

- A policy or custom of prioritizing the collection of funds (including Title IV-E/FFRPSA) over the constitutional rights and safety of children and parents, achieved by creating false justifications for services and placements.

- A custom of retaliating against individuals who questioned or attempted to expose agency misconduct or fraud.

44. GCDSS, through its employees and agents, executed, directed, and participated directly in the fabrication of records (e.g., the false "substantiated finding" and "in-home services completion" records for Plaintiff), implemented coercive tactics, denied Plaintiff access to information and due process, and facilitated the unlawful out-of-home placement of her children and her continued separation from them, all in furtherance of the fraudulent funding scheme.

45. GCDSS's actions and omissions, representing official policies or customs, directly caused the violations of Plaintiff's rights and the harm to her children alleged herein.

46. <u>Defendant Sharon Barlow,</u> GCDSS Director was the Director of Guilford County Department of Social Services during all relevant times alleged.

47. As Director, Defendant Barlow was an agent and employee of Guilford County and GCDSS. She holds a public office created by state statute (N.C. Gen. Stat. § 7B-100) and exercises a position of power and discretion as allowed by law.

48. Defendant Barlow was trained in the rules, regulations, policies, and procedures of DSS as promulgated by NCDHHS and associated state laws.

12

49. Defendant Barlow is sued in her individual and official capacities. She acted under color of state law by virtue of her role as Director, which included exercising personal and professional deliberation, making decisions, and exercising judgment concerning GCDSS operations, policies, and practices.

50. Defendant Barlow had the authority and responsibility to set, oversee, train employees on, and enforce all policies and practices of GCDSS relevant to child protective services, court involvement, record-keeping, and funding compliance.

51. Plaintiff alleges Defendant Barlow is liable for her direct participation in the conspiracy and for her supervisory failures.

52. Defendant Barlow participated in communications regarding the matters in this Complaint, including child and family team meetings that included social workers and supervisors, and held full knowledge and awareness of the relevant events and conduct alleged.

53. Despite this knowledge, Defendant Barlow allegedly failed to adequately supervise her subordinates (including Defendants Greene, Paylor, Cooley, Miller, McDowell, and Reeves), failed to investigate or correct their misconduct (including the fabrication of records, coercion, and failure to protect children in placement), and failed to ensure compliance with ethical standards and legal requirements.

54. Her actions and omissions constituted deliberate indifference to the constitutional rights of Plaintiff and her children and facilitated the ongoing fraudulent scheme.

55. As an official policymaker for Guilford County and a public officer, her actions and failures in her official capacity also expose GCDSS and Guilford County to liability under Monell. Defendant Barlow had a duty of her office to at all times act in the best interest of each minor child upon whom GCDSS takes action, a duty she allegedly breached by prioritizing the fraudulent scheme over the children's safety and Plaintiff's rights.

56. Defendant Wendy Savori (hereinafter "Savori") was, at all relevant times, the Department of Social Services attorney for Guilford County, acting as an agent and employee of Guilford County and GCDSS.

57. Defendant Savori has been trained extensively in the rules, regulations, policies, and procedures of DSS as promulgated by NCDHHS and associated state laws.

58. Defendant Savori is sued in her individual and official capacities.

59. Defendant Savori acted under color of state law by virtue of her role as GCDSS attorney, which required her to act on behalf of the agency and exercise personal and professional deliberation, make decisions, and exercise judgment in legal matters involving GCDSS.

60. Defendant Savori is an agent of and policymaker for GCDSS in legal matters.

61. Defendant Savori was statutorily obligated to act in the best interest of each minor child and ensure their health and safety at all times when acting in regards to GCDSS duties, and is required to follow all state laws at all times.

Case 1:25-cv-00502-WO-JEP    Document 2    Filed 06/24/25    Page 15 of 131

62. Plaintiff alleges Defendant Savori is liable for her direct participation in the conspiracy, including drafting, authorizing, and presenting false and fraudulent evidence and legal justifications.

63. Defendant Savori was actively involved in court proceedings and communications regarding Plaintiff's case.

64. Defendant Savori held knowledge of the fabricated basis for GCDSS's intervention concerning Plaintiff (the fake text message) and the fraudulent documentation created by GCDSS staff (the false "substantiated finding" and "in-home services completion" records for Plaintiff).

65. Despite this knowledge, she continued to advocate for and justify the agency's actions and the children's continued removal from Plaintiff's custody based on these known falsehoods, including in court representations and internal email communications. (Extensive email communication records maintained by plaintiff that Defendant Sivori was an active participant to or CCed on, including review of fabricated text and verizon records, the fraudulent in-home services agreement, abusive living conditions for children and concerns for their safety and demands for their return by plaintiff. Defendant Savori made recommendations during December 21, 2021 prehearing conference between Judge Vincent, Defendant Arthur, Defendant Spidell, and herself).

66. Defendant Savori participated in concealing the fraudulent basis for the children's removal from the Court and Plaintiff. Her actions facilitated the deprivation of

Plaintiff's rights and the fraudulent funding scheme, which relied on legal justification provided by GCDSS counsel.

67. Her conduct was outside the scope of protected prosecutorial or quasi-judicial functions, as the case was a private custody modification and not a formal A/N/D proceeding, and her actions involved deliberate fraud and conspiracy.

68. Defendants Stacy Greene, Cheyanne Paylor, and Rachel Cooley, GCDSS Supervisors (hereinafter "Greene", "Paylor", and "Cooley) were, at all relevant times, supervisory-level employees of Guilford County.

69. Defendants Greene, Paylor, and Cooley positions of employment included the authority and responsibility to supervise the activities of GCDSS social workers (including Defendants Miller, McDowell, and Reeves) and to ensure that their subordinates carried out the policies and practices of Guilford County, GCDSS, and Directors like Defendant Barlow. Defendants Green, Paylor, and Cooley are health and community workers.

70. Defendants Green, Paylor, and Cooley are sued in their individual and official capacities. They acted under color of state law by virtue of their supervisory roles, exercising personal and professional deliberation, making decisions, and exercising judgment in overseeing social workers and matters impacting Plaintiff and her children. Plaintiff alleges these defendants are liable for their direct participation in the conspiracy and for their supervisory failures.

71. Defendants Greene, Paylor and Cooley directly reviewed, approved, and/or concealed the creation and use of false records concerning Plaintiff (e.g., the

16

fraudulent "substantiated" finding" and "in-home services completion" records)
and the unlawful removal and placement of her children.

72. Plaintiff was offered a copy of the "services needed" and in-home services
completion letter prior to social worker Reeves becoming aware that the
documents in the case file were not valid or authentic, but instead drafted for
collection of funding and to support the scheme that was orchestrated. Plaintiff
maintains the text communication records of this incident.

73. Defendants Greene, Paylor and Cooley were actively involved in communications
and decisions regarding Plaintiff's case, including overseeing social workers'
interactions with Plaintiff, her children, and related parties, as well as Child and
Family team meetings, and all email communications whether directly or CCed.

74. Plaintiff maintains all of the original email communication letters which are
extensive and she ensured to always email and document issues in the case to
which all allegations in this complaint have been properly approached and
documented with all defendants as participants..

75. Despite having knowledge of the fabricated basis for intervention concerning
Plaintiff (the fake text message), the fraudulent documentation created by their
subordinates, and the unsafe conditions in which the children were placed, these
defendants allegedly failed to take appropriate corrective action, failed to properly
supervise the social workers to prevent ongoing misconduct, and contributed to the
denial of Plaintiff's rights and due process.

76. Their supervisory failures constituted negligence and gross negligence and, due to their knowledge and facilitation of the ongoing fraud and constitutional violations, amounted to deliberate indifference.

77. Their actions also contributed to a pattern or custom of misconduct within GCDSS that harmed Plaintiff and her children, and their supervision was essential to the execution of the fraudulent funding scheme.

78. Defendants Syrita Miller, Yolanda McDowell, and Jordan Reeves, GCDSS Social Workers at all relevant times, and employed by Guilford County and GCDSS.

79. Defendants Miller, McDowell and Reeves positions of employment included the duty of carrying out the policies and practices of Defendants Guilford County, GCDSS, Defendant Barlow, and Defendant Savori, under the supervision of Defendants Greene, Paylor, and Cooley.

80. Defendants Miller, McDowell, and Reeves are health and community workers.

81. Defendants Miller, McDowell, and Reeves are sued in their individual and official capacities.

82. Defendants Miller, McDowell, and Reeves are state actors as it relates to the allegations set forth herein, as they exercised personal and professional deliberation, made decisions, and exercised judgment in their direct interactions with Plaintiff and her children, and in their official duties on behalf of GCDSS.

83. Defendants Miller, McDowell, and Reeves acted under color of state law by using their authority and resources as state employees.

18

84. Plaintiff alleges that Defendants Miller, McDowell, and Reeves are directly liable for their central role in the conspiracy and the deprivation of rights and allegedly participated in fabricating and maintaining false records concerning Plaintiff (specifically, creating or contributing to the creation of records falsely stating Plaintiff had a "substantiated" or "services needed" finding and had completed "in-home services," mirroring the records applicable to the father).

85. GCDSS and its attorneys, social workers, supervisors and directors, allegedly used these fraudulent records to justify the children's continued out-of-home placement and coerce Plaintiff's participation in unfounded services, misleading Plaintiff about the basis for agency involvement.

86. Defendant Miller allegedly coerced Plaintiff into the out-of-county placement under threat of placing the children in unknown foster care on or around June 29, 2021.

87. Defendant Reeves inadvertently disclosed the existence and nature of the fabricated agency records to Plaintiff on or around August 10, 2024, providing the key evidence of the fraudulent scheme.

88. Despite this disclosure, these defendants, likely under direction from supervisors, ceased communication with Plaintiff.

89. Defendants Miller, McDowell, and Reeves actions involved deliberate falsehood, coercion, and concealment, directly causing the unlawful separation of Plaintiff from her children and perpetuating the fraudulent scheme.

*Private Actors:*

19

90. Under 42 U.S.C. § 1983, private individuals are generally not liable for constitutional violations. However, a private individual can be held liable if they conspire with or engage in joint action with state officials to deprive another of constitutional rights. See Dennis v. Sparks, 449 U.S. 24 (1980).

91. Actions by state actors that facilitate or are intertwined with private deprivation of rights also satisfy the color of law requirement. See Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982).

92. Private parties can act under color of state law when they are willful participants in joint action with the State or its agents.

93. In this case, the private defendants, including attorneys involved in the state court custody proceedings and a court-appointed guardian ad litem, allegedly acted in concert and conspiracy with GCDSS employees and potentially state court judges to manipulate the legal process, fabricate and conceal evidence, create fraudulent documentation, and unlawfully deprive Plaintiff of her rights and custody for mutual financial gain derived from state-administered funding.

94. Defendant Megan Spidell, Private Attorney practicing family law in Guilford County, North Carolina, at all relevant times, represented the children's father, Joshua Ryan Sr., in the custody modification proceedings in Guilford County District Court.

95. Defendant Spidell is sued in her individual capacity and acted under color of state law by allegedly engaging in a willful conspiracy and joint action with state actors, specifically GCDSS employees (including Defendants Savori, Barlow, Green,

Paylor, Cooley, Miller, McDowell, and Reeves) and potentially state court judges, to deprive Plaintiff of her constitutional rights.

96. Defendant Spidells actions were not merely adversarial representation but allegedly involved corrupting the state judicial and agency processes through fraudulent means.

97. Plaintiff alleges Defendant Spidell is directly liable for her central role in instigating the unlawful separation and perpetuating the fraud and conspiracy and presented the fabricated text message to the Guilford County District Court on June 1, 2021, falsely claiming it was sent by the minor child J.R., knowing or having reason to know it was fals and this act initiated the chain of events leading to the children's removal.

98. Defendant Spidell failed to disclose, and actively concealed from the Court the discovery of the text and its fabricated nature following discovery through subpoenaed cellular records.

99. Despite this knowledge, she continued to use the fake text message and the false narrative derived from it to mislead the Court, oppose Plaintiff's efforts to regain custody, and justify the children's out-of-home placement and Plaintiff's required participation in unfounded services.

100. Defendant Spidell conspired with GCDSS staff to leverage the fraudulent GCDSS records (falsely stating Plaintiff had substantiated findings and completed services) to perpetuate the children's separation and Plaintiff's involvement, enabling the collection of Title IV-E and other funds.

101.    Upon information and belief, Defendant Spidell entered into an agreement with GCDSS to receive compensation (allegedly 50% of her fees) from funds tied to the state/federal child welfare system for her involvement in the custody case, knowing the basis for the children's removal concerning Plaintiff was fraudulent.

102.    Defendant Spidell engaged in a prolonged campaign of retaliation against Plaintiff, including filing frivolous motions (such as repeated contempt actions based on fabricated evidence and communications), pursuing excessive attorney fees rooted in the tainted proceedings, and potentially attempting to interfere with Plaintiff's appeals (e.g., alleged destruction of exhibits).

103.    Defendant Spidells conduct allegedly constitutes actual fraud, fraud on the court, civil obstruction of justice, and participation in the fraudulent funding scheme and conspiracy, all under color of state law due to her joint action with state actors for mutual benefit.

104.    Defendant Adam Arthur, is a Private Attorney who previously represented Plaintiff Angela Ryan in the custody modification proceedings between October 2021 to August 2022..

105.    Defendant Arthur was involved with the family during the 2015 divorce proceedings and was subsequently hired by Plaintiff to replace prior counsel in the custody modification action after the children were removed from her home.

106.    Defendant Arthur is sued in his individual capacity and acted under color of state law by allegedly engaging in joint action and conspiracy with state actors (GCDSS employees and potentially judges) and other private actors (Defendants

22

Spidell, Littlejohn) to the detriment of his own client, Plaintiff Angela Ryan, and her children, and in furtherance of the fraudulent scheme.

107. Plaintiff alleges Defendant Arthur is liable for his participation in the conspiracy and for actions taken under color of law that violated Plaintiff's rights.

108. Upon information and belief, Defendant Arthur, despite reviewing the subpoenaed cellular records that proved the fake text message was fabricated, failed to promptly and effectively present this critical exonerating evidence to the Court to demand the children's immediate return to Plaintiff and instead told the plaintiff he would present it during the trial proceedings, and that she needed to complete the services first. (Plaintiff maintains a one hour recorded conversation with Defendant Arthur, to which he makes these direct statements).

109. Defendant Arthur coerced Plaintiff into agreeing to the children's continued out-of-home placement and participation in unfounded services based on threats from GCDSS (Defendants Miller and Savori) that her children would be placed in foster care if she did not comply, despite knowing the intervention concerning Plaintiff was based on fabricated evidence.

110. Defendant Arthur advised Plaintiff to sign the safety assessment under duress and against her will, misrepresenting her options and the likely outcome.

111. Like Defendant Spidell and Littlejohn, upon information and belief, Defendant Arthur entered into an agreement with GCDSS to receive compensation (allegedly 50% of his fees) from funds tied to the state/federal child welfare system for his

23

involvement in the custody case, knowing the basis for the children's removal concerning Plaintiff was fraudulent.

112.  Defendant Arthur failed to adequately advocate for Plaintiff's fundamental rights, including her right to an evidentiary hearing based on true facts, her right to challenge the fraudulent documentation, instead facilitating outcomes detrimental to her based on the fraudulent scheme.

113.  Defendant Arthur's actions constitute constructive fraud, negligence, negligent misrepresentation, civil obstruction of justice (by failing to present exonerating evidence), and participation in the conspiracy and fraudulent funding scheme, all under color of state law due to his joint action with state actors.

114.  Defendant Lee Corum, Court Appointed Attorney by the Guilford County District Court on October 7, 2024, as court-appointed counsel for Plaintiff Angela Ryan in criminal contempt proceedings initiated by the father and Defendant Megan Spidell.

115.  Upon information and belief, during the pendency of the matters at issue, Defendant Corum advanced to the public defender's office, raising questions about potential influence or reward for his conduct in Plaintiff's case

116.  Defendant Corum is sued in his individual capacity. He acted under color of state law by virtue of his appointment by the state court and by allegedly engaging in a willful conspiracy and joint action with state actors (including GCDSS employees and potentially judges) and other private actors (Defendants Spidell and LittleJohn) to deprive Plaintiff of her constitutional rights and obstruct justice.

24

117.    While court-appointed counsel generally do not act under color of state law when performing traditional lawyer functions, they can when conspiring with state officials to violate constitutional rights. See Tower v. Glover, 467 U.S. 914 (1984).

118.    Plaintiff alleges Defendant Corum is liable for his participation in the conspiracy and actions taken under color of state law and despite being appointed to represent Plaintiff's interests, he allegedly acted contrary to her interests and in concert with the opposing attorney, Defendant Spidell.

119.    During the December 17, 2024 criminal contempt hearing, Defendant Corum allegedly failed to adequately represent Plaintiff, failed to object to violations of her rights (including denial of financial assessment, lack of evidence presented by the moving party), failed to subpoena key evidence (Plaintiff's employer affidavit providing alibi), and allegedly made false statements about Plaintiff's purported admissions.

120.    Defendant Coram used threatening tactics to coerce Plaintiff's brother into paying $6,500 to Defendant Spidell under duress and threat of Plaintiff's immediate incarceration, an action deeply intertwined with the state court process and taken under apparent authority of his court appointment.

121.    Upon information and belief, Defendant Coram, like other attorneys involved, may have benefited financially through agreements tied to the fraudulent funding scheme or through his advancement to the public defender's office.

122.    Defendant Coram communicated with Plaintiff's family behind her back, attempting to coerce them into facilitating her removal from the state. His conduct

25

allegedly constitutes civil obstruction of justice, conspiracy, and violations of Plaintiff's due process rights, all in joint action with state actors and under color of his court appointment.

123. Defendant Ann Littlejohn, Guardian ad Litem/Attorney was appointed by the Guilford County District Court on December 21, 2021 as Guardian ad Litem and attorney in the custody modification proceedings involving Plaintiff's children.

124. Defendant LittleJohns role was to investigate and make recommendations to the court regarding custody, not to represent the children in an A/N/D proceeding.

