IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

FILED
IN THIS OFFICE
SEP 1 1 2025
Clerk U.S. District Court
Greensboro
BY_____

ANGELA RYAN )   Case No.<u>25 CV 502</u>
    Plaintiffs )
 )
 )
    v. )   **EX PARTE MOTION FOR**
 )   **TEMPORARY RESTRAINING**
 )   **ORDER, STAY OF STATE**
NORTH CAROLINA DEPARTMENT )   **COURT PROCEEDING AND**
OF HEALTH AND HUMAN SERVICES; )   **APPOINTMENT OF COUNSEL**
GUILFORD COUNTY; )
GUILFORD COUNTY DEPARTMENT )
OF SOCIAL SERVICES; )
WENDY SIVORI, in both her individual )
capacity and her official capacity as )
attorney for Guilford County Department )
of Social Services; SHARON BARLOW, )
in both her individual capacity and her )
official capacity as Director of Guilford )
County Department of Social Services; )
STACY GREENE, DSS Supervisor, both. )
in her individual capacity and official )
capacity as a Supervisor of Guilford )
County Department of Social Services; )
CHEYENNE PAYLOR, both in her )
individual capacity and official capacity )
as Supervisor of Guilford County )
Department of Social Services; )
RACHEL COOLEY, both in her )
individual capacity and official capacity )
as Supervisor of Guilford County )
Department of Social Services; SYRITA )
MILLER, both in her individual )
capacity and official capacity as Social )
Worker of Guilford County )
Department of Social Services; )
YOLANDA MCDOWELL, both in )
her individual capacity and her official )
capacity as Social Worker of Guilford )
County Department of Social Services; )

JORDAN REEVES, both in her )
individual capacity and her official )
capacity as Social Worker of Guilford )
County Department of Social Services; )
ANNE LITTLEJOHN, Attorney for )
Guilford County Guardian ad Litem )
Program, in her individual capacity; )
MEGAN SPIDELL, Independent )
Family Law Attorney, in her individual )
capacity; ADAM ARTHUR, Independent )
Family Law Attorney, in his individual )
capacity; LEE CORUM, court appointed )
attorney, in his individual capacity; )
JOHN DOE #1-#10, for unknown )
defendants. )

Defendants,

Assigned Judge: William L. Olsteen, Jr

## EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER, STAY OF STATE COURT PROCEEDINGS, AND APPOINTMENT OF FEDERAL COUNSEL

COMES NOW the Plaintiff, Angela Ryan, proceeding pro se, and files this emergency motion in conjunction with her pending civil rights Complaint (Case No. 25-cv-502). Plaintiff respectfully moves this Honorable Court, pursuant to Federal Rule of Civil Procedure 65(b) and 28 U.S.C. § 1915(e)(1), for the following emergency relief to protect her from retaliatory and unconstitutional state court actions being pursued by Defendants named in her federal Complaint:

Relief Requested:

1. An Emergency Temporary Restraining Order issued ex parte to prevent the Defendants, along with their officers, agents, employees, and attorneys—including Judges Kelvin Smith and Tabatha Holiday from the Guilford County District Court, and attorney Megan Spidell, from enforcing or taking any action related to the unconstitutional and void contempt order issued on December 17, 2024, in Guilford County District Court, Case No. 14 CVD 10126. This includes stopping any further attempts to incarcerate Plaintiff, collect monthly purge payments, or enforce the underlying attorney fee obligations, all of which are based on fraud.

2. A Stay of All Related State Court Proceedings in Guilford County District Court, Case No. 14 CVD 10126, and any other related state matters, until this Court issues further orders. This is essential to protect this Court's jurisdiction, prevent the state forum from being misused to retaliate against Plaintiff for filing her federal Complaint, and to halt the enforcement of void orders.

3. The Appointment of Federal Counsel for Plaintiff under 28 U.S.C. § 1915(e)(1). This appointment is crucial due to the exceptional circumstances, the legal and factual complexities involved in proving a multi-year conspiracy and fraud on the court, the ongoing and irreparable harm Plaintiff is facing, her court-declared indigency, and her inability to represent herself in these intricate matters.

4. This motion seeks expedited service of the Summons and Complaint for all Defendants, as the Plaintiff is proceeding in forma pauperis and is facing immediate risks of further irreparable harm, including the threat of retaliatory incarceration and homelessness.

5. Plaintiff is also requesting any additional relief that this Court finds just and proper.

This motion is being filed on an emergency, ex parte basis because the Plaintiff is in a situation of clear, immediate, and irreparable harm. The threat is not just a possibility; it stems from a documented pattern of abuse of power. The state court's contempt order, which has been used as a tool for retaliation, has already led to the wrongful incarceration of the Plaintiff for 30 days, an act that can be seen as kidnapping under the guise of law. Now that the Defendants are aware of her ongoing federal case, they are intensifying their efforts to enforce these invalid orders in an attempt to punish, silence, and financially ruin her, thus hindering this Court's ability to address her case. After trying every possible remedy in a state court system that has shown itself to be complicit in the misconduct, the Plaintiff turns to this Court as her only option for protection. Federal intervention is essential to safeguard the Plaintiff's liberty, shield her from further retaliation, and allow her federal civil rights claims to move forward.

This motion is backed by the accompanying Memorandum of Law, the referenced exhibits, and the complete record of this case.

Respectfully submitted this 8th day of September, 2025.



Angela Ryan, Pro Se Plaintiff

706 Huffman Mill Rd., Apt #D2

Burlington, NC 27215

Telephone: (336) 524-7695

Email: AkJ8989@aol.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES………………………………………………..8

I. PRELIMINARY STATEMENT………………………………………11

  II.  INTRODUCTION……………………………………………….12

  III.  FACTUAL BACKGROUND…………………………………...13

A. The Scheme's Inception:A Fabricated Text Message & Wrongful Removal.....13

B. The Irrefutable Proof of Fraud and Its Willful Concealment…………………14

C. Coercion, Ineffective Counsel, and the Deepening Trauma…………………....15

D. The Fraudulent Funding Scheme: Misuse of the DSS-5239 Agreement……....15

E. Retaliation in the State Court: The October 2022 Custody Trial……………....16

F. Appellate Review and Continued Defiance on Remand………………………16

G. The Unconstitutional Contempt Hearing and Coercive Extortion……………17

H. Appellate Failures and Retaliatory Incarceration……………………………...18

I. Obstruction of Justice in the Appellate Process………………………………...19

J. Ineffective Counsel and Escalating Judicial Misconduct………………………20

K. State-Created Danger & the Children's Ongoing Suffering…………………...19

  IV.  LEGAL STANDARD & ARGUMENT…………………………...20

A. THIS COURT HAS THE AUTHORITY TO ENJOIN THE STATE COURT

PROCEEDINGS UNDER THE EXCEPTIONS TO THE ANTI-INJUNCTION ACT &

THE YOUNGER ABSTENTION DOCTRINE…………………………………21

  1.  Jurisdiction & the Power of Federal Courts to Vindicate Federal Rights....21

2.   The Anti-Injunction Act Does Not Bar Relief Because § 1983 is an Expressly Authorized Exception……………………………………………………...21