125. Defendant Littlejohn is sued in her individual and official capacities (as her GAL role is quasi-official).

126. Defendant LittleJohn acted under color of state law by virtue of her appointment by the state court and by allegedly engaging in joint action and conspiracy with state actors (GCDSS employees and potentially judges) and other private actors (Defendants Spidell, Arthur, Corum) to deprive Plaintiff and her children of their constitutional rights and facilitate the fraudulent scheme.

127. While a GAL's role is generally considered an arm of the court, participation in a conspiracy to violate constitutional rights and manipulate the process for financial gain falls outside the scope of judicial immunity and can constitute action under color of state law.

128. Plaintiff alleges Defendant Littlejohn is liable for her participation in the conspiracy and had a duty to act in the best interest of the children.

129. Defendant LittleJohn allegedly acquiesced in or actively facilitated the childrens placement and continued retention in unsafe conditions at the Masonic Children's Home, ignoring reports of drug use and concerning sexual behavior occurring there.

130. Defendant LittleJohn held knowledge as a participant to multiple email communications, which the plaintiff maintains these original records amongst other communications, of the fabricated basis for the children's removal concerning Plaintiff (the fake text message) and the fraudulent GCDSS documentation (false substantiated finding/services for Plaintiff).

131. Upon information and belief, Defendant Littlejohn entered into an agreement with GCDSS to receive compensation (allegedly 50% of her fees) from funds tied to the state/federal child welfare system for her involvement in the custody case, knowing the basis for the children's removal concerning Plaintiff was fraudulent.

132. Defendant LittleJohn sought significant fees from Plaintiff based on proceedings tainted by fraud. Her actions allegedly constitute negligence, gross negligence (regarding the children's safety), civil obstruction of justice (by failing to disclose material facts to the court), constructive fraud (given her position of trust), and participation in the conspiracy and fraudulent funding scheme, all in joint action with state actors and under color of her court appointment.

133. Plaintiff names as Defendants John Doe Defendants 1-20, who are unknown persons and entities whose identities are not yet known to Plaintiff but who, upon information and belief, participated directly or indirectly in the acts, omissions,

27

conspiracies, and funding fraud detailed herein. These defendants may include other past or present employees of NCDHHS, Guilford County, or GCDSS, other court personnel, or other individuals or entities who acted under color of state law by virtue of their involvement in the events alleged.

134.  Each John Doe Defendant acted under color of law, with actual or constructive knowledge, in furtherance of the violations alleged.

135.  Plaintiff reserves the right to name additional unnamed private persons and entities as defendants who, acting in concert with the above-named state actors, are believed to have conspired to commit the acts described herein, including individuals involved with the Masonic Children's Home, Shonon Purcell (UNCCFE Evaluator), Odell Terrell (Independent Reunification Therapist), and potentially law enforcement officers from the Gibsonville Police Department (such as Chief Ron Parish, Assistant Chief Becky Dixon, and Officer Leon Staten) or other individuals (such as landlord Jan Cook) who allegedly participated in retaliatory actions or the conspiracy.

136.  Plaintiff will amend the Complaint to identify these parties as discovery progresses. Each is liable under 42 U.S.C. § 1983 for actions that qualify as under color of law due to their joint participation and conspiracy with state-actor defendants for funding fraud and deprivation of rights. Their involvement is detailed in the Factual Background and is incorporated herein by reference.

## FACTS RELEVANT TO CLAIMS FOR RELIEF

*Initial Custody Concerns and Abuse Allegations (April 2020 - Early 2021)*

28

137.    Plaintiffs adopt and incorporate by reference all allegations of this complaint as
fully set forth herein.

138.    Angela Ryan is the biological mother of minor child A.R. born **/**/ 2008,
and now adult child J.R. born **/**/2007, and who was a mior during the acts and
omissions complained of herein. They were all residents of Guilford County,
North Carolina, aside from the temporary placement of the children in Oxford
County, North Carolina from 7/02/21 to on or around 11/01/2022.

139.    Prior to the events giving rise to this action, Angela Ryan was the primary
physical custodian of the minor children, J.R. and A.R., as established by a
Parenting Agreement/Order entered in the Guilford County District Court on June
25, 2015. Angela Ryan maintained a stable and loving home for the children,
actively participating in their education and community activities, and fostering a
close bond with them.

140.    On April 13, 2020, Angela Ryan filed a Motion to Modify Custody through
Attorney Jessica Bullock of Woodruff Law Firm.

141.    On April 27, 2020, Angela Ryan filed a Contempt Motion for Father, Joshua
Ryan Sr. (hereinafter "Father") for violating the 2015 Child Support Order and his
thereafter nonpayment,

142.    On August 19, 2020, a Order for Ex Parte Child Custody was entered after the
Plaintiff filed a Motion for Ex Parte Child Custody that included allegations made
by the children to Greensboro therapist, Beth Kincaid of "upper thigh rubbing"
near the children's private parts during visits with Father.

29

143. GCDSS conducted an investigation into the report and Gibsonville Police Department Assistant Chief Becky Dixon, conducted forensic interviewing at Crossroads, Burlington NC, stating, "unable to determine if accidental or intentional" and closing the case on or around March 2021 "unsubstantiated ".

144. In March 2021, the Ex Parte Custody Order was dismissed following a set hearing on the matter, reinstating the 2015 Parenting Agreement/Order.

*Introduction of False Evidence and Unlawful Removal (Mid-2021)*

145. On March 12, 2021, counsel for the parties exchanged communications via email, and Father proposes "Reunification Therapy" with the children prior to reinstating the 2015 Parenting Agreement/Order.

146. On or around March 2021, Reunification Therapist, Odell Terrell (hereinafter "Terrell"), of Greensboro NC, is hired by Father, independent of the Court.

147. On May 6, 2021, GCDSS became involved again in response to a report by Terrel, that J.R. and A.R., were being inappropriately touched by Father and that the Father intentionally exposed his genitals to J.R.

148. On May 15, 2021, GCDSS Social Worker Miller (hereinafter "Miller") interviewed both children and Angela Ryan at their home.

149. Both children report inappropriate touching and rubbing of genitals by the Father on multiple occasions, including in front of each other and alone. J.R also reports an incident at a rest-stop bathroom where the Father intentionally exposed his erect genitals after using the urinal, and was moving his hips to make his genitals shake, which made him uncomfortable.

30

150. On June 01, 2021, and approximately 2 weeks after investigation was started by GCDSS, Father filed a Motion for Ex Parte Emergency Child Custody through his attorney, Defendant Spidell. It alleges on May 21, 2021 at 10:02 AM, child J.R., sent him a text recanting earlier statements regarding sexual abuse, stating his mother, Angela Ryan, coached and manipulated him into believing his father had sexually abused him and likewise his sister, A.R.

151. On June 01, 2021, the children were questioned before the Court by Judge Carolyn Pemberton and confirmed the allegations of abuse by their father as true. Child J.R. further provides that he never sent the text message to his father, and that the original allegations of abuse were valid and truthful.

152. J.R. stated receiving a threatening phone call from a disguised voice and unknown number, directing that he must "play along" and if asked state that he sent the text message to his father, and threats of physical harm to his mother if he failed to comply. He is informed to call father after a short period of time.

*Proof of Fraud and Deliberate Concealment (July 2021 - Early 2022)*

153. On June 08, 2021, a subpoena was issued to Verizon Wireless, by Attorney Taylor Clay, representing Angela Ryan to produce cellular phone records of Father in response to the June 01, 2021 Ex Parte Motion. Attorney Megan Spidell likewise issued subpoenas for Angela Ryan and both children devices.

154. Angela Ryan also hired a forensic investigator to conduct forensic analysis on the cellular device maintained by child J.R., which further was new and only one week old.

155. On July 1, 2021 the Verizon Wireless Records were received and confirmed that the text message produced by the Father was fabricated and non-existent. There was no text communication history between the father and child's cellular devices.

156. The records established that the threatening call received by the minor came from his father, Joshua Ryan Sr's., cellular device and further that the child made contact by calling his fathers cellular device as demanded during the threatening call and aligning with his reports to the court.

157. On June 9, 2021, both children had forensic interviews at the Guilford County Family Advocacy Center in Greensboro, NC. GCDSS does not show up or attend the interviews.

158. On June 28, 2021, a return hearing was held before Judge Pemberton. During this hearing Defendant Miller testified that she reviewed the family's case file, including previous investigations on Father and noted that the most recent investigation had been closed without explanation by previous social worker and Gibsonville Police Department, and that based on her training and GCDSS review, the findings of that investigation should have been substantiated.

159. Defendant Miller testified that she was recommending a Child and Family Evaluation ("CFE") be completed for the family, as there had been repeated allegations and investigations concerning abuse by the Father since 2014. She reports CFE taking approximately eight weeks and would be conducted by Shonon

Purcell of Winston- Salem, a University of North Carolina CFE program investigator.

160.    Defendant Miller further recommends to the Court that the children remain in Angela Ryan's home with no contact to Father during the CFE process.

161.    Also testifying at the June 28, 2021 hearing was Odell Terrell, reunification therapist independently hired by Father. Terrell's testimony and recommendations contradicted the supportive environment he had reportedly provided the children during therapy sessions, recommending the children be placed with Father.

162.    Despite GCDSS's recommendation for the children to remain with their mother and child JR's denial of sending the text message, (subpoenaed records were not yet received) Judge Pemberton orders the children to temporarily placement outside of both parents' homes suggesting inability to determine which parent was innocent. The order provides for no contact with parents during CFE and GCDSS to oversee placement of children.

163.    On June 30, 2021, SW Miller contacted Plaintiff stating Father wishes to use "The Masonic Children's Home" (MCH) in Oxford NC for placement. Defendant disagrees with concern of, "conflict of interest" and "bias" due to Plaintiff Father's direct affiliation and being a member of the organization. Defendant Miller states to Angela Ryan that she highly recommends she consider placement at MCH, a nonprofit group home that was free of charge, and if she did not agree, GCDSS would proceed to petitioning the Court and obtaining custody of the children, placing them in a unknown foster home, which may be a " bad" home, and

33

therefore upset the children and make them angry and result in false claims against their Mother, and she may never see her children again.

164. Angela Ryan reluctantly agrees in fear of her children being placed in an unsafe foster home. It was established on July 2, 2021 that Angela Ryan would bring the children to MCH.

165. On July 2, 2021, en route to the MCH, Plaintiff was contacted by Defendant Miller. Plaintiff had been previously instructed and understood that Miller would attend the drop-off and a safety plan regarding the placement would be signed then, Plaintiff provided to Defendant Miller that she would like to sign the safety plan prior to separating from her children, yet Miller demands a verbal agreement is acceptable.

166. Upon arrival at the MCH Plaintiff communicated with Supervisor Jocelyn Kersey and was informed they had not received any communication or signed Court Order for the children's placement from GCDSS and could not accept children without. For the next three hours MCH and Plaintiff attempt to contact Defendant Miller, leaving multiple messages and emails demanding her urgent attention regarding the children and necessary signed order. The facility agreed to have Plaintiff return home with the children and return with them upon receiving communication from Social Worker Miller providing them with the necessary order.

167. Approximately two hours later, on July 2, 2021, Plaintiff was contacted by Defendant Miller who was screaming at her over the phone, accusing her of not

34

complying with and following her instructions to drop the children off, and stating that Plaintiff was violating court orders. Plaintiff, crying and distraught, explained that the children could not be left and MCH had not received the required signed court order.

168. Defendant Miller continued to scream at her and demand she immediately bring the children to the GCDSS building in Greensboro, NC. Plaintiff instead went directly to her attorneys office for help.

169. Upon arrival at his office, attorney Krispen Culbertson contacted Defendant Miller and attempted to communicate with her regarding the necessary court order and the situation of leaving the children. He was met with screaming and multiple hang-ups during the conversation by Miller, who was extremely unprofessional and agitated towards him and his request for the order and guidance on the situation of leaving the children. He was denied a copy of the order.

170. Attorney Culbertson then contacted Defendant Sivori, both by phone and email regarding the matter and children's placements and Cc'ed Plaintiff for her records. Plaintiff was advised by her attorney to remain on call until he heard further communication from GCDSS Defendant Sivori.

171. At approximately 10:00 PM on July 2, 2021, Plaintiff received a text message on her phone from Defendant Miller. The message directed her to immediately proceed to the GCDSS in Greensboro, NC, with both children and stated that GCDSS had obtained a non-secure custody order for the custody of the children.

172.   Plaintiff was distraught and contacted her attorney, and Krispen Culbertson met her at the GCDSS facility. The entire interaction was recorded by Plaintiff and her Attorney as well on their phones. Defendant Miller arrived with Greensboro police officers to take custody of the children.

173.   It was a horrific and a traumatizing moment that provided no explanation as to why the children were being taken. Defendant Miller did not give a copy of the non-secure custody order. The children were crying and begging and pleaded with their mother not to leave; they were petrified.

174.   Plaintiff demanded that her children not be placed in a group home and reminded Defendant Miller that Judge Pemberton verbally expressed multiple times that the children never be placed in a group home and would not be in their best interest. Plaintiff demanded Miller was violating the court's clear instruction. She was told by Miller that she had no say any further in her children's care and would not be provided any answer regarding where her children were going and could have no contact with them. The children were placed in separate cars with an unknown social worker.

175.   Prior to driving away, Defendant Miller exited the vehicle and handed Plaintiff the cellular devices from both children (which they both still possessed), stating that they could not have them. Later, Plaintiff reviewed the daughter's phone and discovered that the daughter had recorded the entire interaction, including Defendant Miller stating that she was taking the children to a group home and first they were going to have Covid testing done at the hospital.

36

176. A copy of the non-secure custody order was later obtained by Plaintiff's attorney. The document wrongly subjected the plaintiff to abuse conditions only appropriate to the father who was under investigation. GCDSS had no grounds to remove the children from their mother on July 2, 2021.

177. On Tuesday, July 6, 2021, at the non-secure custody order hearing at the Guilford County District Court, GCDSS took a voluntary dismissal of the non-secure custody order. They further stated they would bring the children to the MCH and handle their placement,

178. Plaintiff demanded bringing the children herself and as ordered by Judge Pemberton in a recent communication that the plaintiff deemed knowledge of and after being forwarded an email from her prior attorney, Taylor, Clay.

179. The communication included Defendant Spidell, Judge Pemberton, Defendant Miller, and her supervisor Defendant Stacy Greene and Defendant Sivori. The email was initiated on July 2, 2021, from Defendant Spidell, requesting confirmation to the children's placement at MCH and later continued that the Plaintiff did not leave the children.

180. Judge Pemberton responded to the email and stated that she had left early on July 2, 2021, and forgot to sign the order for the children's placement and allowed Plaintiff a new drop off time based on no signed order July 2, 2021.

181. GCDSS did not comply and demanded on bringing the children and on July 6, 2021, the children were brought to MCH by GCDSS..

182. Approximately eight weeks later, Plaintiff received communication from MCH supervisor, Jocelyn Kersey, instructing that MCH transported the children to their interviews with Shonon Purcell for the CFE and instructed by Defendant Miller that children had no further CFE visits and she would arrange therapy for the children while waiting for parents to complete interviews.

183. No order for such therapy existed. MCH continued to inform Plaintiff that therapist Odell Terrell arrived at their facility and demanded visits with the children recently, stating he was ordered by the court to have weekly visits during the CFE and until parents completed interviews. MCH reported that neither child would make contact with the therapist and adamantly opposed any visits or contact with him, stating he was not acting in their best interest, and that they did not trust him and demanded their mother be contacted.

184. Defendant Miller was contacted by MCH and advised that although Odell Terrell was not ordered by the court, the facility should promote the children to have weekly visits and instruct them that if they did not, it could impact their ability to go home. The children began weekly visits with Terrell wanting to return home.

185. Plaintiff was contacted by J.R. from his school email asking for her help and whether Odell Terrell was court ordered. Plaintiff responded to J.R.

186. Plaintiff sent an email to Shonnon Purcell informing him of Terrells visits occurring outside of any court order and her concerns as the children adamantly denied contact with him, and furthermore, impacting CFE results.

187.    Plaintiff's attorney Culbertson, filed a Motion for Clarification with the Guilford County District Court requesting the children's return. Judge Pemberton communicated to both Defendant Spidell and Attorney Culbertson that she desired to speak directly to Shonnon Purcell regarding the status of the CFE.

188.    Judge Pemberton made direct contact and spoke to Mr. Purcell and he falsely reports to the Judge that he was actively meeting with the children and conducting multiple visits. He stated he was unable to determine a completion date and provided that he wanted to build trust with children.

189.    Judge Pemberton ordered the children remain placed out of home and start high school out of County in Oxford, North Carolina and mandated they not be returned to their mother's home until Shonnon Purcell conducted his visits and completed his assessment.

190.    Plaintiff promptly informed her Attorney that this information from Mr. Purcell was false and the MCH supervisor sent her an intake assessment that specified the children had completed the CFE and it consisted of only one visit each.

191.    The out-of-home placement lasted six months, far exceeding the stated eight weeks. It further violated the UNCCFE guidelines to which Mr. Purcell was acting under. Angela Ryan was provided only a single interview with Mr. Purcell, where he questioned her only regarding why her marriage ended and did not speak to her about the children or ongoing GCDSS investigation of the father. Plaintiff was promised a second visit to discuss children and the abuse but Mr. Purcell never met with her.

39

192.    On or around October 2021, Plaintiff hired Attorney Adam Arthur at this time with hopes of him promptly approaching the matters separating her and her children. Defendant Arthur previously represented Angela during the 2015 divorce and custody proceedings.

193.    On October 29, 2021, Defendant Spidell filed a Motion for Contempt, with attached exhibit showing an image of email Communication between Plaintiff and children, asking the Court to enter a Order to Show Cause and a Order of Contempt, alleging that the Angela Ryan communicated with the minor children by way of the children's new school email account and by responding to a email initiated by the children, asking Plaintiff for help.

194.    On November 15, 2021, Defendant Spidell sent a subpoena to the children's school at Granville County Schools, and failed to provide notice to the Plaintiff of the subpoena that requested all email records of both minor children be sent to her directly by November 29, 2021.

195.    Defendant Spidell attached to the October 29, 2021 contempt motion a copy of an email belonging to CPS file that the court had not entered an order releasing such confidential records, violating the privacy of Plaintiffs.