3.   Younger Abstention Inapplicable Because State Proceedings Tainted by Bad Faith, Harassment, & Extraordinary Circumstances……………………….....22

    a.   The Bad Faith and Harassment Exception………………………....22

    b.   Extraordinary Circumstances & Inadequate State Forum Exceptions..23

B. PLAINTIFF SATISFIES ALL REQUIREMENTS FOR AN EMERGENCY TEMPORARY RESTRAINING ORDER·UNDER RULE 65(b)………………....24

1.   Plaintiff Has a Strong Likelihood of Success on the Merits………………..24

    a.   All State Court Orders Void Ab Initio - Extrinsic Fraud on the Court 24

    b.   Violation of the Right to Familial Association……………………...25

    c.   Conspiracy to Interfere with Civil Rights…………………………...26

    d.   State-Created Danger……………………………………………......26

2.   Plaintiff & Her Children Will Suffer Immediate and Irreparable Harm…....27

3.   The Balance of Hardships Decisively Favors Plaintiff……………………....28

4.   Granting the Injunction is Firmly in the Public Interest……………………....28

C. EXCEPTIONAL CIRCUMSTANCES REQUIRE THE APPOINTMENT OF COUNSEL UNDER 28 U.S.C. § 1915(e)(1)………………………………….....29

V. CONCLUSION AND PRAYER FOR RELIEF……………………………..30

ADDENDUM : VOLUMINOUS EVIDENCE …………………………………..33

EVIDENCE INDEX…………………………………………………………….34

PROPOSED ORDER …………………………………………………………..36

WORD COUNT VERIFICATION …………………………………………..40

VERIFICATION …………………………………………………………..41

# TABLE OF AUTHORITIES

Cases

Bell v. Hood, 327 U.S. 678 (1946)    24

Cook v. Bounds, 518 F.2d 779 (4th Cir. 1975)    32

County of Durham v. Burnett, 191 N.C. App. 614 (2008)    28

Dennis v. Sparks, 449 U.S. 24 (1980)    29

DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189 (1989)    29

Dombrowski v. Pfister, 380 U.S. 479 (1965)    25

Estrada v. Jaques, 70 N.C. App. 627 (1984)    28

Gibson v. Berryhill, 411 U.S. 564 (1973)    26

Goldberg v. Kelly, 397 U.S. 254 (1970)    30

Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978)    31

Harris v. City of Winston-Salem, No. 1:19CV941, 2021 WL 4316810    32

(M.D.N.C. Sep 22, 2021)

Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)    27

Huffman v. Pursue, Ltd., 420 U.S. 592 (1975)    24

Jensen v. Conrad, 747 F.2d 185 (4th Cir. 1984)    29

Kugler v. Helfant, 421 U.S. 117 (1975)    25

Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982)    29

Mitchum v. Foster, 407 U.S. 225 (1972)    24

Moore v. City of East Cleveland, 431 U.S. 494 (1977)    28

Nivens v. Gilchrist, 444 F.3d 237 (4th Cir. 2006)                                    25

Outen v. Baltimore County, 177 F.R.D. 346 (D. Md. 1998)                             27

Pevia v. Durden, 961 F. Supp. 2d 745 (E.D.N.C. 2013)                                29

Real Truth About Obama, Inc. v. FEC, 575 F.3d 342 (4th Cir. 2009)                  26

Santosky v. Kramer, 455 U.S. 745 (1982)                                            28

Tower v. Glover, 467 U.S. 914 (1984)                                               29

Troxel v. Granville, 530 U.S. 57 (2000)                                            28

Turner v. Rogers, 564 U.S. 431 (2011)                                              28

Universal Oil Prods. Co. v. Root Ref. Co., 328 U.S. 575 (1946)                     27

Whisenant v. Yuam, 739 F.2d 160 (4th Cir. 1984)                                    31

Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7 (2008)                        26

Younger v. Harris, 401 U.S. 37 (1971)                                              24,25


Statutes, Rules, and Constitutional Provisions

U.S. Const. amend. I                                                               23

U.S. Const. amend. XIV.                                                            23,28

28 U.S.C. § 1331 (Federal Question Jurisdiction)                                    23

28 U.S.C. § 1343 (Civil Rights Jurisdiction)                                        24

28 U.S.C. § 1651 (All Writs Act)                                                    24

28 U.S.C. § 1915(e)(1) (Appointment of Counsel)                                     31

28 U.S.C. § 2283 (Anti-Injunction Act)                               24

42 U.S.C. § 1983 (Civil Rights Action).                  12, 23,     24, 28

Fed. R. Civ. P. 65                                                   26

N.C. Gen. Stat. § 5A-15(f) (Ability to Pay Finding Required)         28

# I. PRELIMINARY STATEMENT

This is an urgent motion related to Plaintiff Angela Ryan's ongoing civil rights Complaint, Case No. 25-CV-502. It requests immediate federal protection against retaliatory actions in state court being pursued by the very state actors and co-conspirators identified as Defendants in her federal case. Now aware of her federal lawsuit, these Defendants are manipulating the state court system to enforce a series of invalid and unconstitutional orders. Their intentions are twofold: to punish Angela Ryan for seeking justice in this Court and to obstruct the federal proceedings by pushing her towards imminent re-incarceration and financial devastation.

The threat of harm is not just a possibility; it's a certainty. The Plaintiff has already faced wrongful incarceration for 30 days due to these same invalid orders, an act that amounts to kidnapping under the guise of law. This clearly shows the Defendants' intent to persist with their unlawful actions. The entire state court case, from the very beginning, is a legal nullity, built on a single piece of fabricated evidence, a fake text message. This initial fraud on the court renders every subsequent order, including the custody modifications, fee awards, and contempt findings, void ab initio.

After exhausting all options for relief in a state forum that has proven to be not only inadequate but also an active participant in the constitutional violations, federal intervention has become a constitutional necessity. This Court must step in to stop the enforcement of these invalid orders to prevent further irreparable harm to Angela Ryan and her children, whose lives and freedoms are at stake.