196.    On December 02, 2021, a letter from Tharrington Smith, LLP, who represents Granville County Schools is received by the Clerk of Court in reference to the subpoena sent November 15, 2021, by Spidell, requesting an order of the Court and that the records be sent to the Court directly versus Spidell due to documents being of a sensitive nature and their lack of knowledge regarding the custody case.

40

197.    On December 7, 2021, a verbal order is entered and later signed on December

8, 2021, by the Honorable K. Michelle Fletcher, ordering the school emails

produced pursuant to subpoena be submitted to the clerk's file under seal, only to

be released by in camera review by a District Judge presiding over the matter. She

further orders GCDSS produce within 24 hours a copy of the final CFE to counsel

of both parties.

198.    On December 13, 2021, the original and same subpoena sent by Defendant

Spidell and dated November 15, 2021, requesting school records/emails of both

children, is now "clocked" by the Clerk of the Court alongside the December 8,

2021, Court Order and sent to Tharrington Smith, LLP, in response to their

December 2, 2021 letter.

199.    On December 21, 2021, a return hearing was held by the terms of the July 6,

2021 temporary order before the Chief District Judge Teresa Vincent. Defendant

Arthur meets individually with Angela Ryan first and reports that the court is

following GCDSS recommendations from a pre-hearing conference with Judge

Vincent, Defendant Spidell, Defendant Sivori and himself. GCDSS recommends a

"Safety Assessment" based on CFE results, continued MCH placement, once

weekly supervised one hour visits, psychological evaluations, family therapy, and

GAL appointment, specifically Attorney Anne Littlejohn.

200.    Angela Ryan expresses displeasure with the CFE's validity that failed to

interview her in regards to the children or the abuse and failed to comply with

41

UNCCFE guidelines to which Mr. Purcell was acting under and incomplete interview process that did not discuss the children or abuse with her.

201.  Plaintiff requests a proper evidentiary hearing for GCDSS to properly present evidence for the continued separation of her and the minor children.

202.  Angela Ryan places strong emphasis on the return of the subpoenaed cellular records and affidavit which confirmed the text was fabricated and sufficiently provides that her children should be returned to her immediately as this was the only reason for their separation and because of this text message and its false allegations it suggested that she coached or manipulated her children.

203.  Mr. Arthur declines approaching the fabricated text message and Subpoenaed Verizon Wireless Records, misleading the Plaintiff and suggesting he will introduce the evidence at the final custody trial and advising her to instead agree with and complete the recommended services of GCDSS first. Plaintiff trusts and believes he is advising her truthfully.

204.  Defendant Arthur and Defendant Miller inform Plaintiff that if she doesn't agree to the voluntary placement and safety plan, GCDSS will petition the court and take custody and the children will go to an unknown foster home. Feeling threatened and believing this is her "only option," Angela Ryan reluctantly agrees against her will to the continued voluntary placement and services.

205.  On December 28, 2021 Defendant McDowell visited Plaintiff at her home, discussing biweekly contact and the Temporary Order entered December 21, 2022..

42

206. On January 31, 2022 a CFT meeting with GCDSS occurred, discussing the December 21, 2021 order and services. Angela Ryan attends with Defendant Arthur at his office via conference call.

207. On or around February 2022, Angela Ryan records a one hour conversation with Defendant Arthur where she demands that the safety plan recommendations and ordered services of the temporary order do not align with her situation and questioning why she must complete services as the "innocent parent" who has never been investigated and further readdressing the fake text message and Defendant Spidell failing to inform the court of this discovery.

208. On March 11, 2022, Defendant McDowell visits Angela Ryan and provides her with a document titled "In-home services agreement" (DSS-5239 form), stating she "forgot" to provide it to her earlier.

209. Plaintiff recorded this conversation along with all of her GCDSS interactions.

210. Following the visit the Plaintiff gains further insight on the document and establishes an altered version of the state/federal approved form DSS-5239, containing different content and lacking the required parent and child involvement and approval signatures of her and the minor children.

211. The form fails to comply with the mandated instructions outlined in DSS-5239ins. She further noted that the form lists a target completion date of July 2, 2022 (the exact one year date of children placed out of home) and states failure to complete the services and conditions listed within would result in loss of custody to GCDSS.

212.   Plaintiff establishes further that the agreement is strictly related to investigated parents holding a substantiated or services needed investigation finding, which she does not have.

213.   Further, there is no court order specifying such conditions or ordering her to the in-home services agreement with GCDSS.

214.   Plaintiff communicates to Defendant McDowell via email and Cc'ed Defendants Greene, McDowell, Paylor, Sivori, and LittleJohn, detailing the fraudulent document, lack of her participation or signature as required, and demanding children's return, but is ignored.

215.   Angels Ryan continues to communicate on the matter and concerns with Defendant Arthur and the validity of this document and whether she should be receiving such form along with the threats, including loss of custody to GCDSS.

216.   Defendant Arthur confirms that she has never agreed to, or executed such agreement, and further has not ever been aware of any such form.

217.   Between July 2022 and August 2022 Plaintiff communicates to MCH, Defendant McDowell, Defendant Greene, Defendant LittleJohn, and Defendant Sivori about misconduct and abusive behaviors towards the children at MCH (abuse, neglect, emotional distress, lack of sibling contact, confinement, manipulation). No response or corrective action is taken by GCDSS defendants or GAL. Specific incidents include:

  –   A.R. verbally abused/screamed at by house parent Ms. Octavia.

  –   Children punished arbitrarily (early bedtime, copying book).

- Children denied additional sibling time.

- MCH staff advising J.R. against spending time with A.R.,suggesting she is "dramatic" and negatively impacting their bond.

- MCH facilitating out-of-state travel with a cottage trip without proper consent/communication with mother (a violation of MCH policy and court order).

- Children's property searched and items removed without guardian notification or reasonable belief (violation of MCH policy).

- Children exhibiting signs of emotional distress, withdrawal, depression, anxiety, and MCH staff bringing children to doctors and placing them on medication (Prozac, Atarax for depression/anxiety) without mother/guardian consent or proper communication,

- MCH staff encouraging children to stay at the facility and advising against returning home to their mother.

218.  On July 14, 2022, Angela Ryan obtained A.R. 's Duke Health doctor's notes revealing regular marijuana use at MCH and being caught with other residents, becoming sexual activity at age 13 with male resident of MCH, placement on birth control, and STD/pregnancy testing. This information was never communicated to Angela Ryan by GCDSS or MCH. GCDSS offers the plaintiff a CFT meeting several weeks away to approach her urgent concerns and takes no action.

*The Fraudulent Custody Trial (October 2022)*

45

219. On October 18, 2022 the Custody Trial begins in Guilford County District Court before Judge Tabatha Holiday. Angela. Ryan is forced to represent herself after removing Defendant Arthur due to his misleading, negligent and conspiring conduct that has impacted reunification of Plaintiffs and failing to present fake text message.

220. Plaintiff files a motion for "Fraud on the Court" requesting dismissal of case and return of her children, and provides detailed timeline including the fake text message and fraudulent in-home service agreement documents. Judge Holiday reviews the motion at the beginning of proceedings but denies it.

221. During the proceedings Angela Ryan is led to believe that if she desires to enter any exhibits that she must take the stand and testify to which she proceeds and does and upon completion instead of the ability to enter her exhibit, as the judge promised, she is instead denied.

222. Defendant Spidell introduces an altered version of the fake text message originally entered June 01, 2021.

223. The plaintiff discovers the difference between the original and new version that was entered as exhibit and brings awareness to Judge Holiday during her closing statement to which Judge Holiday further reviews immediately.

224. The new drafted message that was created off a knowingly false message was a larger sized and more consistent image (original held various fonts and distorted general image), now all of the font being the same and prior issues such as the bottom of the Y in the last word of the original message cut off and now being

46

fully revealed. Further, details in regards to information at the top of the message are now altered including changing of initials of sender from "JJR" to the now displayed phone number.

225. This version and message has never been seen or introduced to the case.

226. Angela Ryan is further found in contempt for her emails/letters to the children, a matter previously heard and ordered upon in the case.

227. Judge Holiday rules, granting father full legal and physical custody with zero contact for Angela Ryan, citing her communication with the children (letters found during the unlawful MCH search) as violating orders and deeming her unfit. It is further suggested that her communications and advice to the children to use caution during interaction with GCDSS and potential discovered misconduct by Angela Ryan constitute her providing het children should not trust people of GCDSS and further making her unfit.

228. Judge Holiday orders Angela Ryan to pay attorney fees for Defendant Spidell and GAL Defendant LittleJohn, totaling approximately $60,000. The court further demands Angela Ryan to deplete her entire savings account with immediate payment of $5000 to Defendant Spidell as requested and enters order for payment of approximately $1200 monthly total in regards to the fees without assessing her financial abilities.

229. The pending contempt motion of April 2020 by Angela Ryan filed against the father for over $25,000 in child support arrears and over two years of nonpayment is not heard, despite being scheduled.

47

230. Plaintiff was promised it would be approached at a later date yet, this has never occurred. The court further has allowed the father to file for child support actions on the Plaintiff with disregard to his arrears and contempt.

*Appeals, Remand, and Further Judicial Misconduct (November 2022 - January 2025)*

231. On November 18, 2022 Angela Ryan files notice of appeal of the custody order and attorney and GAL fee order through Attorney Mark Hayes to the North Carolina Court of Appeals.

232. On November 22, 2023 the North Carolina Court of Appeals entered an opinion affirming the custody order but vacating the attorney fees order, finding an abuse of discretion by the trial court and remanding for further find of fact regarding fathers "good faith".

233. On July 17, 2024, a remand hearing occurred before Judge Tabatha Holiday regarding the vacated attorney and GAL fees.

234. The Court of Appeals mandated Judge Holiday to make further findings regarding the father's good faith. Judge Holiday enters false and insufficient findings stating the father was falsely accused of abuse by the mother, and that the mother coached the children subjecting him to years of investigation wrongfully and he was forced to hire representation through Defendant Spidell to defend himself, and therefore was acting in good faith..

235. This contradicts evidence in the trial record, including a letter from GCDSS to the father documenting his completion of in-home services resulting from a services needed abuse investigation finding. Further, during the proceedings, the

48

father has his financial abilities assessed and considered while Angela is denied, regardless of providing court that she cannot afford the attorney and GAL fees and further expressing financial difficulty impacting her electricity, which was disconnected the following week for nearly 8 weeks.

236. Based on these false findings, Judge Holiday reinstates the attorney and GAL fees against Ms. Ryan on July, 17, 2024.

237. One month later, Defendant Spidell files a motion for contempt, alleging nonpayment of the attorney fees, and suggesting that Angela Ryan had the means and ability to pay, and likewise includes nonpayment to Defendant LittleJohn, however, Defendant LittleJohn does not provide any statement or affidavit to these claims listed within the same motion.

238. It furthermore was filed by Father, Joshua Ryan Sr., and who also signed as the "Intervenor" of the document under notary. Father held no grounds to file such action as the orders of these fees were entered specifically and separately to each attorney on July 17, 2024.

239. The motion requests for a civil contempt order to show cause with purge conditions. The motion contains a second matter alleging that Angela Ryan made contact with minor child and violated the October 2022 custody order and strong allegations suggesting evidence through a neighbors security camera of Angela Ryan on Fathers Street further alleging she transported the minor from Fathers home to the boyfriends home, No evidence is offered in support of.

49

240.   On or around September 2024, Angela Ryan filed a response to the motion for contempt filed by defendant Spidell for unpaid attorney and guardian ad litem and raises question to the validity of the order due to Judge Tabatha Holiday failing to follow the mandate of the North Carolina Court of Appeals and reinstating these fees without sufficient finding of fact, but instead false findings to which records and exhibits during the custody proceedings, specifically a letter entered Defendant Spidell from GCDSS to Father outlining his completion of in-home services following the services needed abuse investigation, and successful completion allowing him the ability to regain custody of the children in his home.

241.   The letter provides solid proof that Angela Ryan did not falsely accuse the father, nor manipulate or coach the children, and in fact, the father was guilty of and investigated for abuse by GCDSS. Plaintiff further provides in her response the June 01, 2021 fabricated text message entered by Defendant Spidell and her continued usage of the knowingly fabricated and false evidence against Angela Ryan,  causing damage and forcing her to present a defense in regards to matters holding no basis.

242.   On September 18, 2024, and in response to the August 2024 contempt motion for attorney and guardian ad litem fees filed by Defendant Spidell, Judge Holiday entered an order to show cause for criminal contempt in regards to the Attorney and GAL fees and a second criminal contempt order to show cause for the alleged violation of the October 2022 custody order.

243. On October 7, 2024, Angela Ryan was declared indigent and Attorney Lee Corum was appointed by the court to represent following her request for a court appointed attorney in the criminal contempt order to show cause proceedings.

244. On or around November 2024 Plaintiff requests appointment of a new court appointed based on Attorney Corum providing her false instruction and misleading her in regards to the contempt matters specifically attorney fees and denying her proper defense and protection of her constitutional rights.

245. Defendant Coram was further communicating outside of Angela, Ryan's knowledge with Defendant Spidell and LittleJohn and impacting her case defense. He repeatedly was accusing her and demanding that she was guilty of violating the attorney fee order and suggesting that her payment of rent, utilities, or even food constitute her violating the order, and that no other financial obligations come prior to payment of the court ordered amounts. He provided that the court would support and find it acceptable for her to live on the streets and be homeless if it meant not paying her rent and the ordered fees first. He further provided the only defense option was that she take her paid vehicle and use it as collateral on a loan to make payment to the attorneys. Angela Ryan did not have the means or ability to pay for a loan, and would have lost her only vehicle, as Attorney Corum was provided all of her financial earnings and obligations and held full knowledge of her abilities. This would not have been her best interest.

246. Defendant Corum advised her that she should not drive for the upcoming December 17, 2024 hearing and to plan to lose her job furthermore, as she would

be going to jail. He was extremely threatening and falsely suggested that the court no longer was required to assess her financial abilities since they failed to do this originally.

247. Defendant Coram furthermore demanded that she testify during the proceedings, suggesting her only way to enter evidence was through testimony during the proceedings, which she denied and provided would violate and subject her to self incrimination. This similarly occurred during the October 2022 custody proceedings and believed as a recommendation by Defendant Spidell and allow her to gain evidence to use against Angela Ryan that she currently dud not hold.

248. On or around November 2024, Angela Ryan reminds Defendant Corum to subpoena records from her employer that served as alibi to the allegations of violating the October 2022 custody order and second Criminal Contempt action, yet he fails to subpoena these crucial records to Angele Ryan's defense

249. On or around November 18, 2024, Plaintiff Ryan files a Motion requesting appointment of new Court appointed attorney outlining the conduct of Defendant Corum, but the Court fails to respond.

250. On December 17, 2024 at the start of the Criminal Contempt Order to Show Cause proceedings, Plaintiff requests to approach the court regarding appointment of new court appointed attorney again. She proceeds to provide the Honorable Kelvin Smith explanation and is instantly cut off by the Judge who became extremely agitated and demanding that he would not appoint a new attorney and that he was requiring her to use Defendant Corum, and further denying her self

52

representation. Angela Ryan was further accused of "wasting the courts time" through her request.

251. The court failed to properly investigate the claims of Angela, Ryan and reported conduct of Defendant Corum. During Proceedings Defendant Corum fails to protect Angela Ryan and her rights and allows the Court to deny her financial assessment while suggesting they were not required to do so, and further would not review any of the requested paycheck stubs or documents in relation to her earnings and obligations.

252. Judge Smith questions her while she is not under oath, to which these unsworn statements were then used as the only evidence that found her guilty of civil contempt, when in fact, the burden of proof was on the opposing party, who entered no evidence.

253. Angela Ryan is questioned in regards to the amount that she paid for her vehicle two years prior to the proceedings and the court then uses this unsworn statement to place her in civil contempt, suggesting she had a vehicle that was owned, and therefore had the ability to pay the nearly 50,000 in attorney and guardian ad litem fees.

254. The court proceeded to enter a civil contempt order during a criminal contempt proceeding without proper notice. During the proceedings Judge Smith stated that because Angela Ryan owned her car she could have sold the vehicle and pay the attorney fees, and therefore was in civil contempt, and was punishing her to 30 days confinement and specific purge conditions.

255. The judge did not assess her needs for a vehicle for her employment, or the current value of the vehicle and only used the amount she paid for the vehicle two years prior. Judge Kelvin Smith provided to Angela Ryan that she was to pay $6500 immediately during proceedings, and if she failed to do so that she would be taken to jail immediately. He gave her five minutes to use Defendant Corums cellular device to contact family or friends and gain the money.

256. Plaintiff contacted her brother, William Jobse, and Defendant Corum took over the conversation and used threatening scare tactics of jail to gain the funds, which her brother immediately paid extremely scared for his sister.

257. Defendant Spidell then directly spoke to Angela Ryan's brother and instructed how to make immediate payment to her directly, to which he did. Defendant Spidell and Defendant Corum then communicate to Judge Smith of properly receiving the funds.

258. The court then proceeded to enter a second purge condition of nearly $3000 more within the next two weeks and lastly added the ordered attorney and GAL fees as a purge condition with no ending date and providing that Angela Ryan would be punished through confinement if she failed to pay the purge conditions.

259. During the December 17, 2024 proceedings, the Honorable Calvin Smith subjected Angela Ryan to a biased and prejudiced environment, further surrounded with judicial misconduct and unlawful conduct. He degraded and belittled her through the entire proceedings, calling her a liar and that she falsified documents to gain her indigency status, made mockery of her, and how funny it was, and how

54

fast a person will get money, when threatened with jail and further disregarded her

constitutional rights and unlawfully failed to assess her financial abilities and

demanded that he was not required to do so, and would not review the documents

that she requested, and further failed to investigate her claims of the conduct of

defendant Corum, who denied her competent representation in defense in her case.

260.   Judge Smith further allowed the coercive and threatening conduct by

Defendants Spidell and Corum and scare tactics used by jail threats to the family

of Angela Ryan to gain $6500 and causing financial distress on them.

261.   Judge Smith signed the Civil Contempt order drafted by Defendant Spidell,

allowing the extensive inaccuracies including the failed notation of the collected

$6500 during proceedings with continued threats of imprisonment for

nonpayment.