## II. INTRODUCTION

This is a request for emergency injunctive relief, filed alongside Plaintiff's Complaint under 42 U.S.C. § 1983 (Case No. 25-cv-502). It stems from a long-standing conspiracy involving state actors and private attorneys. The entire intervention by the state court into Plaintiff Angela Ryan's family was triggered and maintained by a single, fundamental falsehood: a clearly fabricated text message that was used in June 2021 to unjustly remove her two children from her care. Even though Verizon Wireless records, subpoenaed just days later, provided undeniable proof of this fabrication, the Defendants deliberately hid this crucial, exculpatory evidence from the court.

This initial act of extrinsic fraud was the bedrock of the entire scheme. It was used to justify the traumatic separation of Plaintiff from her children for a year-and-a-half to create a false paper trail to unlawfully secure federal Title IV-E funding. When Plaintiff uncovered the fraud and tried to present her evidence to the Guilford County District Court, the state judicial officers didn't offer any relief; instead, they participated in the retaliation.

This motion isn't just about the individual errors made by the state court; it's about the fact that the court's jurisdiction and all its subsequent actions were obtained through fraud. The original order that removed the children was based on a fabricated situation that never existed. As a result, every action that followed, the custody orders, the over $50,000 in attorney and guardian ad litem fees, and the contempt orders aimed at punishing Angela Ryan, is void ab initio. They are legal nullities, the result of a toxic source, and carry no legal weight or effect.

The ongoing contempt proceedings against Angela Ryan aren't a genuine good-faith attempt to uphold a lawful order. Instead, they represent a malicious and retaliatory effort by the Defendants in her federal complaint, aimed at punishing her for exposing their misconduct and to prevent this Court from adjudicating her claims. The damage has already been done: in July 2025, Plaintiff was wrongfully jailed for 30 days under one of these void orders, costing her her job, her vehicle, and threatening her for a second time with homelessness. The same unlawful orders are responsible for the February 2025 eviction from her rental home of 10 years and loss of previous job. [See Exhibits 8, 10, 12, 23].

Her children, who were placed into the custody of their known abuser by the state, have endured tremendous suffering, leading to Angela Ryan's daughter attempting suicide three times [See Exhibits 17]. The state has done nothing to safeguard them, opting instead to protect its fraudulent narrative. The state forum isn't just insufficient; it actively contributes to the constitutional violations. It's crucial for this Court to step in and halt the enforcement of these invalid state orders to protect the Plaintiff from further state-sanctioned kidnapping and retaliation.

## III. FACTUAL BACKGROUND

The events that led to this federal case reveal a deeply troubling and ongoing scheme of fraud, conspiracy, and retaliation aimed at Angela Ryan and her two children, J.R. and A.R. This scheme has been orchestrated by both state and private individuals, all in the name of financial gain and to cover up widespread misconduct.

**A. The Scheme's Inception: A Fabricated Text Message and Wrongful Removal**

The state court case didn't start off as a child protection issue; it was a regular custody modification request by Plaintiff. Although Plaintiff was the children's primary physical custodian with father have visits every other weekend, conditions warranted seeking full physical custody. However, things took a malicious and fraudulent turn on June 1, 2021. In an attempt to escape accountability while under investigation for child abuse by Guilford County Department of Social Services (GCDSS), for the fifth time since 2014, the father's lawyer, Megan Spidell, presented a text message that she falsely claimed was sent by the minor son, J.R., to his dad. This message was supposedly a confession that the allegations of abuse against his father were fabricated and he had been coached by Angela Ryan. When the judge Carolyn Pemberton questioned the children under oath before the court, J.R. courageously testified that he never sent the message, sharing a chilling story about a threatening phone call he had received. In open court, both children stood firm, insisting that their father's abuse was very real and ongoing. That same night, the threats against Angela Ryan intensified, highlighted by a suspicious incident at her home where a man pretended to be a pizza delivery driver at 3:00 a.m. Angela Ryan contacted authorities immediately and the Gibsonville Police Department became involved. She further filed a report regarding the threatening call to her son and further shared cellular records within her access to officers as requested. Authorities closed the case as a "communicating threats" incident.. Despite the child's credible testimony and other supporting evidence, the state court judge made the drastic decision to remove the children from both parents, relying solely on the unverified and disputed text message. This single piece of fraudulent evidence became the foundational basis of the state's

unlawful intervention into Angela Ryan and her children's lives, there was no other basis to act. The entire situation from this point forward was built upon this nonexistent event.

## B. The Irrefutable Proof of Fraud and Its Willful Concealment

Immediately, Ms. Ryan's attorney subpoenaed the father's cellular records from Verizon Wireless. On July 1, 2021, the certified records came back, revealing undeniable proof that the text message was a complete fabrication [See Exhibit 1]. The records indicated:

- There was absolutely no text message communication at all between the father's phone and the child's new phone.

- The records perfectly corroborated J.R.'s testimony about the timing and duration of the threatening phone call.

This was clear, exculpatory evidence. It demonstrated that the Plaintiff was innocent and that the opposing party had committed fraud on the court. Angela. Ryan insisted that her new attorney, Defendant Adam Arthur,who represented her in 2015 for her divorce and current custody order,  present this evidence without delay. He refused and misled the Plaintiff providing her that he would approach it during a final custody trial, and Plaintiff trusted him at the time. Defendant Arthur, along with Defendant Spidell and GCDSS (including their attorney Defendant Wendy Sivori), were all aware of the Verizon records. They made a conscious decision to hide this crucial, case-changing truth from the court, allowing the case to move forward based on a known lie.

## C. Coercion, Ineffective Counsel, and the Deepening Trauma

The consequence of this concealment was a long and traumatic separation between a mother and her children, turning into a nightmare that lasted almost a year and a half.

During this period, the children's mental health took a serious hit [See Exhibit 17]. The Defendants pressured both the children and Angela Ryan, and Defendant Arthur and GCDSS Social Worker Syrita Miller, threatened her that if she pushed for an evidentiary hearing as she demanded, her kids would be placed in an unknown foster home. She was instructed her only option was to sign a safety plan and voluntarily agree to continued out of home placement of her children and completing a psychological evaluation and family therapy and further an assessment of the family with recommendations to the court regarding custody by a guardian ad litem, Attorney Anne Littlejohn, who was specifically selected during a closed door meeting between Judge Vincent, DSS Attorney Wendy Sivori and the parents Attorneys. Feeling traumatized and misled, Angela Ryan reluctantly agreed to a so-called "voluntary" continued out-of-home placement and to protect her children from unknown foster home.

On December 21, 2021, the court entered an order that reflected the services required by GCDSS for father and his "services needed" abuse investigation, yet withheld those specific details and instead leading the Court to believe that both parents agreed to entering a safety plan and voluntarily continuing the out of home placement while completing said services.