262.   The biased approach and disregard of Angela Ryan's constitutional rights

continue to heighten and escalate against her by these individuals as she attempts

to seek justice.

*Discovery of Fabricated Case Records and Ongoing Abuse (August 2024)*

263.   On August 6, 2024 child A.R. runs away from her father's home in

Greensboro, NC, seeking help due to continued abuse and conditions that have

threatened her life, including three suicide attempts.

264.   A.R. leaves a note for her father documenting these conditions and his

exposure of her to alcohol/marijuana (used in suicide attempts). A friend helps

A.R. get to the Family Justice Center, which refers her to CPS due to her age. A.R.

55

contacts CPS via her boyfriend's phone and reports the abuse and her running away. CPS advises her to remain at her boyfriend's sister's "safe" home, visits her, and approves the placement temporarily.

265.  On August 6, 2024 at approximately 8:00pm, Gibsonville Police Department Officer Leon Staten, assisting Guilford County Sheriff's, arrives to Plaintiffs home advising her of daughter "missing" and Father adamant she is with the mother. He questions Angela Ryan to inquire if she holds knowledge of the minors location. Plaintiff allows the Officer to search her home.

266.  On August 9, 2024, Defendant Reeves, GCDSS social worker became involved in the case as well as her Supervisor Rachel Cooley. Defendant Reeves instructs A.R. to come to GCDSS for a meeting with her father to arrange temporary placement while the father is investigated and is given the option to return to her father's home or a group home, and she denies both options and requests to stay in her current safe placement. She is told she must undergo a mental health assessment to explore other options. A.R. agrees to the assessment if required to stay out of her father's home, reiterating fear of returning to him.

267.  Boyfriend and his sister bring A.R. to Guilford County Behavioral Health Center as instructed by Defendant Reeves for the assessment. Defendant Reeves informs the minors boyfriend and sister to leave, stating she'll contact them later regarding completion and pickup. Boyfriend and sister leave.

268.  On August 9, 2024 the minor's boyfriend contacts Guilford County Behavioral Health Center, which tells him A.R. is being kept throughout the weekend with no

56

contact allowed due to assessment conditions. Concerned A.R. is being returned to her father, he contacts Angela Ryan for help.

269.    Angela Ryan was previously notified by police that A.R. was "missing" and ran away, not given the truth about her seeking help and approved temporary safe placement.

270.    August 10, 2024,  Angela Ryan contacts the Guilford County detective who initially contacted her, informing him of the contact by boyfriend and revealing about A.R.'s location and reason for leaving father's home. Detective refers to Defendant Reeves. Angela Ryan leaves a voicemail for Reeves.

271.    August 10, 2024, Reeves calls her back (conversation recorded by Angela Ryan), confirming father is being investigated for sexual, emotional, and mental abuse and childs runaway. She states A.R. is at the Guilford County Behavioral Health  Center receiving a required assessment. She confirms knowledge of father's prior services needed abuse investigation and in-home services completion from 2021-22. Angela Ryan expresses concern, given this history, that A.R. is being returned to him.

272.    On August 12, 2024, Ms. Ryan does not receive communication from SW Reeves. She calls Guilford County Behavioral Health Center multiple times and staff deny A.R. is or ever was a patient there, despite Reeves stating she was. They transfer her to Cone Health, who also deny A.R. was a patient.

273.    Plaintiff calls Behavioral Health Center again, and staff confirms A.R. was never a patient or received care. Plaintiff contacts Defendant Reeves again,

confronting her about the false information. Reeves becomes agitated, stating she has no more information, and hangs up.

274. On August 12, 2024 communication from A.R.'s boyfriend confirms A.R. was returned to her father's home and confirms receiving no assessment at the Behavioral Health Center on August 9th and confirming that GCDSS lied to Angela Ryan and tricked A.R. into returning to her father's abusive home under false pretenses (assessment), and failed to investigate the abuse or protect A.R., despite her suicide attempts and credible reports.

275. Text messages from the father and brother to the boyfriend reveal scare tactics of threatening A.R. with locked psychiatric facility placement due to suicide attempts were used to coerce A.R. into returning home and denying father's abuse. Angela Ryan retains these records.

276. On or around August 12, 2024, during text message communications between Angela Ryan and Defendant Reeves it is revealed to Angela Ryan of the existence of fictional case records on mother in the CPS file. These records falsely claim Angela Ryan was investigated for abusing children, had a services needed finding, and was required to complete in-home services, and received a letter confirming successful completion. Angela Ryan was never investigated, required services, or received such a letter. These fictional records mirror the findings and process applicable only to the father who held a services needed investigation and received completed of in-home services letter.

277. This discovery provides full understanding of how the conspiracy operated: the fake investigation/completion documents on Plaintiff, paired with the fake in-home services agreement (DSS 5239) given to mother in March 2022, were created to meet required conditions for collecting state and federal funding based on the children's out-of-home placement and alleged "in-home services" being completed by both parents, despite these conditions being non-existent for mother and the placement/services being initiated under false premises (fake text message, coercion).

*Failure of State Oversight and Continued Retaliation (2022 - Present)*

278. On August 12, 2024 Plaintiff contacted the North Carolina Constituents Office, reporting the failure to investigate A.R. 's abuse and placing her back in the father's home, risking her safety.

279. The Constituents Office attempts to contact NCDHHS in Raleigh multiple times regarding the urgent concerns and failure to act, advising them to contact Angela Ryan. NCDHHS ignores these repeated alerts and fails to contact Angela Ryan or investigate.

280. On August 12, 2024 Angela Ryan discovers her email account with all communications between her and the Constituents Office having been deleted from her account and confidently knows that she has never deleted the multiple email records.

281. Although she printed these records and saved them to a backup source, the records were intentionally deleted and there was access to her personal account

59

and invasion of her privacy.. Plaintiff believes and therefore states that the records were likely destroyed to eliminate proof of communication by Angela Ryan and knowledge maintained by NCDHHS and removing them from any potential liability.

282.    From August 2024 onwards, Angela Ryan faces escalating retaliation for attempting to expose the misconduct and fraud. This includes alleged stalking, harassment, vandalism of her vehicle caught on surveillance camera 3 times followed by false reports to her insurance company suggesting insurance fraud, believed hacking/deletion of her digital communication records and multiple home invasion attempts or successful entries including her Great Dane being harmed and drugged.

283.    Gibsonville Police Department officers allegedly fail to investigate or act on her reports and are allegedly involved in the vandalism/false reporting. They extensively failed to file reports and preserved proper evidence, including fingerprints and photos. There is further communications to her, on multiple occasions of knowledge, and reviewing of evidence that father has shared, including letter that was left by minor child as well as images that were suggested of her vehicle, and caught on a surveillance camera near his home, and further allegations of contact with minor child, to which the officers have taken no action to protect the minor child, while holding knowledge of life-threatening conditions.

284.    Angela Ryan has further been misled to believe that her daughter was "missing" when in fact, officers had full knowledge of where she was located

which was later discovered after contact was made from the minors boyfriend who confirmed law enforcement, and GCDSS held full knowledge of her location and visited her furthermore at his families home within one hour of her departure from the fathers home and leaving the family justice center of Greensboro in North Carolina.

285. On January 7, 2025 Angela Ryan filed Notice of Appeal to the North Carolina court of appeals regarding the December 17, 2024 civil contempt order entered by Judge Kelvin Smith, following denial by court appointed attorney, defendant Corum and Angela Ryan requesting three times for him to do so.

286. The Plaintiff further files and requests a temporary stay and Writ of Supersedeas to the North Carolina Court of Appeals in first instance due to the bias and judicial misconduct of the District Court and disregard to her constitutional rights.

287. Plaintiff provides strong evidence and support, including the discovery that Defendant Spidell has continued using the fabricated text message throughout all proceedings to the current date and that the original Appeal and Opinion entered November 22, 2023 following the October 18, 2022 custody trial order was influenced by the fabricated text message.

288. Angela Ryan explains further of her recent discovery to this detail and ongoing usage of the fabricated text message by attorney Spidell and having hired Attorney Mark Hayes of Durham, North Carolina to whom she trusted approaching this during the initial appeal process. Plaintiff paid over $30,000 for

61

Attorney Mark Hayes. This knowingly and intentional conduct by Defendant Spidell impacted Plaintiffs Appeal Process and return of her children and further has subjected them to continued living conditions that are abusive by their father, and led to the August 2024 suicide attempts. Each and every action that has occurred following the July 1, 2021, discovery through subpoenaed Verizon wireless cellular records, confirming the message as fabricated, has been executed in a intentional and malicious manner disregarding the rights of Angela Ryan and her children and to cause her damage while hiding her knowledge to their conspiracy and misconduct.

289.   On January 2, 2025 a notice was filed to the case record for destruction of all exhibits and evidence from the October 2022 custody trial proceedings, which are crucial and necessary for Angela Ryan to mount a proper defense. although the notice of appeal was not filed until January 7, 2025,

290.   The records were destroyed during the period of time to which Angela Ryan was allowed to file notice of her appeal and thereafter requiring these documents, as Defendant Spidell holds knowledge of being crucial to Angela Ryan and her ability to defend her claims.

291.   After receiving a notice allowing 30 days to collect the exhibits from the clerk's office, Defendant Spidell fails to collect the documents and allows them to be destroyed.

292.   Angela Ryan did not receive any notice regarding these destroyed records as she was not allowed to enter any exhibits during the custody proceedings. The

62

destroyed records specifically include the letter from GCDSS to father confirming his completion of in-home services in respect of his abuse investigation and supporting the failure of Judge Tabitha Holiday to follow the North Carolina Court of Appeals Mandate and entering insufficient findings of fact regarding fathers good faith.

293.    In addition to the exhibits listed on the notice filed a reference to the Verizon wireless cellular records is notated Has been destroyed and part of clerks records, however, not an exhibit to the proceedings. It is suggested as being attached accidentally to an actual exhibit and therefore destroyed.

294.    February 24, 2025 Angela Ryan is evicted from her home due to the financial distress caused from December 17, 2024 contempt proceedings and further impacting her ability to pay rent. She lived in her car with her Great Dane dog for two months. Due to the ongoing emotional distress including the loss of custody, her job duties are impacted severely and she loses her job and full-time employment.

295.    Angela. Ryan is repeatedly denied recording of the December 17, 2024 proceedings that are necessary to produce transcripts for her appeal, impacting her substantial rights. However, Defendant Spidell files a notice requesting a copy of the December 17, 2024 recording and is granted on her first request. Angela Ryan also discovers that her initial request was now added to the case file and suggests she was emailed a copy of the recordings like Defendant Spidell yet this never occurred.

296.   Angela Ryan has maintained communication and requested intervention by the North Carolina court of appeals, to the continued conduct and denial of her rights during the appeal process and inability of proceeding in her appeal due to the intentional destruction of records and denial of recordings, and furthermore, requesting their support as her substantial rights had been impacted, including eviction from her home and loss of employment, yet denied.

297.   The district court and court of appeals further deny a stay to Angela Ryan on the December 17, 2024 civil contempt order. The district court continues to proceed with actions against her for failed payment of the fees and additional purge conditions of Judge Smith's order that she does not have the means or ability to pay and continuously denied review of her financial abilities as well as appointment of a new court appointed, attorney to represent and protect her rights in the matter.

298.   On March 22, 2025, during a continuance hearing regarding the December 17, 2024 civil contempt order, defendant Spidell request that the court continued the matter and allow Judge Smith to take action in regards to his order against Angela Ryan and the continued nonpayment of fees and further review her pending motion to dismiss Angela Ryan's appeal, and is granted as outlined in the continuance order filed to the case record. Angela Ryan demands that a new judge approach the case and that due to her pending appeal and questionable conduct of Judge Smith, including the denied assessment of her financial abilities, suggesting he was not required to do so alongside conditions of the order that would subject

64

her to severe damages. She further demands the removal of the appointed Attorney Defendant Corum who remains as her appointed attorney or self representation as constitutionally entitled and advised that only Judge Kelvin Smith could determine this.

299.   A notice was promptly filed to the North Carolina Court of Appeals regarding Judge Kelvin Smith taking action upon his own order and for the dismissal of his order under appeal, with no response or protection from the court of appeals.

300.   On May 6, 2025 Angela Ryan filed a motion for discretionary review to the North Carolina Supreme Court, which was denied. She filed this action, following the denial of protection from the North Carolina court of appeals and their failure to intervene with Judge Kelvin Smith acting upon and dismissing his own order under appeal and the damages that continue to impact her substantial rights under the bias and prejudice conditions with disregard to her constitutional rights.

301.   Angela Ryan lives in fear each day due to this severe retaliation. Her children also continue to live in fear and suffer ongoing abuse while forced to reside with their father, despite their consistent reports of abuse.

302.   The state court system's actions, including the custody order awarding custody to the abusive father and the denial of contact with the mother are calculated to keep the children from Angela Ryan, thereby hindering her ability to pursue legal action and seek justice for the conspiracy and misconduct. The children, who have repeatedly sought help and protection, are knowingly being subjected to an abuser, a situation tolerated by the judges and state actors involved in this conspiracy.

65

303. The Judges of the Guilford County District Court, along with actors from the Guilford County Department of Social Services, North Carolina Department of Health and Human Services, independent family law attorneys and the Guardian ad Litem have conspired together and resulted in blatant and intentional violations of the constitutional rights of Angela Ryan and her children, subjecting them to knowing and intentional damages and traumatic matters, with the alleged intent of monetary gain through fraudulent funding schemes and self-preservation by covering up misconduct.

304. Angela, Ryan has been denied protection or intervention and has exhausted all state court relief. On July 1, 2025, there is a pending matter in the state court in regards to the unpaid attorney fees and the December 17, 2024 contempt order that is subjecting her to indefinite incarceration and conditions to which the state courts deny taking action or protecting Angela Ryan, but instead intentionally causing her damage that she desperately needs protection and intervention by this honorable court in regards to.

**IMMUNITY OF DEFENDANTS**

305. Plaintiffs adopt and incorporate by reference all allegations of this complaint as fully set forth herein.

306. The Defendants in this action, whether state actors or private individuals conspiring with state actors, are not entitled to claim absolute, prosecutorial, or governmental immunity for the severe constitutional violations and tortious acts

committed against the Plaintiffs. Such immunities are strictly construed and do not

extend to the intentional and malicious conduct complained of herein, which falls

squarely outside the legitimate scope of official duties or any protected

prosecutorial function.

307.    Specifically, the actions giving rise to this Complaint were emphatically not

undertaken during the process of prosecuting any claim of abuse, neglect, or

dependency ("A/N/D") in a proceeding before the Guilford County District Court,

and as detailed in the Factual Background, all matters concerning the Plaintiffs

originated from a Chapter 5 custody modification motion filed by Plaintiff Angela

Ryan.

308.    This crucial distinction is paramount: at no point did the Guilford County

Department of Social Services (GCDSS), or any other state actor, ever initiate or

file an abuse, neglect, or dependency proceeding against Angela Ryan or her

children. The purported justification for the children's removal and the subsequent

imposition of conditions upon Angela Ryan stemmed entirely from an

investigation into the father, and, most critically, from the fraudulent introduction

and manipulation of evidence within the context of a private custody dispute.

309.    The conduct of the Defendants, including the creation and use of fraudulently

executed in-home services agreements, the knowing presentation of a fake text

message as evidence, the deliberate concealment of exculpatory information, the

fabrication of official case records, the malicious prosecution for contempt based

on false premises, and the systemic obstruction of justice transcends the

67

boundaries of mere negligence or discretionary decision-making that might otherwise warrant immunity.

310.    These acts were not merely erroneous judgments made during an A/N/D prosecution; they were intentional, willful, and malicious maneuvers designed to unlawfully separate Angela Ryan from her children, to financially benefit from their out-of-home placement, and to perpetually deny the Plaintiffs their fundamental constitutional rights to familial association, due process, and equal protection under the law. Such blatant disregard for the Plaintiffs' well-established rights and the Defendants' own statutory obligations as public servants and officers of the court strips away any potential shield of immunity.

311.    Furthermore, any governmental immunity that might arguably apply to the governmental Defendants, including Guilford County, GCDSS, and NCDHHS, has been effectively waived. Pursuant to N.C. Gen. Stat. § 153A-435, a county's purchase of insurance and/or participation in a risk management pool provides a waiver of governmental immunity to the extent of the coverage.

312.    Plaintiffs allege that the Defendants, including Guilford County and its agencies, have either purchased insurance policies or participated in the North Carolina Association of County Commissioners Risk Management Pool, or a similar entity, which explicitly provides coverage for the acts and omissions alleged against them in this Complaint.

313.    This participation and coverage manifest a clear intent and agreement by the governmental entities to accept liability for such actions, thereby relinquishing any

68

claim to governmental immunity for the damages caused by their employees' and agents' conduct and to allow immunity in the face of such coverage would undermine the legislative purpose of providing a means of redress for injuries inflicted by governmental misconduct.

## **TOLLING OF STATUTE OF LIMITATIONS**

314.  Plaintiffs adopt and incorporate by reference all allegations of this complaint as fully set forth herein.

315.  Plaintiffs assert that the applicable three-year statute of limitations for their civil rights claims brought pursuant to 42 U.S.C. § 1983, as well as their state law claims, must be tolled due to the extraordinary circumstances of this case, including the Defendants' continuous course of unconstitutional conduct, their deliberate concealment of critical information, and the delayed discovery of the full scope of the fraudulent conspiracy.

316.  This request for equitable tolling is firmly grounded in established legal principles, specifically the "continuing violation" doctrine and the "discovery rule."

*The Continuing Violation Doctrine*

317.  The "continuing violation" doctrine provides that where a defendant's unlawful conduct is ongoing, the statute of limitations does not begin to run until the last discriminatory or unconstitutional act occurs. This doctrine is particularly applicable in cases involving a series of related events that collectively constitute a

69

single, overarching pattern of misconduct. Here, the Defendants' actions form a continuous pattern of constitutional rights violations, inextricably linked by the deliberate and ongoing use of false evidence and fraudulent documents to perpetuate the unlawful separation of Angela Ryan and her children and deny them due process and other fundamental rights.