**D. The Fraudulent Funding Scheme: Misuse of the DSS-5239 Agreement**

The reasons behind the Defendants' unlawful separation started to come to light in March 2022, when social worker Yolanda McDowell handed the Plaintiff a document called "In-Home Services Agreement DSS 5239" [See Exhibit 16]. This agreement is specifically meant for parents who have been investigated and found to have abused or

neglected their children. However, the Plaintiff had never faced any investigation. In fact, the only parent with a documented history of abuse was the father [See Exhibit 24]. The DSS-5239 form that was given to Angela Ryan was actually a tampered, fraudulent version, crafted to create a misleading paper trail. This deception was driven by a shift in federal law that allowed state agencies to tap into Title IV-E federal funding to reimburse private attorneys involved in child welfare case. By fabricating a false abuse investigation against Angela Ryan, the Defendants could make it seem like there was a valid child welfare case, which in turn enabled them to unlawfully charge for services and attorney fees being that father had his "services needed" abuse investigation findings, requiring him to voluntarily place his children out of home and complete services.

## E. Retaliation in the State Court: The October 2022 Custody Trial

- By October 2022, Angela Ryan found herself forced to proceed pro se before Judge Tabitha Holiday and removed Attorney Arthur due to his misconduct and negligence [See Exhibit 28]. Plaintiff started the custody trial by filing a "Motion for Dismissal for Fraud on the Court," where she laid out the whole scheme [See Exhibit 18]. Unfortunately, this resulted in severe retaliation, and Judge Holiday denied the motion and:

- Suppressed Evidence: She wouldn't allow the certified Verizon Wireless records to be presented.

- Admitted False Evidence: She let Defendant Spidell enter in a second, altered version of the fake text message [See Exhibit 19].

- Issued Perverse Rulings: She took away all of Angela Ryan's custody rights, handed them over to a known abuser, and even ordered Angela to pay over $50,000 in fees to the conspiring attorneys, financially crippling her.

**F. Appellate Review and Continued Defiance on Remand**

The North Carolina Court of Appeals vacated the fee award for abuse of discretion, instructing the trial court to carry out a proper financial evaluation and answer further findings of fact, regarding fathers "good faith". However, in July 2024, Judge Holiday openly disregarded this instruction. She declined to perform the financial assessment on both parents and reinstated the fees based on clearly inaccurate claims that the Plaintiff had "falsely accused dad of abuse," a claim that directly contradicts the records from GCDSS [See Exhibit 24]. The July 2024 attorney and guardian ad litem fee order entered as a result of these proceedings directly reflects only assessment done on father and further knowingly false findings of father. [See Exhibit 3].

G. The Unconstitutional Contempt Hearing and Coercive Extortion

With the invalid fee order reinstated, Defendant Spidell filed for contempt [See Exhibit 7]. The hearing on December 17, 2024, before Judge Kelvin Smith was not a legal proceeding; it was an exercise in judicial misconduct and extortion.

- Denial of Due Process: Judge Smith belligerently refused Angela Ryan's request for a financial assessment, adamantly stating he was not required to conduct one. He then proceeded to degrade and belittle her from the bench, calling her a liar and accusing her of falsifying her application for indigency.

- Coercion and Extortion: Knowing she was indigent and earned only $2,000 per month, the judge demanded she pay $6,500 on the spot or be immediately incarcerated. He gave her five minutes to use her attorney's phone to contact family for the money. Her court-appointed attorney, Defendant Coram, facilitated this coercion, and Defendant Spidell spoke directly with Plaintiff brother, William Jobse Jr., to arrange the electronic payment.

- Unconstitutional Purge Conditions: After the $6,500 was extorted from her family during the hearing, Judge Smith imposed two additional, unconstitutional purge conditions in his written order [See Exhibit 8]:

  1. A "continuous contempt" provision, placing the ongoing monthly attorney fee payment as a purge condition with no ending date. Any non-payment would trigger an automatic 30-day incarceration, a mechanism designed to bypass any future hearings, financial assessments, or due process.

  2. A second purge condition for nearly $3,000, due in two weeks.

This order was an intentional instrument of retaliation, designed to hold the threat of immediate, summary incarceration over Angela Ryan indefinitely.

H. Appellate Failures and Retaliatory Incarceration

In January 2025, Plaintiff appealed the unconstitutional December 17, 2024 order, specifically challenging the denial of a financial assessment and the unlawful "continuous contempt" purge condition. The appellate court denied Plaintiff protection and her request for a stay, even after she explicitly warned them that Judge Smith was scheduled to hold a hearing on July 1, 2025, and would likely take action on his own order while it was under

appeal and further taking action upon his own order and punishing her for the nonpayment of purge conditions, to which she never received a financial assessment and further was under appeal for.

At the July 1 hearing, Plaintiff requested a stay of the state proceedings, informing the court she had filed her federal Complaint (on June 24, 2025) which addressed these matters and included same defendants. In direct retaliation, Judge Smith, without conducting any financial assessment or evidentiary hearing, incarcerated her for 30 days for failing to pay the secondary and third purge conditions of the December 17, 2024 order. He then committed another illegal act by dismissing his own December 17, 2024 order, which was actively under appeal.

On August 26, 2025, the Court of Appeals reversed Judge Smith's unlawful dismissal of his own order under appeal, which directly acknowledged his misconduct. However, this move had the troubling and dangerous consequence of bringing back the unconstitutional order from December 17, 2024, along with its 'continuous contempt' clause. Even though the appellate court recognized the trial judge's illegal actions, they still turned down Angela Ryan's request for a stay. By doing this, the appellate court has essentially given the state court a tool for retaliation, rendering the entire state judicial system, from trial courts to appellate courts, an inadequate and perilous environment for Angela Ryan.

## I. Obstruction of Justice in the Appellate Process

The bad faith shown here turned into a systematic effort to block Angela Ryan from pursuing her appeal filed January 13, 2025. To start, the Guilford County District Court denied her requests for copies of the hearing transcripts not once, but three times. These

records were crucial for her appeal. Although she requested these records, it was still their obligation as she was declared indigent on October 7, 2024..

Meanwhile, the opposing counsel, Defendant Megan Spidell, received those same transcripts right away, no questions asked. Second, the Defendants ensured that the key evidence proving the fraud would disappear. On January 2, 2025, during the active appeal, all case record exhibits from the October 2022 custody trial were destroyed. Defendant Spidell had received a notice from the clerk giving her 30 days to collect the exhibits before their destruction; she took no action and allowed them to be destroyed. [See Exhibit 9]. This act was clearly intentional, aimed at destroying crucial evidence for Angela Ryan's appeal. The most egregious part of this scheme was the destruction of the certified Verizon Wireless records. The case file contains a handwritten note claiming these records, a document over 25 pages long, were not an exhibit but were "accidentally attached" to another exhibit and destroyed. This explanation is facially implausible and points to a deliberate act of evidence tampering to prevent any appellate review of the foundational fraud.