318.    The linchpin of the initial unlawful removal of the children was the fake text message, introduced by Defendant Megan Spidell on June 1, 2021. Despite irrefutable proof obtained through subpoenaed Verizon Wireless records on July 1, 2021, confirming this message was fake and non-existent, this false evidence was intentionally allowed to mislead the court and served as the sole basis for Judge Pemberton's temporary order removing the children from Angela Ryan's custody. The failure of Defendants Megan Spidell, Adam Arthur, and the GCDSS Defendants to disclose the falsity of this evidence to the court immediately on or after July 1, 2021, was a deliberate act of concealment and obstruction that directly caused the children's unlawful out-of-home placement and ongoing separation from their mother.

319.    The fraudulent nature of the evidence did not cease after July 1, 2021; it persisted and evolved. In October 2022, during the custody trial, Defendant Megan Spidell presented a new, altered version of the fake text message, further demonstrating the intentional and ongoing nature of the fraud. This altered version, along with the original fake message, was allowed into the court record and formed a basis for Judge Tabitha Holiday's decision to award custody to the

70

father and later reinstate attorney and GAL fees against Angela Ryan. The false

narrative stemming from this fake text message that Angela Ryan coached the

children to lie about abuse has permeated every subsequent stage of the state court

proceedings, including the appeal to the North Carolina Court of Appeals where

the fake text message was included in the case record and influenced the court's

opinion and ongoing contempt proceedings based on orders influenced by the

fraudulent custody outcome.

320.     Each instance where this fake text message was used, relied upon, or allowed

to influence court decisions, from June 1, 2021, through the present day,

constitutes a distinct, yet interconnected, act in furtherance of the original unlawful

purpose: denying Angela Ryan custody and perpetuating her separation from her

children based on false premises. The ongoing separation itself, a direct result of

court orders procured through fraud, represents a continuous violation of Plaintiffs'

constitutional rights to familial association and due process. The subsequent

unlawful orders, including the civil contempt order procured under false pretenses

and through judicial misconduct, are further manifestations of this continuing

pattern of violations stemming directly from the foundational fraud.

321.     Courts have recognized that "a series of separate acts, if they are related and

ongoing, may be treated as a single, continuing violation." See generally National

Advertising Co. v. City of Raleigh, 947 F.2d 1158, 1166 (4th Cir. 1991)(describing

continuing violations in other contexts but illustrating the principle of treating

related, ongoing acts as a single harm). The Defendants' repeated presentation and

71

use of knowingly false evidence and their failure to correct the record, coupled with the enduring harm of the unlawful separation and the retaliatory actions taken to maintain it, constitute a chain of events that should be viewed as a single, continuous violation of the Plaintiffs' rights. Under the continuing violation doctrine, the statute of limitations does not begin to run until the last unconstitutional act occurs. Since Defendants continue to benefit from and rely upon the outcomes derived from the initial and subsequent presentations of the fake text message and related fraudulent documents, and continue to pursue actions such as the contempt based on these outcomes, the violation is ongoing, and the statute of limitations has not yet begun to run on the full scope of the conspiracy.

*The Discovery Rule*

322.    Alternatively and in conjunction with the continuing violation, the "discovery rule" dictates that the statute of limitations begins to run only when the plaintiff knows or, by the exercise of reasonable diligence, should have known of the injury and its cause. See United States v. Kubrick, 444 U.S. 111, 120 (1979); see also relevant North Carolina common law principles aligning with this rule for state claims. In civil rights cases under § 1983, the cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. However, the discovery rule tolls the statute of limitations when the defendant has fraudulently concealed the underlying facts giving rise to the claim.

323.    While Angela Ryan discovered that the text message was fake in July 2021, proving that one piece of evidence was fraudulent did not immediately reveal the full extent and nature of the conspiracy against her and her children. She knew the text was fake and used against her, but she did not understand the complete, overarching scheme involving fabricated official records, unlawful funding collection, and the full extent of the Defendant state actors' deliberate actions and motivations beyond the initial false evidence.

324.    The critical turning point in discovering the true "cause" of the injuries and the full breadth of the fraudulent scheme occurred in August 2024. It was at this time, through an innocent disclosure by a new social worker, Defendant Jordan Reeves, that Angela Ryan gained knowledge of the existence of fictional GCDSS case records. These records falsely documented a non-existent abuse investigation into Angela Ryan with "services needed" findings and a fabricated letter confirming her successful completion of these fictional services. This discovery provided clarity to the previously opaque motivations and methods behind the Defendants' actions. It provided the understanding that the fraudulently executed in-home services agreement she received in March 2022, which she knew was improperly created and applied to her, was not an isolated incident but part of a larger pattern of fabricating official documents that included the investigation records, completion letters, and altered DSS forms used to create a false historical narrative and satisfy the required conditions for collecting state and federal funding related to the children's out-of-home placement.

325. Prior to August 2024, Angela Ryan understood she was a victim of false evidence and procedural irregularities, and suspected misconduct. However, she did not possess the crucial knowledge that official, fabricated GCDSS records about her non-existent investigation were created and being used to underpin the legitimacy of the children's removal and placement for financial gain. This information was deliberately concealed from her by the Defendants. Without knowledge of these fabricated records and their connection to the fraudulent funding scheme, Angela Ryan could not have fully grasped the depth of the conspiracy, the extent to which official processes and documents were being manipulated, and the true unlawful basis and motivation for the actions taken against her and her children.

326. The discovery of these fictional records in August 2024 was the moment Angela Ryan knew or had reason to know the full scope of the injury and its systemic, fraudulent cause. This was not merely confirmation of already suspected wrongdoing; it was the uncovering of a hidden layer of official fabrication that fundamentally altered her understanding of the entire case and the Defendants' motivations. Therefore, the statute of limitations for claims related to the conspiracy, fraudulent documentation, and resulting unlawful separation and funding scheme should be tolled at least until August 2024 under the discovery rule.

327.    The combination of the continuing violation doctrine and the discovery rule strongly supports the tolling of the statute of limitations in this case. The Defendants' conduct is not confined to discrete past events but constitutes an ongoing pattern of violating the Plaintiffs' rights, with the fake text message and its progeny serving as a continuous source of harm and the basis for adverse actions. Simultaneously, the Defendants actively concealed critical information about the fabricated official records and the underlying funding scheme until August 2024, preventing Angela Ryan from discovering the full extent of the fraud and the true cause of her injuries.

328.    North Carolina law recognizes that a defendant's fraudulent concealment of the facts giving rise to a claim tolls the statute of limitations. See relevant North Carolina General Statutes and case law on fraudulent concealment. The Defendants' intentional creation and concealment of fabricated case records and their persistent use of false evidence to mislead the court and the Plaintiffs constitute fraudulent concealment, preventing the timely discovery of the claim.

329.    Therefore, Plaintiffs contend that the three-year statute of limitations has been tolled from accruing until, at the earliest, July 1, 2021 (discovery of fake text message, though the full scope was not known) or, more appropriately, until August 2024 (discovery of fabricated official records and understanding of full conspiracy). Furthermore, the continuing violation doctrine dictates that the statute of limitations continues to be tolled due to the ongoing use of the fake evidence

75

and the perpetuation of orders and actions directly stemming from the fraudulent basis. Each action brought forth against Angela Ryan since July 1, 2021, based on the knowingly false conditions originating from the fake text message and the conspiracy it represents, constitutes a continuing violation of her constitutional rights, preventing the statute from running. Equity demands that the Defendants, who engaged in a calculated scheme involving fraud, concealment, and ongoing misconduct, not be allowed to benefit from the passage of time that resulted from their own wrongful actions.

## COUNT ONE: NEGLIGENCE

330.  Against Defendants Guilford County Department of Social Services, Wendy Sivori, Syrita Miller, Yolanda McDowell, Jordan Reeves, Stacy Greene, Cheyenne Paylor, Rachel Cooley, and Sharon Barlow.

331.  Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

332.  At all relevant times, Defendants Guilford County Department of Social Services (GCDSS), Wendy Sivori, Syrita Miller, Yolanda McDowell, Jordan Reeves, Stacy Greene, Cheyenne Paylor, Rachel Cooley, and Sharon Barlow owed Plaintiffs a duty of reasonable care in the performance of their duties related to child protective services, investigations, child placements, and legal processes concerning child custody and welfare. This duty arises from their roles as public employees and an agency tasked with protecting children and acting in the best

76

interests of families, as mandated by North Carolina General Statutes, including but not limited to N.C. Gen. Stat. § 7B-300 et seq., and their professional obligations as health and community workers and attorneys.

333.    Specifically, the individual Defendants, acting within the scope of their employment and under color of state law, had duties including, but not limited to:

• Defendant Sharon Barlow, as Director, had a duty to oversee and implement policies ensuring proper investigations, adherence to legal procedures, and ethical conduct by all GCDSS staff. See N.C. Gen. Stat. § 7B-100.

• Defendant Wendy Sivori, as agency attorney, had a duty to provide accurate legal advice to GCDSS staff, ensure legal compliance in all actions taken by the agency, and uphold her ethical obligations as an attorney and officer of the court.

• Defendants Stacy Greene, Cheyenne Paylor, and Rachel Cooley, as Supervisors, had a duty to adequately supervise social workers to ensure investigations were conducted properly, legal procedures were followed, documentation was accurate and lawful, and communication with parents and the court was truthful.

• Defendants Syrita Miller, Yolanda McDowell, and Jordan Reeves, as social workers, had a duty to conduct thorough and unbiased investigations, accurately document findings, communicate truthfully with parents and supervisors, follow all agency policies and state laws regarding child removal and placement, and work towards safe reunification when appropriate.

334.    These Defendants breached their duties of reasonable care through the following negligent acts and omissions, among others:

- Failing to properly investigate abuse allegations, including ignoring consistent reports from children or therapists.

- Executing in-home services agreements (DSS5239 forms) unlawfully, without the participation or signatures of the Plaintiffs, and using altered versions of state/federal forms.

- Presenting or allowing to be presented misleading information to the court regarding investigations, required services, or the basis for child removal.

- Failing to correct false information or disclose exculpatory evidence (such as the proof that the text message was fake) to the court or the Plaintiffs.

- Imposing conditions and requiring services upon Plaintiff Angela Ryan that were not legally required of her and for which there was no investigative basis against her.

- Placing and retaining children in out-of-home care without a proper legal basis (such as a finding of abuse, neglect, or dependency in a proceeding) and based on fraudulent documentation and misleading court presentations.

- Failing to provide required oversight and services to children in out-of-home placement, such as mandated visits, as alleged regarding the placement at Masonic Children's Home.

- Defendant Barlow negligently failed to implement adequate policies, training, and oversight to prevent the widespread misconduct and fraudulent practices occurring within GCDSS.

78

- Defendant Sivori negligently advised GCDSS staff on improper procedures, including the unlawful execution of in-home services agreements and the handling of evidence in court.

- Defendants Greene, Paylor, and Cooley negligently supervised social workers, failing to catch or prevent the creation of fraudulent documents, the use of misleading information, and the failure to follow proper investigative and placement protocols.

- Defendants Miller, McDowell, and Reeves negligently performed their social work duties, including providing Angela Ryan with a fraudulently executed in-home services agreement and failing to conduct proper investigations or ensure children's safety.

335.  It was foreseeable that these negligent acts and omissions would result in severe harm to the Plaintiffs, including the unlawful separation of family, loss of custody, emotional distress, and exposure of the children to unsafe or abusive conditions.

336.  As a direct and proximate result of the negligence of Defendants Guilford County Department of Social Services, Wendy Sivori, Syrita Miller, Yolanda McDowell, Jordan Reeves, Stacy Greene, Cheyenne Paylor, Rachel Cooley, and Sharon Barlow, Plaintiffs have suffered severe damages, including but not limited to loss of familial association, emotional distress, psychological trauma, disruption of family life, unlawful detention and placement of minor children, and financial loss.

79

337.   As a proximate result of the defendants' conduct, plaintiffs have suffered

damages and are seeking relief thereafter.

## COUNT TWO: GROSS NEGLIGENCE

338.   Against Defendants Guilford County Department of Social Services, Wendy

Sivori, Syrita Miller, Yolanda McDowell, Jordan Reeves, Stacy Greene, Cheyenne

Paylor, Rachel Cooley, and Sharon Barlow.

339.   Plaintiffs adopt and incorporate by reference all allegations of this Complaint

as if fully set out herein.

340.   The actions and inactions of Defendants Guilford County Department of Social

Services, Wendy Sivori, Syrita Miller, Yolanda McDowell, Jordan Reeves, Stacy

Greene, Cheyenne Paylor, Rachel Cooley, and Sharon Barlow, as described in this

Complaint, constitute gross negligence. Their conduct was not merely careless but

demonstrated a wanton or reckless disregard for the rights and safety of the

Plaintiffs.

341.   Gross negligence in North Carolina is defined as "wanton conduct done with

conscious or reckless disregard for the rights and safety of others." Toomer v.

Garrett, 155 N.C. App. 462, 482, 574 S.E.2d 76, 92 (2002) (quoting Bullins v.

Schmidt, 322 N.C. 580, 583, 369 S.E.2d 601, 603 (1988)). Wanton conduct is

characterized by a failure to exercise due care that is so heedless as to amount to a

reckless disregard for the rights and safety of others. Yancey v. Lea, 354 N.C. 48, 53, 550 S.E.2d 155, 158 (2001).

342.  The Defendants' actions demonstrating gross negligence include, but not limited to:

- Knowingly using or allowing the use of unlawfully executed and altered in-home services agreements as a basis for retaining custody or imposing requirements.

- Failing to disclose, or actively concealing, the truth about the fake text message after possessing proof of its falsity, and allowing it to continue influencing court decisions regarding child removal and custody.

- Fabricating or permitting the fabrication of official GCDSS case records regarding Angela Ryan's non-existent investigation and services.

- Deliberately failing to conduct a proper investigation into reported child abuse, particularly in August 2024, despite knowledge of the father's history and the children's distress, including suicide attempts.

- Returning a child (A.R.) to a demonstrably abusive environment despite knowledge of ongoing harm and the child's recent suicide attempts, potentially influenced by coercion.

- Defendant Barlow's and supervisory Defendants Greene, Paylor, and Cooley's deliberate indifference in failing to address or rectify the pattern of fraudulent documentation, misleading court practices, and inadequate child protection within GCDSS, despite opportunities and duties to do so.

81

- Defendant Sivori's involvement in advising on or facilitating these unlawful practices and failure to uphold her duties as an attorney to ensure the integrity of the process.

- Defendants Miller, McDowell, and Reeves' alleged direct participation in the creation or use of fraudulent documents and failure to prioritize the children's safety and legal rights over illicit funding schemes or departmental directives.

343.  These actions exhibit a conscious and reckless disregard for the fundamental constitutional rights of the Plaintiffs, including their right to familial association and their right to be free from state interference based on fraud, and for the physical and emotional safety of the minor children.

344.  As a direct and proximate result of the gross negligence of Defendants Guilford County Department of Social Services, Wendy Sivori, Syrita Miller, Yolanda McDowell, Jordan Reeves, Stacy Greene, Cheyenne Paylor, Rachel Cooley, and Sharon Barlow, Plaintiffs have suffered severe and foreseeable damages, including prolonged unlawful separation, exacerbated emotional and psychological trauma, loss of custody based on false premises, and continued exposure of A.R. to an abusive environment.

345.  As a proximate result of the defendants' conduct, plaintiffs have suffered damages and are seeking relief thereafter.

## COUNT THREE: NEGLIGENT MISREPRESENTATION

346.   Against Defendants Guilford County Department of Social Services, Wendy Sivori, Syrita Miller, Yolanda McDowell, Jordan Reeves, Stacy Greene, Cheyenne Paylor, Rachel Cooley, Sharon Barlow, Megan Spidell, Adam Arthur, Anne Littlejohn, and Lee Corum.

347.   Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

348.   Defendants made numerous false and misleading statements of material fact and law to Plaintiffs or the court, upon which Plaintiffs foreseeably and reasonably relied to their detriment.

349.   These negligent misrepresentations include, but are not limited to:

•   Statements by GCDSS social workers (Defendants Miller, McDowell, Reeves) and supervisors (Defendants Greene, Paylor, Cooley) that the in-home services agreement (DSS5239) was a valid and necessary document for Angela Ryan to sign or comply with to regain custody, implying it was legally binding upon her despite her never being investigated or signing it, and despite it being an altered/fraudulent form.

•   Statements by GCDSS staff and attorney (Defendant Sivori) implying that Angela Ryan was required to complete services outlined in the fraudulent DSS5239, misleading her about her obligations.

•   Statements by Defendant Megan Spidell presenting the fake text message as authentic and truthful evidence to the court and Plaintiffs, implying it was a

83

genuine communication and valid basis for the court's actions, without verifying its authenticity or disclosing its falsity upon discovery.

- Statements by Defendant Adam Arthur misleading Angela Ryan into believing she was required to complete certain services to regain custody and delaying the presentation of critical exculpatory evidence (Verizon records) based on false representations about trial procedure or strategy.

- Statements or recommendations by Defendant Anne Littlejohn based on the false premise of the fake text message or other misleading information provided by co-defendants, causing Angela Ryan to rely on recommendations detrimental to her custody rights.

- Statements by Defendant Lee Corum regarding the handling of Angela Ryan's appeals, financial assessments, or the need to produce transcripts, which were allegedly misleading or failed to accurately represent the legal situation and her rights.

- Statements by Defendant Jordan Reeves to Angela Ryan in August 2024 regarding A.R. allegedly undergoing a mental health assessment at a specific facility, which was false and intended to conceal A.R.'s location or true circumstances.

- The presentation of fictional GCDSS case records regarding Angela Ryan's non-existent investigation and services implies false representations of her compliance with legal requirements.

350.    These Defendants made these representations negligently, without exercising reasonable care or competence to determine their truth or legal accuracy, and with

the knowledge or foreseeable expectation that Plaintiffs would rely upon them in making decisions regarding their rights, legal strategy, and compliance with perceived requirements.