Angela Ryan reported both the denial of transcripts and the destruction of evidence to the North Carolina Court of Appeals, pleading for intervention. The appellate court took no action [See Exhibit 15]. Instead, in May 2025, it further interfered by Judge Tabitha Holiday, appointing an appellate defender, Jacky Brammer, to Plaintiff's pro se appeal without her request or knowledge. This was a clear attempt to remove control of the appeal from her. Mr. Brammer did not communicate with the plaintiff until after her release from the 30-day incarceration, when she received a letter from Attorney Brammer

outlining his actions and intentions regarding her appeal filed to the December 2024 order. His involvement has continued to escalate strong concerns in regards to protection of her pending federal complaint as she has requested.

## J. Ineffective Counsel and Escalating Judicial Misconduct

Angela Ryan's court-appointed attorney, Defendant Lee Coram, acted as an agent of the court's coercive machinery, providing false legal advice. When Plaintiff sought to remove him, Judge Smith refused, denied her right to represent herself, and proceeded to berate and humiliate her from the bench, making it clear the proceeding was about punishment, not justice.

## K. State-Created Danger and the Children's Ongoing Suffering

The Plaintiffs' children have suffered greatly, placed knowingly into the custody of an abusive parent. In August 2025, Ms. Ryan's daughter, A.R., fled her father's home, leaving a letter detailing ongoing abuse, suicide attempts, and unbearable living conditions over two years [See Exhibits 17, 26]. A social worker informed the Plaintiff via text about falsified abuse investigation records held by GCDSS, which indicated both parents were required to complete in-home services. The worker falsely claimed both had been marked as having successfully completed these services and offered to send the Plaintiff a copy of the completion letter. The Plaintiff then shared evidence proving the records and service agreement were fraudulent, created for unlawful compensation schemes. The social worker ended communication and refused further discussion. Later, it was verified that A.R. was returned to her father's home without proper investigation or protection measures from GCDSS and NCDHHS.

These agencies took no action to safeguard A.R., instead forcing her back into her abuser's home to mask their history of misconduct. Now, the Plaintiff faces financial hardship, living in fear of re-arrest under a void and unconstitutional order used for extortion and retaliation.

## IV. LEGAL STANDARD AND ARGUMENT

## A. THIS COURT HAS THE AUTHORITY TO ENJOIN THE STATE COURT PROCEEDINGS UNDER THE EXCEPTIONS TO THE ANTI-INJUNCTION ACT AND THE YOUNGER ABSTENTION DOCTRINE

### 1. Jurisdiction and the Power of Federal Courts to Vindicate Federal Rights

This Court possesses unquestionable subject matter jurisdiction over Plaintiff's claims. The Complaint alleges severe and systemic violations of Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution, brought pursuant to 42 U.S.C. § 1983. Jurisdiction is therefore proper under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). It is a bedrock principle that federal courts are the primary guardians of federal constitutional rights. See Bell v. Hood, 327 U.S. 678, 684 (1946). This Court has the authority under § 1983 and the All Writs Act, 28 U.S.C. § 1651, to issue all orders necessary to provide a remedy.

### 2. The Anti-Injunction Act Does Not Bar Relief Because § 1983 is an Expressly Authorized Exception

The Anti-Injunction Act, 28 U.S.C. § 2283, generally prohibits federal courts from staying state court proceedings. However, the Act contains an exception where a stay is "expressly authorized by Act of Congress." In Mitchum v. Foster, 407 U.S. 225 (1972),

Case 1:25-cv-00502-WO-JEP    Document 4    Filed 09/11/25    Page 23 of 41

the Supreme Court definitively held that 42 U.S.C. § 1983 is such an exception. The Court reasoned that the very purpose of § 1983 was "to interpose the federal courts between the States and the people, as guardians of the people's federal rights." Id. at 242. Therefore, the Act is not a bar to the relief Plaintiff seeks.

**3. Younger Abstention is Inapplicable Because the State Proceedings are Tainted by Bad Faith, Harassment, and Extraordinary Circumstances**

The doctrine of comity, articulated in Younger v. Harris, 401 U.S. 37 (1971), counsels federal courts to abstain from interfering with ongoing state proceedings. However, the Younger doctrine has critical exceptions for cases where federal intervention is necessary to prevent manifest injustice. The facts here fall squarely within those exceptions.

**a. The Bad Faith and Harassment Exception**

**b. The Extraordinary Circumstances and Inadequate State Forum Exceptions**

The Younger exception applies when state proceedings are conducted in bad faith or aim to harass, as seen in Huffman v. Pursue, Ltd., 420 U.S. 592 (1975) and Dombrowski v. Pfister, 380 U.S. 479 (1965). Bad faith exists when a case begins without a reasonable basis for conviction, per Kugler v. Helfant, 421 U.S. 117 (1975). In this case, the state's intervention relied on fraudulent evidence known to be false by its proponents. Despite clear proof of fraud, the custody case continued for years, making it a deceptive action, not a legitimate child welfare concern.

Additionally, the contempt proceedings exemplify retaliatory prosecution Angela Ryan faced escalating punishments directly tied to her attempts to expose the fraud. The December 17, 2024 order's unconstitutional "continuous contempt" provision allows

incarceration without due process, serving as retaliation for her federal court efforts. This strategy aims to punish, silence, and financially destroy her as a whistleblower, a clear sign of bad faith prosecution warranting federal action, as discussed in Nivens v. Gilchrist, 444 F.3d 237 (4th Cir. 2006).

## B. PLAINTIFF SATISFIES ALL REQUIREMENTS FOR AN EMERGENCY TEMPORARY RESTRAINING ORDER UNDER RULE 65(b)

Federal intervention is warranted in extraordinary circumstances involving threats of irreparable harm, such as state forum bias or incapacity to fairly address federal issues. The plaintiff faces such conditions: previously jailed under a void order, at risk of further incarceration, with her children exposed to documented abuse and state-created danger. She has suffered financial devastation caused by accused actors.

The state courts, from trial to appellate levels, have been ineffective and biased. Trial judges actively retaliate instead of remaining neutral, while the appellate court, despite acknowledging misconduct and constitutional violations, has failed to protect the plaintiff. By reversing an unlawful dismissal without halting the retaliatory order, the appeals court has facilitated further harm. When the state system itself perpetuates constitutional violations, federal intervention becomes crucial.