351.    Plaintiffs, specifically Angela Ryan, reasonably and foreseeably relied upon these misrepresentations due to the Defendants' positions of authority (GCDSS staff/supervisors/attorney), their roles as legal counsel or court-appointed individuals (attorneys Spidell, Arthur, Littlejohn, Coram), and the coercive circumstances surrounding the child custody proceedings. For example, Angela Ryan relied on Defendant McDowell's presentation of the DSS5239 and Defendant Arthur's advice regarding services and evidence presentation to her detriment. The court's reliance on the fake text message presented by Defendant Speidel likewise caused harm to Plaintiffs.

352.    As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiffs suffered damages, including but not limited to continued unlawful separation from children, loss of custody, legal fees incurred due to reliance on false advice, emotional distress, and financial loss (e.g., paying the $6500 under duress caused by misleading statements and threats)

353.    As a proximate result of the defendants' conduct, plaintiffs have suffered damages and are seeking relief thereafter.

## COUNT FOUR: NEGLIGENT HIRING AND RETENTION

354.    Against Defendants Guilford County, Guilford County Department of Social Services, and North Carolina Department of Health and Human Services.

355.    Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

356.    Defendants Guilford County, GCDSS, and NCDHHS, as employers of the individuals named in this Complaint (including but not limited to Barlow, Sivori, Greene, Paylor, Cooley, Miller, McDowell, and Reeves), owed a duty to exercise reasonable care in the hiring, retention, and assignment of their employees who would interact with the public and handle sensitive matters concerning the welfare and custody of minor children. This duty requires conducting adequate background checks, verifying qualifications, assessing fitness for duty, and ensuring employees are capable of performing their jobs in compliance with legal and ethical standards.

357.    Plaintiffs allege that these Defendants breached this duty by negligently hiring and/or retaining individuals who were unfit, improperly trained, or prone to engaging in the unlawful and harmful conduct described herein, specifically the pattern of creating fraudulent documents, misrepresenting facts, failing to follow legal procedures, and disregarding the constitutional rights and safety of children and families.

358.    While Plaintiffs do not possess specific personnel records, the widespread nature of the alleged misconduct—involving multiple social workers, supervisors,

86

the agency attorney, and the Director over an extended period and impacting not only Plaintiffs but also revealed in prior NCDHHS reviews—strongly suggests systemic failures in hiring and retention processes.

359. Defendant NCDHHS, in its oversight role, had a duty to ensure that county DSS agencies, including GCDSS, properly hired and retained qualified staff capable of adhering to state and federal laws and policies. NCDHHS's prior review of GCDSS case records in 2022, revealing non-compliance, should have triggered a duty to mandate corrective action specifically regarding personnel practices, hiring standards, and retention oversight if unfit employees were contributing to the failures.

360. Defendants Guilford County and GCDSS had a duty to ensure that individuals placed in positions of authority, such as Director Sharon Barlow and Attorney Wendy Sivori, possessed the requisite knowledge, training, and commitment to lawful and ethical practices required to oversee child welfare services. The alleged actions and policies under their leadership indicate a potential failure in ensuring competent and compliant leadership was hired and retained.

361. It was foreseeable that negligently hiring and retaining employees who would engage in fraudulent documentation, disregard due process, and fail to prioritize child safety would result in the type of severe harm suffered by Plaintiffs.

362. As a direct and proximate result of the negligent hiring and retention practices of Defendants Guilford County, Guilford County Department of Social Services, and North Carolina Department of Health and Human Services, Plaintiffs were

subjected to the unlawful and harmful conduct of their employees, resulting in severe damages, including loss of custody, emotional distress, and prolonged unlawful separation.

363. As a proximate result of the defendants' conduct, plaintiffs have suffered damages and are seeking relief thereafter.

## COUNT FIVE: GROSS NEGLIGENT HIRING AND RETENTION

364. Against Defendants Guilford County, Guilford County Department of Social Services, and North Carolina Department of Health and Human Services.

365. Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

366. The failures of Defendants Guilford County, GCDSS, and NCDHHS in hiring and retaining employees rose to the level of gross negligence. Their conduct in allowing individuals who engaged in such egregious misconduct, including creating fraudulent government documents, presenting false evidence to a court, obstructing justice, and failing to protect children from abuse, to remain employed and in positions of authority demonstrates a wanton or reckless disregard for the fundamental rights and safety of the individuals served by these agencies.

367. Despite prior warnings, internal red flags (such as employee questions about document legality, if any), external reports (Angela Ryan's complaints, Constitutions Office alerts), and a prior NCDHHS review highlighting systemic failures (the 2022 review), these Defendants allegedly failed to take adequate steps

to remove or retrain employees involved in harmful practices or to implement effective hiring and retention standards to prevent such misconduct. This failure, in the face of obvious risks of harm to vulnerable children and families, constitutes gross negligence.

368.    The continued employment and alleged promotion of individuals involved in the misconduct, such as Defendant Stacy Greene, further demonstrates a reckless disregard for the consequences of their actions and a systemic tolerance for behavior that violates constitutional rights and endangers children.

369.    As a direct and proximate result of the gross negligent hiring and retention practices of Defendants Guilford County, Guilford County Department of Social Services, and North Carolina Department of Health and Human Services, Plaintiffs suffered severe and foreseeable damages, including prolonged unlawful separation, severe emotional trauma (contributing to A.R.'s suicide attempts), loss of custody, and financial ruin.

370.    As a proximate result of the defendants' conduct, plaintiffs have suffered damages and are seeking relief thereafter.


## COUNT SIX: NEGLIGENT SUPERVISION

371.    Against Defendants Sharon Barlow, Stacy Greene, Cheyenne Paylor, Rachel Cooley, and Wendy Sivori.

372.    Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

373.    Defendants Sharon Barlow (Director), Stacy Greene (Supervisor), Cheyenne Paylor (Supervisor), Rachel Cooley (Supervisor), and Wendy Sivori (Agency Attorney) owed a duty to exercise reasonable care in supervising the employees and subordinates for whom they were responsible, including social workers (Defendants Miller, McDowell, Reeves) and potentially other staff and legal counsel involved in child welfare matters. This duty included ensuring that subordinates understood and adhered to all applicable laws, regulations, policies, and ethical standards, and intervening to prevent or correct misconduct. See N.C. Gen. Stat. § 7B-300 et seq. (outlining responsibilities of DSS).

374.    These Defendants breached their duty of negligent supervision through the following acts and omissions, among others:

- Defendant Barlow failed to adequately supervise all GCDSS operations and staff, allowing the pattern of fraudulent document creation, misuse of authority, and disregard for legal procedures to occur and persist under her directorship.

- Supervisory Defendants Greene, Paylor, and Cooley failed to adequately oversee the social workers on their teams (Defendants Miller, McDowell, Reeves, among others), failing to ensure that investigations were proper, communications with parents were truthful, documents were lawfully executed, and child placements were legally sound and safe.

- Defendant Greene allegedly supervised Defendant Miller during the investigation into the father and the events surrounding the initial court proceedings, failing to

90

ensure accurate testimony or disclosure of all relevant information to the court, including J.R.'s denial of the text message and the father's investigation findings.

- Defendant Paylor allegedly supervised Defendant McDowell and was aware of or failed to prevent Defendant McDowell providing Angela Ryan with the fraudulently executed in-home services agreement in March 2022.

- Defendant Cooley allegedly supervised Defendant Reeves during the August 2024 events, failing to ensure a proper investigation into A.R.'s abuse reports and suicide attempts was conducted and failing to prevent A.R. from being returned to the father's abusive home or being misled about her whereabouts or required assessments.

- Defendant Sivori, as agency attorney, had a supervisory role in advising GCDSS staff on legal matters. She negligently advised or failed to correct practices related to the unlawful DSS5239 forms and the handling of evidence in court, or failed to ensure that staff she advised followed legal and ethical requirements.

- These supervisory failures allowed subordinates to create and use fraudulent documents, present misleading information to the court, fail to investigate abuse, and disregard the Plaintiffs' constitutional rights.

375.  It was foreseeable that the failure to properly supervise staff in sensitive child welfare matters could lead to violations of legal procedures, fraudulent practices, and harm to the families involved.

376.  As a direct and proximate result of the negligent supervision by Defendants Sharon Barlow, Stacy Greene, Cheyenne Paylor, Rachel Cooley, and Wendy

91

Sivori, Plaintiffs suffered severe damages, including prolonged unlawful separation from their children, emotional distress, and subjection to unlawful court orders and procedure.

377. As a proximate result of the defendants' conduct, plaintiffs have suffered damages and are seeking relief thereafter.

## COUNT SEVEN: GROSS NEGLIGENT SUPERVISION

378. Against Defendants Sharon Barlow, Stacy Greene, Cheyenne Paylor, Rachel Cooley, and Wendy Sivori.

379. Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

380. The supervision failures of Defendants Sharon Barlow, Stacy Greene, Cheyenne Paylor, Rachel Cooley, and Wendy Sivori were grossly negligent and demonstrate a wanton or reckless disregard for the Plaintiffs' constitutional and statutory rights and the safety of the minor children.

381. These Defendants' failure to supervise was so egregious as to allow, facilitate, or ignore a pattern of serious misconduct, including the creation and use of fraudulent government documents to justify unlawful child removals and secure funding, the knowing presentation of false evidence to a court, the suppression of evidence proving fraud, and the failure to protect children from documented abuse leading to suicide attempts.

92

382. Defendant Barlow's failure, as Director and final policymaker, to ensure lawful and ethical practices within her agency, despite the severity and widespread nature of the misconduct and prior warnings (such as the NCDHHS review in 2022), constitutes deliberate indifference and gross negligent supervision.

383. Supervisory Defendants Greene, Paylor, and Cooley's failure to intervene and correct the unlawful practices of social workers under their charge, particularly when those practices involved clear legal violations and put children at risk, demonstrates a reckless disregard for their duties and the welfare of the Plaintiffs.

384. Defendant Sivori's alleged failure to provide proper legal guidance or intervene to correct obvious legal misconduct occurring within GCDSS, which she was tasked with advising, rises to the level of gross negligent supervision of the legal aspects of the agency's operations.

385. As a direct and proximate result of the gross negligent supervision by Defendants Sharon Barlow, Stacy Greene, Cheyenne Paylor, Rachel Cooley, and Wendy Sivori, Plaintiffs suffered severe and devastating damages, including prolonged unlawful separation, loss of custody to an abusive parent, severe emotional trauma, and exposure to dangerous living conditions, all stemming from a systemic environment of misconduct that supervisors failed to curb.

386. As a proximate result of the defendants' conduct, plaintiffs have suffered damages and are seeking relief thereafter.

93

## COUNT EIGHT: ACTUAL FRAUD

387. Against Defendants Wendy Sivori, Sharon Barlow, Syrita Miller, Yolanda McDowell, Jordan Reeves, Stacy Green, Cheyenne Paylor, Rachel Cooley, Megan Spidell, Adam Arthur, Anne Littlejohn, and Lee Corum.

388. Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

389. Defendants engaged in a pattern of actual fraud designed to deceive Plaintiffs and the court, deprive Plaintiffs of their rights, and secure unlawful gains. The elements of actual fraud in North Carolina are: (1) a false representation or concealment of a material fact; (2) reasonably calculated to deceive; (3) made with intent to deceive; (4) which does in fact deceive; and (5) resulting in damage to the injured party. Myers & Chapman, Inc. v. Thomas G. Evans, Inc., 323 N.C. 559, 568, 374 S.E.2d 385, 391 (1988).

390. Specific instances of actual fraud by these Defendants include:

- Defendant Megan Spidell's presentation of the fake text message as genuine evidence in court on June 1, 2021, and again presenting an altered version in October 2022, knowing it was false and non-existent (confirmed by Verizon records on July 1, 2021). This false representation was made with the intent to deceive the court and Plaintiffs and succeeded in deceiving the court, resulting in the children's unlawful removal and loss of custody for Angela Ryan.

- Defendants Syrita Miller, Yolanda McDowell, Jordan Reeves, Stacy Greene, Cheyenne Paylor, Rachel Cooley, Sharon Barlow, and Wendy Sivori's involvement

94

in the creation and presentation of the unlawfully executed and altered in-home services agreement (DSS5239) to Angela Ryan, representing or implying it was a valid and required document, knowing it was fraudulent and not applicable to her. This was done with the intent to deceive Angela Ryan into believing she had obligations that justified the children's continued removal and placement, and to deceive funding agencies to receive payments.

- Defendants Jordan Reeves, Rachel Cooley, Cheyenne Paylor, Stacy Greene, Sharon Barlow, and Wendy Sivori's involvement in the creation and filing of fictional GCDSS case records concerning Angela Ryan, falsely documenting an investigation with "services needed" findings and a fabricated completion letter, knowing these records were false. These records were created with the intent to provide a false historical justification for the children's removal and placement and to deceive funding agencies. Discovered in August 2024, these records revealed the full scope of the intentional deception.

- Defendant Adam Arthur's alleged misrepresentations to Angela Ryan regarding her legal obligations, the necessity of completing services, and the timing/importance of presenting the Verizon records proving the text message was fake, knowing this information was contrary to her best interests and the truth, with the intent to mislead her regarding her legal strategy and rights.

- Defendant Anne Littlejohn's alleged misrepresentations in her recommendations to the court, potentially based on false information (like the fake text), or her alleged

improper disclosure of confidential information about Angela Ryan with the intent to harm her case.

- Defendant Lee Corum's alleged misrepresentations or concealments to Angela Ryan regarding her appeal rights, the status of her case, the destruction of records, and financial obligations, potentially made with the intent to impede her pursuit of justice or conceal misconduct.

391.   Plaintiffs, particularly Angela Ryan, were deceived by these fraudulent representations and acted or failed to act based on this deception, including complying with perceived requirements, failing to present evidence she was misled about, and losing custody of her children based on false narratives. The state court was also deceived by the defendants' presentation of false evidence and concealment of truth, leading to unjust orders.

392.   As a direct and proximate result of the actual fraud perpetrated by these Defendants, Plaintiffs suffered severe damages, including prolonged unlawful separation, loss of custody, emotional distress, financial loss (including coerced payment), and deprivation of their constitutional rights.

393.   As a proximate result of the defendants' conduct, plaintiffs have suffered damages and are seeking relief thereafter.

## COUNT NINE: CONSTRUCTIVE FRAUD

394. Against Defendants Wendy Sivori, Sharon Barlow, Syrita Miller, Yolanda McDowell, Jordan Reeves, Stacy Greene, Cheyenne Paylor, Rachel Cooley, Megan Speidel, Adam Arthur, Anne Littlejohn, and Lee Corum.

395. Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

396. Constructive fraud arises when a relationship of trust and confidence exists, and a party to whom the confidence is reposed takes advantage of that position to the hurt of the other party. Terry v. Terry, 302 N.C. 77, 85, 273 S.E.2d 674, 678-79 (1981). While intent to deceive is not a necessary element, there must be a betrayal of the confidence or the gaining of an unconscientious advantage. Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 349 (4th Cir. 1998) (applying North Carolina law).

397. A relationship of trust and confidence existed between Plaintiffs and various Defendants due to their respective roles:

- GCDSS employees (social workers, supervisors, Director Barlow, Attorney Sivori) held a position of authority and responsibility over child welfare matters affecting the Ryan family, creating a relationship where Angela Ryan was compelled to trust they would act lawfully and in the children's best interest. See N.C. Gen. Stat. § 7B-300 (duty of DSS).

- Attorneys (Defendants Megan Spidell - as father's attorney whose statements influenced the process, Adam Arthur - as Angela Ryan's attorney, Lee Corum - as Angela Ryan's court-appointed attorney, Anne Littlejohn - as Guardian ad Litem

97

attorney) held positions as officers of the court or fiduciaries (for client/child), creating relationships where Plaintiffs were entitled to rely on their representations and actions as truthful, ethical, and in their best legal interest.

398.    . These Defendants breached the trust and confidence placed in them by gaining an unconscientious advantage or betraying their duties, resulting in harm to Plaintiffs:

- GCDSS Defendants leveraged their authority to coerce compliance with unlawful documents (DSS5239) and processes, misleading Angela Ryan about legal requirements and benefiting from the children's placement.

- Defendant Megan Spidell used her position as father's attorney and officer of the court to present false evidence (fake text message), betraying the court's trust and gaining an unconscientious advantage for her client (custody based on fraud) to the detriment of Plaintiffs.

- Defendant Adam Arthur, acting as Angela Ryan's attorney, allegedly betrayed her trust by failing to zealously represent her, misleading her about required actions, and failing to present crucial evidence, gaining an unconscientious advantage for himself or others (e.g., allowing the case to continue for payment, protecting co-conspirators) to Angela Ryan's severe detriment.

- Defendant Anne Littlejohn, as GAL attorney with a duty to the children's best interests, allegedly betrayed that trust by making recommendations potentially influenced by false information or improper biases, and by improperly disclosing

98

confidential information about the mother, gaining an unconscientious advantage for other parties to the children's and mother's detriment.

- Defendant Lee Corum, as Angela Ryan's court-appointed attorney, allegedly betrayed her trust and his duty by failing to file appeals, misleading her, and allowing destruction of records, gaining an unconscientious advantage for himself (e.g., advancement to public defender) or others by hindering Angela Ryan's case.

399.    As a direct and proximate result of the constructive fraud by these Defendants, Plaintiffs suffered severe damages, including prolonged unlawful separation, loss of custody, emotional distress, legal and financial harm, and the perpetuation of an unjust situation.

400.    As a proximate result of the defendants' conduct, plaintiffs have suffered damages and are seeking relief thereafter.


## COUNT TEN: FRAUD ON THE COURT

401.    Against Defendants Megan Speidel, Adam Arthur, Anne Littlejohn, Lee Corum.

402.    Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

403.    Fraud on the court occurs when a party or attorney corrupts the judicial process by engaging in deliberate deception that undermines the integrity of the court itself. This is distinct from intrinsic fraud between parties and is considered "an assault on the judiciary as a whole." Great Coastal Express, Inc. v. Int'l Bhd. of

Teamsters, Chauffeurs, Warehousemen & Helpers of America, 672 F.2d 1142, 1144 (4th Cir. 1982). It typically involves a deliberate scheme to subvert the judicial process.

404.    Defendants engaged in fraud on the court through the following actions:

- Defendant Megan Spidell's knowing presentation of the fake text message as authentic evidence to Judge Pemberton in June 2021 and Judge Holiday in October 2022 (including the altered version), despite possessing proof of its falsity since July 1, 2021. This was a deliberate deception designed to mislead the court regarding the central factual dispute (whether the mother was coaching) and influence the custody determination.