A plaintiff seeking a TRO must establish that (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). In the Fourth Circuit, these factors are balanced. Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 347 (4th Cir. 2009). Plaintiff satisfies all four factors.

## 1. Plaintiff Has a Strong Likelihood of Success on the Merits

### a. All State Court Orders - Void Ab Initio Due to Extrinsic Fraud on the Court:

The plaintiff is likely to succeed because the state court proceedings against her are void ab initio—a legal nullity from the start. These proceedings relied entirely on a fabricated text message, constituting extrinsic fraud. Fraud on the court involves deliberate schemes that defile judicial integrity, as outlined in Hazel-Atlas Glass Co. v. Hartford-Empire Co. and Outen v. Baltimore County. In this case, the fabricated text and subsequent concealment of Verizon records exposing the fraud exemplify such misconduct.

Judgments obtained through fraud are void, as noted in Universal Oil Prods. Co. v. Root Ref. Co., and all subsequent actions based on them are invalid as "fruit of a poisonous tree." This includes the custody order, fee awards, and the December 17, 2024 contempt order threatening the plaintiff's liberty. The contempt order and its retaliatory "continuous contempt" provision were wrongly reinstated by the appellate court, despite no court being able to enforce a contempt order stemming from a void judgment (see Estrada v. Jaques).

Enforcing these void orders violates Ms. Ryan's Fourteenth Amendment right to due process under Turner v. Rogers. Moreover, the contempt proceedings are unconstitutional without an ability-to-pay finding required by N.C. Gen. Stat. § 5A-15(f) and County of Durham v. Burnett.

### b. Violation of the Right to Familial Association

The Supreme Court has long recognized the right of parents to the care, custody, and control of their children as "perhaps the oldest of the fundamental liberty interests." Troxel v.

Granville, 530 U.S. 57, 65 (2000). This right cannot be severed without due process, which requires "clear and convincing evidence" of unfitness. Santosky v. Kramer, 455 U.S. 745, 769 (1982). Here, state actors severed this relationship based on evidence they knew to be false. This prolonged, fraudulent interference with the parent-child relationship is a clear violation of Plaintiff's and her children's substantive due process rights. See Moore v. City of East Cleveland, 431 U.S. 494 (1977). The state court's no-contact order, issued as retaliation, also infringes upon the family's First Amendment rights of association.

**c. Conspiracy to Interfere with Civil Rights**

The plaintiff's complaint outlines a textbook conspiracy claim under 42 U.S.C. § 1983. The alleged facts reveal a clear agreement among state actors, including GCDSS employees and attorneys, as well as private actors, such as attorneys Speidel, Arthur, Littlejohn, and Coram, to pursue unconstitutional objectives. Specifically, they are accused of orchestrating the wrongful separation of the plaintiff from her children and retaliating thereafter. Under legal precedent, private attorneys who collaborate with state officials are considered to act "under color of state law" (see Dennis v. Sparks, 449 U.S. 24, 27-28, 1980). The coordinated actions, concealing the Verizon records, employing the fraudulent DSS-5239 form, and jointly prosecuting the contempt motion, strongly suggest a shared understanding and unified plan. Relevant case law supporting this interpretation includes Lugar v. Edmondson Oil Co., 457 U.S. 922, 1982, and Tower v. Glover, 467 U.S. 914, 1984.

**d. State-Created Danger**

The Due Process Clause is breached when the state actively creates or exacerbates danger to an individual while displaying deliberate indifference. Key precedents include DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 201, 1989, and Jensen v. Conrad, 747 F.2d 185, 194, 4th Cir., 1984. In Ms. Ryan's case, defendants removed her children from her safe care despite being aware of the father's documented history of abuse, ultimately placing them in his custody and creating significant risks. When her daughter later disclosed allegations of ongoing abuse and incidents of self-harm, the defendants' inaction further exemplified deliberate indifference toward their duty to safeguard the children from harm

## 2. Plaintiff and Her Children Will Suffer Immediate and Irreparable Harm

The harm is immediate, ongoing, and irreparable. Absent an injunction, Ms. Ryan is subject to summary re-arrest at any moment under the void contempt order. This is not merely a threat; Defendants have already done it once. A deprivation of liberty, even for a minimal period, constitutes irreparable injury. Pevia v. Durden, 961 F. Supp. 2d 745, 756 (E.D.N.C. 2013). The constant threat of incarceration prevents her from securing employment and stabilizing her housing.

Furthermore, the void state court orders have unconstitutionally severed her relationship with her children. Every day that passes is a day of lost connection and mounting psychological trauma that can never be recovered. The ongoing abuse and mental health crisis suffered by her daughter is a harm of the highest magnitude. The potential loss of life due to suicide is the ultimate irreparable harm.

Finally, the financial devastation is acute and ongoing. As a direct result of the December 2024 contempt order, Angela Ryan was evicted from her home of ten years in February 2025. This forced her into homelessness, and she lived in her car for two months. The Defendants' actions have destroyed her financial stability to such an extent that she now faces imminent eviction again from her current apartment [See Exhibit 23]. The loss of one's home is an irreparable injury. See Goldberg v. Kelly, 397 U.S. 254, 264 (1970). Only an immediate stay can prevent Plaintiff from being rendered homeless once more.

### 3. The Balance of Hardships Decisively Favors Plaintiff

The balance of hardships tips overwhelmingly in Plaintiff's favor. If the injunction is granted, the Defendants will be temporarily prevented from enforcing a void and unconstitutional order. The state's interest in enforcing the orders of its courts is negated when those orders were procured by fraud and violate the U.S. Constitution.

In contrast, the hardship to Plaintiff if the injunction is denied is catastrophic. She faces the immediate loss of her liberty, the permanent loss of her relationship with her children, and the loss of her home. Her children face continued exposure to a dangerous environment created by the state. The potential harm to the Defendants is procedural, while the harm to Plaintiff is to her liberty, her family, and her very survival.

### 4. Granting the Injunction is Firmly in the Public Interest

The public has a profound interest in the vindication of constitutional rights and the preservation of the integrity of the judicial process. This case exposes a shocking corruption of the systems designed to protect children. The public interest is not served by allowing state actors to use fraudulent evidence to separate families, retaliate against

whistleblowers, and wrongfully incarcerate citizens. Granting this injunction will affirm the public's interest in a justice system free from fraud. Enjoining the enforcement of a void order based on a fraud on the court is not an affront to comity; it is a necessary act to restore public confidence in the rule of law.