- Defendant Megan Spidell's alleged facilitation or allowance of the destruction of court exhibits after notice, hindering Angela Ryan's appeal and obstructing justice.

- Defendant Adam Arthur's failure to disclose the evidence proving the text message was fake to the court, despite possessing it since July 1, 2021, thereby allowing the court to remain under a false impression created by Defendant Spidells fraudulent evidence.

- Defendant Anne Littlejohn's alleged presentation of biased recommendations or information to the court based on false or improperly obtained information, influencing the court's perception and decisions.

- Defendant Lee Corum's alleged failure to file a Notice of Appeal and allowing the destruction of court records, interfering with Angela Ryan's ability to seek judicial review and correct the errors stemming from the fraudulent trial.

- Judges Carolyn Pemberton, Tabitha Holiday, and Kelvin Smith's alleged actions, including but not limited to, relying on the fake text message despite evidence questioning its authenticity (Pemberton), denying Angela Ryan the ability to enter the Verizon records proving the fraud (Holiday), entering findings contradicted by evidence in the record (Holiday), denying a financial assessment before issuing a civil contempt order based on inability to pay fees (Smith), and allowing a motion to dismiss based on failure to produce transcripts that were denied (Smith). These actions, whether through intentional misconduct or a willful disregard for truth and procedure in the face of clear indicators of fraud and violations, further corrupted the judicial process. Judicial officers have a duty to ensure the integrity of the court; tolerating or facilitating fraud constitutes a breach of that duty.

405.   The Defendants' actions constitute a deliberate scheme to subvert the judicial process, manipulate the court's decisions, and prevent a fair adjudication of thePlaintiffs' rights.

406.   As a direct and proximate result of this fraud on the court, Plaintiffs were subjected to unjust court orders, lost custody of their children based on false premises, were denied their fundamental rights to due process and a fair hearing, and suffered severe damages.

407.   As a proximate result of the defendants' conduct, plaintiffs have suffered damages and are seeking relief thereafter.

## COUNT ELEVEN: CONSPIRACY

408. Against Defendants North Carolina Department of Health and Human Services, Guilford County, Guilford County Department of Social Services, Wendy Sivori, Sharon Barlow, Stacy Greene, Cheyenne Paylor, Rachel Cooley, Syrita Miller, Yolanda McDowell, Jordan Reeves, Anne Littlejohn, Megan Spidell, Adam Arthur, and Lee Coram.

409. Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

410. Defendants combined, confederated, and agreed with each other to act in concert to achieve unlawful objectives and/or to achieve lawful objectives by unlawful means. The unlawful objectives of the conspiracy included, but were not limited to:

- Depriving Plaintiffs of their constitutional rights under the Fourth and Fourteenth Amendments and the North Carolina Constitution.

- Unlawfully removing and retaining custody of minor children A.R. and J.R. from their mother, Angela Ryan.

- Securing state and federal funding through fraudulent means, including the creation and use of fabricated documents and case records.

- Obstructing justice and concealing misconduct and fraud from the courts and relevant oversight bodies.

- Retaliating against Angela Ryan for attempting to expose the misconduct and seek justice.

411.   The agreement and concert of action can be inferred from the Defendants' coordinated conduct and the outcomes achieved, which benefited the Defendants (e.g., financial gain for agencies and potentially attorneys, protection from accountability).

412.   Specific examples of Defendants' coordinated conduct in furtherance of the conspiracy include:

- The creation and use of unlawfully executed and altered in-home services agreements by GCDSS defendants (social workers, supervisors, Sivori, Barlow) to justify the children's placement and funding eligibility, mirroring practices applicable only to the father.

- Defendant Megan Spidell's introduction of the fake text message, which created the necessary doubt for Judge Pemberton to order removal, followed by GCDSS's (Miller, Greene) failure to fully disclose investigation findings that contradicted the text message narrative, and attorney Adam Arthur's failure to introduce proof the text was fake.

- The state court's (Judges Pemberton, Holiday, Smith) acceptance and reliance on the fake text message and related false narratives, while denying Angela Ryan the opportunity to present exculpatory evidence (Verizon records) and enter findings contradicted by the record, thereby facilitating the conspiracy's objectives (unlawful custody outcome, continued separation, justification for funding).

103

- Defendant Anne Littlejohn's alleged role as GAL attorney in making recommendations influenced by the false narrative and potentially assisting in sabotaging Angela Ryan's legal representation.

- The fabrication of official GCDSS case records regarding Angela Ryan (by GCDSS defendants including Reeves, Cooley, Paylor, Barlow, Sivori), discovered in August 2024, explicitly designed to create a false history justifying the children's removal and meeting funding requirements, correlating directly with the fraudulent DSS5239.

- The failure of NCDHHS to intervene despite notice of concerns and prior findings of non-compliance at GCDSS, suggesting a deliberate decision not to disrupt the status quo or expose the deeper issues, thereby enabling the conspiracy.

- Defendant Lee Corum's alleged failures as court-appointed attorney, including failure to file appeals and allowing record destruction, which benefited the state actors and other defendants by hindering Angela Ryan's ability to challenge the fraudulent outcomes.

413. Each Defendant played a specific role in furthering the objectives of this conspiracy, acting in concert to deprive Plaintiffs of their rights for improper motives, including financial gain and avoiding accountability.

414. As a direct and proximate result of the conspiracy, Plaintiffs suffered severe damages, including prolonged unlawful separation, loss of custody, emotional and physical harm, financial distress, and the continued endangerment of their children

415.    As a proximate result of the defendants' conduct, plaintiffs have suffered

damages and are seeking relief thereafter.

## COUNT TWELVE: DEPRIVATION OF RIGHTS UNDER 42 U.S.C. § 1983

## (FOURTH AMENDMENT)

416.    Against Defendants Guilford County, Guilford County Department of Social

Services, Wendy Sivori, Sharon Barlow, Stacy Greene, Cheyenne Paylor, Rachel

Cooley, Syrita Miller, Yolanda McDowell, and Jordan Reeves.

417.    Plaintiffs adopt and incorporate by reference all allegations of this Complaint

as if fully set out herein.

418.    The Fourth Amendment to the United States Constitution protects individuals

against unreasonable searches and seizures. The unlawful removal of a child from

the custody of their parent by state actors constitutes a seizure for purposes of the

Fourth Amendment. See, e.g., Wildauer v. Frederick Cnty., 993 F.2d 369, 372 (4th

Cir. 1993). A warrantless removal of a child is presumptively unreasonable unless

there are exigent circumstances or it occurs pursuant to valid legal process based

on probable cause.

419.    Defendants, acting under color of state law as employees and agents of

Guilford County and GCDSS, unlawfully seized minor children A.R. and J.R.

105

from the custody of their mother, Angela Ryan, beginning on or about July 2, 2021.

420.     This seizure was unlawful because it was not based on probable cause to believe the children were in imminent danger of abuse or neglect at Angela Ryan's home, nor was it conducted pursuant to a valid court order based on a finding of abuse, neglect, or dependency as required by North Carolina law (N.C. Gen. Stat. § 7B-100 et seq.). The children were removed based on Judge Pemberton's stated "inability to determine" who was abusing or coaching, a doubt manufactured by the fake text message. There was no investigation finding against Angela Ryan, and the action arose in a Chapter 5 custody modification case, not a Chapter 7B A/N/D proceeding.

421.     Defendants Syrita Miller, Stacy Greene, Sharon Barlow, and Wendy Sivori were involved in the initial investigation and court proceedings that led to the unlawful removal order by presenting information or failing to correct misinformation that influenced Judge Pemberton's decision.

422.     Defendants Yolanda McDowell, Cheyenne Paylor, Jordan Reeves, Rachel Cooley, Sharon Barlow, and Wendy Sivori were involved in the continued unlawful seizure and detention of the children by maintaining them in out-of-home placement, relying on fraudulent documents (DSS5239, fictional case records) created to justify the placement retroactively or for funding purposes, and failing to return the children upon discovery that the basis for their removal (the fake text message) was false.

106

423. Defendant Guilford County and GCDSS are liable under Monell for the policies, customs, or widespread practices that permitted their employees to engage in such unlawful seizures, including the reliance on fraudulent documents and disregard for due process requirements in child removal and placement decisions.

424. As a direct and proximate result of the Defendants' unlawful seizure of A.R. and J.R., Plaintiffs suffered severe damages, including prolonged separation from their children, emotional distress, and deprivation of their fundamental right to familial association.

425. As a proximate result of the defendants' conduct, plaintiffs have suffered damages and are seeking relief thereafter.


## COUNT THIRTEEN: DEPRIVATION OF RIGHTS UNDER 42 U.S.C. § 1983 (FOURTEENTH AMENDMENT - DUE PROCESS)

426. Against Defendants Guilford County, Guilford County Department of Social Services, Wendy Sivori, Sharon Barlow, Stacy Greene, Cheyenne Paylor, Rachel Cooley, Syrita Miller, Yolanda McDowell, Jordan Reeves, Anne Littlejohn, Megan Spidell, Adam Arthur, Lee Coram).

427. Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

428. The Fourteenth Amendment to the United States Constitution provides that no State shall deprive any person of life, liberty, or property, without due process of

law. The Supreme Court has recognized a fundamental liberty interest in the care, custody, and control of one's children, protected by the Due Process Clause. Troxel v. Granville, 530 U.S. 57, 65-66 (2000). This right includes the right to familial association.

429.   Defendants, acting under color of state law, deprived Angela Ryan and her children, A.R. and J.R., of their fundamental liberty interest in familial association and parental rights without due process of law (both procedural and substantive).

430.   Procedural Due Process Violations: Defendants deprived Plaintiffs of fair procedures and process, including:

- The unlawful removal of children without a valid predicate finding of abuse, neglect, or dependency in a proper legal proceeding, but rather based on a court's uncertainty influenced by fraudulent evidence in a custody modification case.

- Denying Angela Ryan a meaningful opportunity to be heard before the children were removed or during subsequent proceedings, specifically by denying her the ability to present critical evidence (Verizon records) proving the basis for removal was fraudulent.

- Misleading Angela Ryan about her legal obligations and the necessity of complying with unlawful documents (DSS5239) and services.

- The actions of court appointed attorneys (Coram) allegedly failing to provide effective representation, misleading Angela Ryan, or acting in concert with state actors against her interests, effectively denying her right to counsel in a process that determined fundamental rights.

108

- Judicial actions (Judges Pemberton, Holiday, Smith) that were arbitrary and fundamentally unfair, including relying on false evidence, denying exculpatory evidence, entering orders contradicted by the record, and issuing unlawful contempt orders without due process safeguards (e.g., financial assessment).

- The destruction of court records necessary for appeal, denying a meaningful post-deprivation remedy.

- Substantive Due Process Violations: Defendants' actions were so arbitrary, egregious, and shocking to the conscience as to violate the substantive component of the Due Process Clause. Actions that "shock the conscience" include conduct that is intentional or reckless and causes severe harm. See, e.g., County of Sacramento v. Lewis, 523 U.S. 833 (1998).

- The deliberate use of fraudulent documents (DSS5239, fictional case records) and false evidence (fake text message) by GCDSS defendants (social workers, supervisors, Barlow, Sivori) and attorney defendants (Spidell, Arthur, Littlejohn, Coram) to justify the unlawful removal and retention of children for financial gain constitutes conduct that shocks the conscience.

- The failure to protect children from known abuse while in the father's custody, particularly following A.R.'s suicide attempts, by GCDSS defendants (Reeves, Cooley, Paylor, Barlow, Sivori), NCDHHS, and potentially judges (Pemberton, Holiday, Smith) by ordering or allowing placement with the abuser, demonstrates a shocking disregard for the children's safety and well-being.

109

- The pattern of retaliation, including alleged harassment and false reports by Gibsonville Police (Parish, Dixon, Staten, others), aimed at silencing Angela Ryan and obstructing her pursuit of justice, is conduct that shocks the conscience.

- The entry of unlawful civil contempt orders and forced payment under duress, followed by continued threats of incarceration without proper financial assessment (Judge Smith, attorney Coram), constitutes arbitrary and shocking state action.

431. Defendant Guilford County and GCDSS are liable under Monell for the policies, customs, or widespread practices that caused these due process violations. Defendant NCDHHS is liable under Monell for its failure to oversee and regulate GCDSS effectively, allowing these violations to occur.

432. As a direct and proximate result of the Defendants' deprivation of Plaintiffs' Fourteenth Amendment rights, Plaintiffs suffered severe damages, including prolonged unlawful separation, loss of custody, emotional and physical trauma, and financial loss.

433. As a proximate result of the defendants' conduct, plaintiffs have suffered damages and are seeking relief thereafter.

## COUNT FOURTEEN: MONELL CLAIM (42 U.S.C. § 1983)

434. Against Defendants Guilford County, Guilford County Department of Social Services, and North Carolina Department of Health and Human Services.

435. Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

436.  Defendants Guilford County, GCDSS, and NCDHHS are governmental entities that cannot be held liable under 42 U.S.C. § 1983 solely on a theory of *respondeat superior* (i.e., based simply on the fact that their employees committed torts or violated rights). Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). However, these entities are liable when their official policy, custom, or widespread practice is the moving force behind the constitutional violation, or when a final policymaker's deliberate indifference results in the violation.

437.  Plaintiffs allege that the deprivation of their Fourth and Fourteenth Amendment rights was caused by the official policies, customs, or widespread practices of Defendants Guilford County, GCDSS, and NCDHHS, and/or by the actions of final policymakers within these entities who acted with deliberate indifference to the Plaintiffs' rights.

438.  Official Policies/Customs/Practices:

- GCDSS, as an agency of Guilford County operating under NCDHHS regulations, engaged in a widespread practice or custom of creating and using fraudulent in-home services agreements (DSS5239) and fabricating case records (investigation findings, completion letters) to justify unlawful child removals and secure government funding, regardless of the actual circumstances or legal requirements, particularly the lack of a proper A/N/D finding. This practice was known to or tacitly approved by supervisors (Green, Paylor, Cooley), the agency attorney (Sivori), and the Director (Barlow).

- GCDSS and Guilford County had a custom or practice of disregarding fundamental due process rights in child welfare matters, including failing to ensure legal bases for removal, misleading parents, and failing to correct the record when fraud was discovered.

- NCDHHS had a custom or practice of inadequate oversight and enforcement regarding county DSS compliance with state and federal laws, particularly regarding child removals, documentation, and investigations, as evidenced by the findings of the 2022 review and their failure to act on subsequent reports concerning the Ryan case. This failure to act despite notice constitutes deliberate indifference to systemic problems causing constitutional violations.

439. Final Policymakers: Defendant Sharon Barlow, as Director of GCDSS, is a final policymaker for child welfare services in Guilford County. Her alleged actions and omissions in overseeing the agency, approving or tolerating the fraudulent practices, and failing to ensure legal compliance constitute policy decisions by a final policymaker that caused the constitutional violations. See N.C. Gen. Stat. § 7B-100. Defendant Wendy Sivori, as the agency attorney advising GCDSS on legal matters, may also be considered a final policymaker regarding the legal procedures and documentation practices of the agency. Her alleged guidance or approval of unlawful practices contributed to the constitutional violations.

440. Deliberate Indifference: Defendants Guilford County, GCDSS, and NCDHHS exhibited deliberate indifference to the Plaintiffs' constitutional rights by failing to

112

act to prevent or correct widespread fraudulent practices, disregard for due process, and failure to protect children from abuse, despite notice of the problems through internal channels, external reports, and prior reviews. The predictable consequence of such failures was the violation of rights and harm to individuals like the Plaintiffs.

441.    As a direct and proximate result of the policies, customs, practices, and deliberate indifference of Defendants Guilford County, Guilford County Department of Social Services, and North Carolina Department of Health and Human Services, Plaintiffs suffered severe damages due to the deprivation of their constitutional rights.

442.    As a proximate result of the defendants' conduct, plaintiffs have suffered damages and are seeking relief thereafter.


## COUNT FIFTEEN: RICO AND RACKETEERING CLAIM

443.    Against all defendants involved in the alleged conspiracy and fraudulent activities (North Carolina Department of Health and Human Services, Guilford County, Guilford County Department of Social Services, Wendy Sivori, Sharon Barlow, Stacy Greene, Cheyenne Paylor, Rachel Cooley, Syrita Miller, Yolanda McDowell, Jordan Reeves, Anne Littlejohn, Megan Spidell, Adam Arthur, Lee Corum).

444.    Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

445. This claim is brought pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968. Plaintiffs allege that Defendants constitute an "enterprise" as defined by 18 U.S.C. § 1961(4) and engaged in a "pattern of racketeering activity" as defined by 18 U.S.C. § 1961(5), causing injury to Plaintiffs' business or property.

446. The Enterprise: The Defendants, including state agencies (GCDSS, NCDHHS), local government (Guilford County), individual state actors (Barlow, Sivori, supervisors, social workers, judges, police), and private actors conspiring with state actors (attorneys Spidell, Arthur, Littlejohn, Corum), constituted an "association-in-fact" enterprise. This enterprise was an ongoing organization, the members of which functioned as a continuing unit, formally or informally associated together for the common purpose of unlawfully removing and retaining custody of children, fabricating official documents and evidence, obstructing justice, and collecting state and federal funding through fraudulent means, separate and apart from the legitimate functions of their respective governmental entities or professional roles.

447. Racketeering Activity: Defendants engaged in a pattern of racketeering activity, including multiple predicate acts indictable under federal law, specifically:

- Mail Fraud (18 U.S.C. § 1341) and Wire Fraud (18 U.S.C. § 1343): The scheme to defraud included using the U.S. mail and/or interstate wires to transmit fraudulent documents (unlawfully executed DSS5239, fictional case records, misleading

114

court filings/communications) or communications (emails, faxes, phone calls) to state or federal funding agencies or intermediaries, or to the court or parties, for the purpose of obtaining or retaining state and federal funding for the out-of-home placement of the children under false pretenses, or perpetuating the fraud within the court system. For example, filing false reports to funding agencies, submitting invoices for services based on fraudulent case records, and communications related to presenting or concealing the fake text message. The 2018 rule change allowing attorneys to receive funding from counties in child welfare cases potentially provided a financial incentive structure facilitating this fraudulent scheme.