## C. EXCEPTIONAL CIRCUMSTANCES REQUIRE THE APPOINTMENT OF COUNSEL UNDER 28 U.S.C. § 1915(e)(1)

Under 28 U.S.C. § 1915(e)(1), a court may "request an attorney to represent any person unable to afford counsel." In "exceptional circumstances," a district court should exercise its discretion to appoint counsel. Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984). The existence of exceptional circumstances depends on "the type and complexity of the case, and the abilities of the individual bringing it." Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978). This case presents precisely such exceptional circumstances. First, the legal and factual issues are exceedingly complex. It involves intricate issues of constitutional law, including state-created danger, conspiracy liability under § 1983, the Younger abstention doctrine, and the void ab initio nature of judgments procured by fraud. Proving a conspiracy involving multiple state and private actors, including judges and attorneys, requires sophisticated legal analysis far beyond the capabilities of a pro se litigant.

Second, the merits of the case are strong, supported by documentary evidence like the certified Verizon records that prove the initial fraud. See Harris v. City of Winston-Salem, No. 1:19CV941, 2021 WL 4316810, at *2 (M.D.N.C. Sept. 22, 2021).

Third, Plaintiff is indigent, a status declared by the state court itself. The very actions of the Defendants were calculated to prevent her from being able to afford legal representation.

Fourth, a fair trial is impossible without counsel. The case involves numerous defendants, all of whom will be represented by experienced counsel. As the Fourth Circuit has noted, where a pro se litigant "has a colorable claim but lacks the capacity to present it, the district court should appoint counsel." Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975). Given the gravity of the rights at stake, appointment of counsel is essential for fundamental fairness.

## V. CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, Plaintiff Angela Ryan respectfully prays that this Honorable Court:

1. GRANT this Emergency Motion for a Temporary Restraining Order;

2. ISSUE an immediate, ex parte Temporary Restraining Order enjoining the Defendants and their agents from taking any action to enforce the December 17, 2024 contempt order in Case No. 14 CVD 10126, including any action to incarcerate Plaintiff or collect payments pursuant to that void order;

3. ISSUE an Order staying all proceedings in Guilford County District Court, Case No. 14 CVD 10126, pending further order of this Court;

4. GRANT the motion for appointment of counsel and appoint an attorney to represent Plaintiff in this matter pursuant to 28 U.S.C. § 1915(e)(1); and

5. SCHEDULE a hearing for a Preliminary Injunction following appointment of counsel for Plaintiff; and

6. Expedited Service of the Summons and Complaint on all Defendants, as Plaintiff is proceeding in forma pauperis and is at immediate risk of further irreparable harm, including retaliatory incarceration and homelessness; and

7. GRANT such other and further relief as the Court deems just and proper.

Respectfully submitted this 9th day of September, 2025.
11th

Angela Ryan, Pro Se Plaintiff

706 Huffman Mill Rd #D2

Burlington NC 27215

336-524-7696

Akj8989@aol.com

## EX PARTE TEMPORARY RESTRAINING ORDER MOTION, ADDENDUM

### Voluminous Evidentiary Material

Under Federal Rule of Civil Procedure 26(b)(2)(C), the movant recognizes that there is a large amount of evidentiary material available, including but not limited to: (i) many email communications, (ii) a recorded phone call, (iii) photographs, and (iv) previous court orders. All of this supports the claims of bad-faith prosecution, harassment, and the likelihood of success outlined here. The Fourth Circuit has noted that in emergency cases, parties may refer to Rule 26(b)(2)(C) to keep large documents out of initial filings as long as they are "reasonably" available upon request or at the hearing (see United States v. Doe, 653 F.3d 713, 718 (4th Cir. 2011); Landry v. HSBC Bank USA, No. 15-cv-140-RC, 2016 WL 4385488, at 3-4 (M.D.N.C. Mar. 9 2016)). Therefore, the movant will promptly provide all such documents upon a timely written request from the Court or other parties, or at the hearing on this motion, in line with Rule 26(b)(2)(C) and the idea of reasonable discovery in emergency motions.

The withheld evidence is very important to the movant's claims and directly supports the conclusion that the underlying contempt order was issued in bad faith and as retaliation. Not providing this evidence does not harm the Court since the movant is prepared to supply the material immediately. The Court is kindly asked to accept this statement as a full disclosure for its decision on the ex parte TRO. If the movant does not produce the documents upon request, that will be seen as a waiver of any objection to their admissibility.

**EVIDENCE INDEX**

Exhibit 1: Certified copy of Verizon Wireless records for the father's phone number, received on July 1, 2021, showing no text message communication with the minor child's phone on the date in question. Includes Verizon affidavit for authenticity & compliance.

Exhibit 2: Order of Indigency and Informa Pauperis (Oct 2024 and May 2025).

Exhibit 3: Order on Attorney/GAL Fees (July 2024) reinstating fees without financial assessment (order reflects only father receiving assessment) and insufficient findings of father "good faith" (fails to comply NCCOA Nov 2023 mandate).

Exhibit 4: Notice of Appeal to Dec 2024 Contempt Order (Jan 13, 2025).

Exhibit 6: Order from NCCOA denying Emergency Intervention (Jan 2025 Appeal).

Exhibit 7: Defendant Spidell's Motion for Civil Contempt, August 2024.

Exhibit 8: Order for Civil Contempt, entered by Judge Calvin Smith on December 17, 2024, ordering Plaintiff's incarceration absent payment of a $6,500 purge amount and containing unconstitutional "continuous contempt" purge conditions.

Exhibit 9: January 2, 2025 Notice of Record Destruction, Destroyed Exhibit List, and Transcript request.

Exhibit 10: Electricity Disconnect Bill/Notice Sept. 2025 (following incarceration release) and Sept. 2024 electricity disconnect notice (had no electricity for 7 weeks following July 2024 reinstatement of attorney fees & denied financial assessment by Judge Holiday).

Exhibit 11: Judge Holiday Sept 2024 Order to Show Cause for Criminal Contempt.

Exhibit 12: Carvana Sales Agreement and Check payment for Plaintiff's vehicle, sold August 4, 2025 to pay attorney fees following threats of continued incarceration.

Exhibit 15: Order from the North Carolina Court of Appeals denying the Petition for Writ of Supersedeas and Motion for Temporary Stay January 2025.

Exhibit 16: Altered "In-Home Services Agreement DSS 5239" provided to Plaintiff by GCDSS in March 2022. (Blank DSS5239 and DSS5239-ins included for reference)

Exhibit 17: Medical and therapy records for minor child A.R. documenting severe mental health decline, anxiety, depression, and reported regular marijuana usage & sexual activity.

Exhibit 18: Plaintiff's pro se "Motion for Dismissal for Fraud on the Court" filed in Guilford County District Court on or about October 2022.