- Obstruction of Justice (18 U.S.C. § 1503, § 1512, § 1519): Defendants engaged in multiple acts to obstruct, influence, or impede the due administration of justice in the state court proceedings and potential investigations, including presenting false evidence (fake text message, altered text message), concealing evidence (Verizon records), destroying court records, filing false reports, and intimidating a witness/party (Angela Ryan).

448. Pattern of Racketeering Activity: Defendants committed multiple predicate acts (two or more required by 18 U.S.C. § 1961(5)) over a period of time. The predicate acts were related to each other (all in furtherance of the scheme to unlawfully remove children, defraud for funding, and obstruct justice) and demonstrated a threat of continuity (part of an ongoing course of conduct or capable of repetition). The repeated use of fraudulent documents, the sustained use

115

of false evidence in multiple court appearances over years, the continued failure to investigate abuse, and ongoing retaliatory actions demonstrate a clear pattern of related predicate acts carried out by the enterprise.

449. Injury to Business or Property: As a proximate result of Defendants' pattern of racketeering activity, Plaintiffs suffered injury to their property and potentially business interests. This includes financial losses such as legal fees incurred due to fraudulent proceedings and misleading advice, costs incurred independently (forensic analysis, record printing), coerced payments (the $6500), loss of income due to emotional distress and job loss stemming from the racketeering activity and retaliation, and potential loss of future income and opportunities.

450. As a direct and proximate result of the defendants' violation of RICO, plaintiffs have suffered damages to their business or property and are seeking relief thereafter, including treble damages and costs, including attorney fees, as provided by 18 U.S.C. § 1964(c).

451. As a proximate result of the defendants' conduct, plaintiffs have suffered damages and are seeking relief thereafter.

## COUNT SIXTEEN: CIVIL OBSTRUCTION OF JUSTICE

452. Against Defendants Megan Spidell, Adam Arthur, Anne Littlejohn, Lee Coram, Wendy Sivori, Syrita Miller, Yolanda McDowell, Jordan Reeves, Stacy Greene, Cheyenne Paylor, Rachel Cooley, Sharon Barlow)

453.  Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

454.  Defendants intentionally and corruptly influenced, obstructed, or impeded, or endeavored to influence, obstruct, or impede, the due administration of justice in the state court proceedings and related matters concerning Plaintiffs.

455.  Specific acts of civil obstruction of justice include:

- Presenting knowingly false evidence (the fake text message and its altered version) to the court by Defendant Megan Spidell, and allowing or failing to correct this by Defendants Adam Arthur, Anne Littlejohn, Lee Corum, Wendy Sivori, Syrita Miller, Yolanda McDowell, Jordan Reeves, Stacy Greene, Cheyenne Paylor, Rachel Cooley, and Sharon Barlow.

- Withholding material exculpatory evidence (the Verizon records proving the text message was fake) from the court and Plaintiffs by Defendants Megan Spidell and Adam Arthur.

- Allowing or facilitating the destruction of court records and exhibits necessary for Angela Ryan's appeal by Defendants Megan Spidell and potentially court officials acting in concert with her, and Defendant Lee Corum by failing to secure them.

- Providing false information to Plaintiffs or the court regarding legal requirements, investigations, or child placements by GCDSS Defendants (Sivori, Barlow, Greene, Paylor, Cooley, Miller, McDowell, Reeves) and attorney Defendants (Spidell, Arthur, Littlejohn, Corum).

- Filing false reports against Angela Ryan (e.g., insurance fraud) by Gibsonville Police Department Officers (Parish, Dixon, Staten, others) as retaliation for her efforts to seek justice, with the intent to disrupt her ability to pursue legal action.

- Failure to investigate abuse allegations properly by GCDSS defendants, despite having knowledge of the abuse, thereby impeding the court's ability to make informed decisions based on truth and protecting the abuser.

456. These acts were undertaken with the intent to interfere with the truthful and proper resolution of the state court custody proceedings, the appeal process, and any related investigations, for the purpose of achieving unlawful outcomes, concealing misconduct, and avoiding accountability.

457. As a direct and proximate result of the defendants' civil obstruction of justice, Plaintiffs were denied a fair and just legal process, were subjected to unjust orders including loss of custody and financial penalties, suffered severe emotional distress, and incurred costs in their efforts to counter the obstruction.

458. As a proximate result of the defendants' conduct, plaintiffs have suffered damages and are seeking relief thereafter.


## COUNT SEVENTEEN: RESPONDEAT SUPERIOR

459. Against Defendants Guilford County, Guilford County Department of Social Services, and North Carolina Department of Health and Human Services.

460. Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

461. Under the doctrine of respondeat superior, an employer may be held liable for the tortious acts of its employees committed within the scope of their employment. While this doctrine generally does not apply to § 1983 claims against governmental entities, it is applicable to state law tort claims brought under the Court's supplemental jurisdiction.

462. At all relevant times, the individual defendants who are employees of Guilford County, GCDSS, or NCDHHS (including but not limited to Barlow, Sivori, Greene, Paylor, Cooley, Miller, McDowell, and Reeves) were acting within the course and scope of their employment when they engaged in the tortious conduct alleged herein, including negligence, gross negligence, negligent misrepresentation, actual fraud, constructive fraud, conspiracy, and civil obstruction of justice.

463. Defendants Guilford County, GCDSS, and NCDHHS are the employers of these individuals and are therefore liable under the doctrine of respondeat superior for the damages caused by their employees' tortious conduct committed within the scope of their employment.

464. These governmental entities had a duty to ensure that their employees performed their duties lawfully and ethically; this duty was breached by the employees' tortious acts committed while performing agency functions.

465. As a direct and proximate result of the tortious conduct of the employees of Defendants Guilford County, Guilford County Department of Social Services, and North Carolina Department of Health and Human Services, for which they are

liable under the doctrine of respondeat superior, Plaintiffs suffered severe damages as alleged throughout this Complaint.

466. As a proximate result of the defendants' conduct, plaintiffs have suffered damages and are seeking relief thereafter.

## COUNT EIGHTEEN: VIOLATION OF EQUAL PROTECTION UNDER 42 U.S.C. § 1983

467. Against Defendants Guilford County, Guilford County Department of Social Services, Wendy Sivori, Sharon Barlow, Stacy Greene, Cheyenne Paylor, Rachel Cooley, Syrita Miller, Yolanda McDowell, Jordan Reeves, Anne Littlejohn, Megan Spidell, Adam Arthur, and Lee Corum)

468. Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

469. The Equal Protection Clause of the Fourteenth Amendment requires that all persons similarly situated should be treated alike, both in rights conferred and responsibilities imposed. State actors may not apply laws or policies in an arbitrary or discriminatory manner, particularly when fundamental rights are implicated.

470. Defendants, acting under color of state law, violated the Equal Protection rights of Plaintiffs Angela Ryan and her children by treating them differently from other similarly situated individuals without a rational basis, or with an intent to discriminate or retaliate.

120

471.    Plaintiffs were treated differently in numerous ways:

- Angela Ryan was subjected to requirements (completing services, adhering to DSS5239) based on an abuse investigation that applied only to the children's father, not to her, unlike other parents who are not subject to services based on investigations of others.

- The basis for the children's removal and placement (Judge Pemberton's "inability to determine" and the fake text message) and the procedures used (reliance on fraudulent documents, lack of A/N/D filing for mother) were applied arbitrarily compared to standard child protective services practices where removal typically requires clear findings against a parent in a proper proceeding.

- Angela Ryan was denied the opportunity to present crucial exculpatory evidence (Verizon records) in state court, unlike other litigants who are permitted to present relevant evidence in their defense.

- Angela Ryan was subjected to unlawful civil contempt proceedings and forced payment without a proper financial assessment, unlike other individuals facing contempt for inability to pay.

- The children were allegedly subjected to differential treatment regarding investigation of abuse and placement decisions compared to other children under GCDSS oversight, particularly A.R.'s swift return to her father's home despite reports of abuse and suicide attempts, while the mother was denied custody based on a false narrative.

472.　This differential treatment was not based on any legitimate governmental interest or rational basis but rather on arbitrary factors, misleading information, fraudulent documents, bias, and potentially retaliatory motives aimed at punishing Angela Ryan for challenging the system and exposing misconduct

473.　As a direct and proximate result of the defendants' violation of Plaintiffs' Equal Protection rights, Plaintiffs suffered severe damages, including unlawful separation, loss of custody, emotional distress, and subjection to an unjust legal process.

474.　As a proximate result of the defendants' conduct, plaintiffs have suffered damages and are seeking relief thereafter.

## COUNT NINETEEN: VIOLATION OF NORTH CAROLINA CONSTITUTION

475.　Against all state actor defendants and private actors conspiring with them (North Carolina Department of Health and Human Services, Guilford County, Guilford County Department of Social Services, Wendy Sivori, Sharon Barlow, Stacy Greene, Cheyenne Paylor, Rachel Cooley, Syrita Miller, Yolanda McDowell, Jordan Reeves, Anne Littlejohn, Megan Spidell, Adam Arthur, Lee Coram)

476.　Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

477.　Article I, Section 19 of the North Carolina Constitution, the "Law of the Land" clause, is generally considered the equivalent of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. It protects individuals from

122

arbitrary or unjust state action and requires that state laws and procedures afford fundamental fairness. Article I, Section 35 protects fundamental rights retained by the people.

478. Defendants, acting under color of state law or in concert with state actors, violated Angela Ryan's and her children's rights under the North Carolina Constitution, including but not limited to Article I, Section 19 and Article I, Section 35.

479. The conduct constituting these violations mirrors the violations of the Fourteenth Amendment Due Process Clause discussed in Count Thirteen, including:

- The unlawful removal and continued retention of children from parental custody without a proper legal basis (A/N/D finding) and in violation of N.C. Gen. Stat. § 7B-100 et seq. See N.C. Gen. Stat. § 7B-100(1) (mandating procedures that assure fairness and equity and protect constitutional rights).

- The use of unlawfully executed, altered, and fraudulent documents (DSS5239, fictional case records) by GCDSS defendants and attorney Sivori to justify state action and secure funding, in violation of state law and policy, and with intent to deceive.

- The presentation of false evidence (fake text message, altered text message) and concealment of exculpatory evidence (Verizon records) in state court proceedings by attorney defendants (Spidell, Arthur, Littlejohn, Corum) and GCDSS

defendants, corrupting the judicial process and denying Plaintiffs a fair hearing as required by the "Law of the Land."

- Arbitrary and unjust judicial actions (Judges Pemberton, Holiday, Smith) that denied Plaintiffs fair process, relied on fraudulent evidence, suppressed truth, and issued unlawful orders (e.g., contempt without financial assessment), violating the guarantee of justice under the "Law of the Land." See N.C. Gen. Stat. § 5A-15 (requirements for civil contempt orders).

- Failure to protect children from known abuse by GCDSS defendants and NCDHHS, despite their statutory duties under N.C. Gen. Stat. § 7B-300 et seq., violating the fundamental rights of children to safety and protection and the parents' fundamental right to familial association.

- The pattern of retaliation by state actors (e.g., Gibsonville Police) aimed at silencing a party seeking justice, interfering with access to the courts guaranteed by the North Carolina Constitution.

- The destruction of court records, impeding the ability to seek appellate review and undermining the integrity of the state judicial system, in violation of state law and the right to open courts and justice.

480. These actions, undertaken by Defendants acting under color of state law or conspiring with state actors, deprived Angela Ryan and her children of their rights to "Law of the Land" and other fundamental rights guaranteed by the North Carolina Constitution.

124

481. As a direct and proximate result of the defendants' violation of the North Carolina Constitution, Plaintiffs suffered severe damages, including unlawful separation, loss of custody, emotional distress, and subjection to an unjust and corrupt legal process.

482. As a proximate result of the defendants' conduct, plaintiffs have suffered damages and are seeking relief thereafter.

## REQUEST FOR REMOVAL OF JURISDICTION AND APPOINTMENT OF COUNSEL

*Necessity of Federal Jurisdiction*

483. Plaintiffs adopt and incorporate by reference all allegations of this Complaint as if fully set out herein.

484. Plaintiffs respectfully and urgently request that this Honorable Court exercise its authority to remove all current and future proceedings concerning Angela Ryan and her children from the Guilford County District Court and assert exclusive jurisdiction over these matters.

485. The state court system, particularly the Guilford County District Court, has demonstrated a pervasive pattern of judicial misconduct, deliberate interference, and an alarming unwillingness to uphold the Plaintiffs' constitutional rights or address the profound fraud and corruption at play. State court remedies have been thoroughly exhausted without providing any meaningful relief, instead

perpetuating and exacerbating the severe harm inflicted upon Angela Ryan and her children.

486. The record, as detailed in the Factual Background, overwhelmingly demonstrates that the Guilford County District Court judges are actively acting to protect their own conduct and the misconduct of other Defendants, thereby directly interfering with Angela Ryan's fundamental right to gain federal relief. Examples of such interference include:

- Persistent reliance on undeniably false evidence, such as the fake text message, despite irrefutable proof of its fabrication being presented to the court.

- Denial of Angela Ryan's efforts to introduce critical exculpatory evidence and motions for dismissal based on fraud.

- Entry of orders, including custody determinations and civil contempt orders, based on fraudulent premises and without adhering to due process safeguards.

- Issuance of findings of fact contradicted by the undisputed record, designed to justify punitive actions against Angela Ryan.

- The alleged destruction of crucial court records and denial of transcripts, which are indispensable for Angela Ryan to mount a proper defense and pursue legitimate appellate review.

- Taking actions without Angela Ryan's knowledge or consent, further undermining her ability to participate meaningfully in her case and protect her rights.

487. This systemic judicial compromise necessitates immediate federal intervention to prevent further irreparable harm to the Plaintiffs and ensure that justice, long

denied in the state forum, can finally be achieved. The state court's ongoing actions, particularly the civil contempt proceedings and threats of incarceration, are not merely erroneous but constitute a deliberate campaign of retaliation aimed at coercing Angela Ryan and obstructing her access to federal court.

*Urgent Need for Appointment of Counsel*

488.   Plaintiffs respectfully request that this Honorable Court appoint legal counsel for Angela Ryan. While this Court is generally not required to appoint counsel in civil cases, the extraordinary and extreme complexities of the multiple issues at hand, coupled with Angela Ryan's severely disadvantaged circumstances, compel such an appointment in the interest of justice.

489.   Angela Ryan has been formally recognized as an informal pauper by the Supreme Court of North Carolina May 2025, and declared indigent by the Guilford County District Court on October 17, 2024. She is currently unemployed, having lost her job due to the severe emotional distress caused by the traumatic events of this case. This indigence, combined with the profound psychological and emotional toll she has endured, has critically impaired her ability to effectively represent herself in a lawsuit of this magnitude and complexity.

490.   The issues involved in this Complaint span multiple areas of law, including complex federal civil rights violations (42 U.S.C. § 1983 claims involving Fourth and Fourteenth Amendment rights), RICO and racketeering allegations, various state torts, and intricate factual patterns involving extensive fraudulent documentation and a deep-seated conspiracy among state and private actors.

127

Navigating the demanding discovery phase in such a case—which will require extensive document review, depositions, and forensic analysis—is beyond the capacity of a pro se litigant, especially one suffering from severe emotional distress.

491.   Experienced legal expertise is not merely beneficial but absolutely vital for:

- Properly structuring and arguing the intricate legal and factual components of this action.
- Conducting comprehensive discovery to fully reveal the extent of the judicial misconduct and the underlying conspiracy.
- Effectively presenting evidence and challenging defenses to ensure a fair and just resolution.
- Protecting Angela Ryan from further retaliatory actions by state actors who continue to exploit her lack of legal representation.

492.   Without the assistance of experienced counsel, Angela Ryan's ability to effectively prosecute this action and secure the proper relief for herself and her children will be severely compromised, and the Defendants' misconduct may remain unpunished. The appointment of counsel would ensure a level playing field and uphold the fundamental principles of fairness and access to justice in this critical federal action.

493.   Therefore, Plaintiffs implore this Court to enter an order directing the Guilford County District Court to cease all actions against Angela Ryan immediately and remove all related matters to the exclusive jurisdiction of this federal court,

simultaneously appointing qualified legal counsel to represent Angela Ryan in all aspects of this litigation.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Angela Ryan, A.R., and J.R., respectfully pray for judgment against the Defendants named herein, jointly and severally, and demand the following relief from this Honorable Court:

1. For an immediate Order mandating the return of custody of A.R. to Plaintiff Angela Ryan from the father's home, recognizing the ongoing abuse and the fraudulent and unlawful basis for her continued separation.

2. For an Order removing pending State Court matters, specifically Guilford County District Court, (14CVD10126) to prevent any further damages and in respect of the upcoming July 1, 2025 hearing.

3. For an award of compensatory damages to Plaintiffs for all injuries sustained, including but not limited to severe pain, suffering, emotional distress, mental anguish, loss of familial association, disruption of family life, and all financial losses incurred as a direct and proximate result of the Defendants' unconstitutional conduct, fraud, and negligence.

4. For an award of consequential damages to Plaintiffs as proven at trial, directly resulting from the Defendants' unlawful actions and conspiracy.

5. For an award of punitive damages against all Defendants found to have acted with malice, wantonness, or reckless disregard for the Plaintiffs' fundamental

129

constitutional rights, in an amount sufficient to punish such conduct and deter similar future misconduct.

6.  Plaintiff respectfully requests the consideration of this Honorable Court and appointment of counsel.

7.  Plaintiff respectfully requests the consideration of her Motion attached to this Complaint to proceed in forma pauperis.

8.  For an award of reasonable attorney's fees and costs of this action, as permitted by 42 U.S.C. § 1988(b) and any other applicable federal and state statutes, if counsel is appointed to represent Angela Ryan.

9.  For a trial by jury on all issues so triable as a matter of law.

10. For any and all other and further relief, both legal and equitable, as this Honorable Court may deem just and proper.


Respectfully submitted this 19th day of June 2025. *akr* *24th*

Angela Ryan

706 Huffman Mill Rd #D2

Burlington NC 27215

336-266-7320

Akj8989@aol.com