Exhibit 19: Copies of the two different, fraudulent versions of the text message introduced into evidence in the state court proceedings.

Exhibit 23: Notice of Eviction Feb. 2025.from home of 10 years

Exhibit 24: Letter from GCDSS entered as an exhibit at trial confirming the father had a substantiated "services needed" finding for abuse and successful completion of required services to regain custody.

Exhibit 26: Letter from Plaintiff's daughter (August 2025) describing running away and suicide attempts.

Exhibit 28: 5/26 Letter to Attorney Arthur For his false advisement, failure to protect children, and I and conspiring with opposing attorney.

Exhibit 31: Receipt providing date/time of $6500 payment and statement from Plaintiffs brother that paid $6500 12/17/24 during proceedings to stop incarceration. judge did not assess Plaintiff's financial abilities/she could not afford purge..contempt order provides the money unpaid, and these confirm, it was paid during proceedings.

Exhibit 32: Notice to cease and desist to attorney Spidell and Corum to end Communications and settlement attempts without her knowledge to her brother and demanding removal from NC to MI.

**PROPOSED ORDER**

IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF
NORTH CAROLINA

ANGELA RYAN,
     Plaintiff,

v.

NORTH CAROLINA DEPARTMENT OF
HEALTH AND HUMAN SERVICES , et al,
     Defendants.

Case No. 25-CV-502

ORDER FOR EMERGENCY TEMPORARY RESTRAINING ORDER, STAY OF
STATE COURT PROCEEDINGS, AND APPOINTMENT OF  COUNSEL

_____

This matter is before the Court on the Emergency Motion for a Temporary Restraining

Order, Stay of State Court Proceedings, and Appointment of Federal Counsel filed by

Plaintiff Angela Ryan on September _____, 2025.

The Court has considered the verified allegations in the Complaint, the Motion, the

Memorandum of Law, and the exhibits attached thereto. Based on this record, the Court

makes the following findings pursuant to Federal Rule of Civil Procedure 65(b):

1.  It clearly appears from specific facts shown by affidavit or by the verified

    complaint that immediate and irreparable injury, loss, or damage will result to the

Plaintiff before the adverse parties or their attorneys can be heard in opposition. Specifically, Plaintiff faces the imminent threat of re-incarceration under a state court contempt order that appears to be void ab initio and unconstitutional, the continued unconstitutional separation from her minor children, and potential homelessness.

2. Plaintiff has made a sufficient showing that she is likely to succeed on the merits of her claims under 42 U.S.C. § 1983, including that the state court proceedings were initiated and sustained by extrinsic fraud on the court, rendering the underlying orders void and unenforceable, and that Defendants have violated her and her children's fundamental constitutional rights.

3. The balance of hardships tips decidedly in favor of the Plaintiff, as the potential harm to her liberty, family integrity, and basic welfare far outweighs any harm an injunction would cause the Defendants.

4. An injunction is in the public interest to uphold constitutional rights and maintain the integrity of the judicial process.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that:

1. Plaintiff's Emergency Motion for a Temporary Restraining Order is GRANTED.

2. The Defendants, including the North Carolina Department of Health and Human Services, Guilford County, the Guilford County Department of Social Services, Judges Kelvin Smith and Tabatha Holiday, Megan Spidell, Adam Arthur, Wendy Sivori, Syrita Miller, Anne Littlejohn, and Lee Coram, along with their officers, agents, employees, and attorneys, and all persons in active concert or participation

with them who receive actual notice of this order, are hereby TEMPORARILY RESTRAINED AND ENJOINED from enforcing or taking any action whatsoever upon the Order for Civil Contempt entered on December 17, 2024, in Guilford County District Court, Case No. 14 CVD 10126. This includes, but is not limited to, any attempt to arrest, incarcerate, or otherwise detain Plaintiff, or to collect any purge payments or attorney's fees pursuant to that order or any related order in that case.

3. All proceedings in the state court action under Ryan v. Ryan, Case No. 14 CVD 10126, in the Guilford County District Court of North Carolina, are hereby STAYED pending further order of this Court.

4. This Temporary Restraining Order is granted without notice to the Defendants because of the immediate and irreparable nature of the threatened harm to Plaintiff's constitutional rights, specifically her liberty. This Order shall remain in effect for fourteen (14) days from the date of entry, unless extended by the Court for good cause shown or by agreement of the parties.

5. The issue of bond is addressed. Given that Plaintiff is proceeding in forma pauperis and the injunction is sought to vindicate fundamental constitutional rights, the bond requirement under Rule 65(c) is hereby WAIVED.

6. Plaintiff's Motion for Appointment of Counsel pursuant to 28 U.S.C. § 1915(e)(1) is GRANTED. The Clerk of Court is directed to take the necessary steps to appoint counsel for Plaintiff for all further proceedings in this matter.

7. The United States Marshal is directed to serve a copy of this ORDER, along with the SUMMONS and COMPLAINT, on all Defendants forthwith.

SO ORDERED, this _____ day of September, 2025.

_____

William L. Olsteen Jr.,

UNITED STATES DISTRICT JUDGE

## WORD COUNT CERTIFICATE

Pursuant to local rule, 7.3(d), The Plaintiff certifies that the Emergency Temporary Restraining Order, Stay of State Court Proceedings, and Appointment of Federal Counsel Motion, and supporting Memorandum of Law, does not exceed 6,250 words, and is in compliance with this rule. The total word count is 6,173. The Plaintiff used the "word-count" feature of the Microsoft software/program used to draft this document. The word count includes the body of the motion, headings and footnotes. The word count does not include the captions, signature, or any index page (table of contents, table of authorities, or exhibits).

Respectfully submitted this 11th day of September, 2025,

Angela Ryan, Plaintiff, Pro Se.

706 Huffman Mill Rd. #D2

Burlington NC 27215

(336)-524-7695

Akj8989@aol.com

**VERIFICATION**

I, Angela Ryan, declare under penalty of perjury under the laws of the United States of America that the foregoing Emergency Motion for Temporary Restraining Order, Stay of State Court Proceedings, and Appointment of Federal Counsel, and the Memorandum of Law, and all attached exhibits, are true and correct to the best of my knowledge, information, and belief.

Executed on September 9, 2025.

11th

Angela Ryan, Pro Se Plaintiff

State of North Carolina - County of Alamance

Signed and sworn to (or affirmed) before me on this 9th day of September , 2025, by Angela Ryan.

(Seal)

Ricky Pacheco
Notary Public
Alamance County
State of North Carolina
My Commission ends 03/31/2027

Signature of Notary Public

Ricky Pacheco

Printed Name of Notary Public

My commission expires: 03-31-2027